SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
DANA J. DUNWOODY, Cal. Bar No. 119696
ddunwoody@sheppardmullin.com
JOHN C. DINEEN, Cal. Bar No. 222095
jdineen@sheppardmullin.com
501 West Broadway, 19th Floor
San Diego, California  92101-3598
Telephone:    619-338-6500
Facsimile:    619-234-3815

QUARLES & BRADY LLP
One Renaissance Square
Two North Central Avenue
Phoenix, AZ 85004
TELEPHONE 602.229.5200
FACSIMILE 602.229.5690

Jeffrey H. Wolf, *pro hac vice pending*
jeffrey.wolf@quarles.com

Nicole M. Goodwin, *pro hac vice pending*
nicole.goodwin@quarles.com

Attorneys for Defendants
MASSAGE ENVY FRANCHISING, LLC, and
MASSAGE ENVY, LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Gail Hahn, individually and on behalf of all other similarly situated California residents,<br><br>          Plaintiff,<br><br>v.<br><br>Massage Envy Franchising LLC, a Delaware limited liability company; Massage Envy, LLC, a Delaware limited liability company,<br><br>          Defendants. | CASE NO. 12-CV-0153 MMA (BGS)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>**Judge:        Hon. Michael M. Anello**<br>**Courtroom:  Five**<br>**Date:          March 12, 2012**<br>**Time:          2:30 p.m.**<br><br>**(Oral Argument Requested)** |

I.     INTRODUCTION ........................................................................................... 3

II.    FACTUAL AND PROCEDURAL BACKGROUND ....................................... 4

III.   THE STANDARD UNDER RULE 12(B)(6) ................................................. 6

IV.   THE COMPLAINT FAILS TO SATISFY THE "UNLAWFUL" PRONG OF THE CALIFORNIA UNFAIR COMPETITION LAW ..................................... 7

    A.    Tying Membership Benefits to the Payment of Dues Is Not Unlawful ............... 7

        1.    California Civil Code Section 1671 only restricts damages resulting from contract breaches, not from the failure to use membership benefits ...................................................... 7

        2.    Because Plaintiff's alleged losses are not fixed, they do not constitute liquidated damages .................................................. 9

        3.    The challenged provision is reasonable on its face .................................. 10

    B.    Tying Membership Benefits to the Payment of Dues Is Not Unconscionable ........................................................................... 11

        1.    The complaint fails to plead procedural unconscionability .................... 12

        2.    The complaint fails to allege substantive unconscionability .................. 14

V.    THE COMPLAINT FAILS TO SATISFY THE "UNFAIR" PRONG OF THE CALIFORNIA UNFAIR COMPETITION LAW ........................................ 15

    A.    Plaintiff's UCL Theory Is Inconsistent with Existing Legislative Intent ............ 15

    B.    The Massage Envy Membership Agreement Is Not "Unfair" Under the UCL ............................................................................ 18

VI.   PLAINTIFF MAY NOT INVOKE THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING TO NEGATE EXPRESS CONTRACT TERMS ....... 20

VII.  CONCLUSION ......................................................................................... 22

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ashcroft v. Iqbal,*
  556 U.S. 662, 129 S. Ct. 1937 (2009)........................................................4

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)...................................................................................4, 5

*Biggins v. Wells Fargo & Co.,*
  266 F.R.D. 399 (N.D. Cal. 2009) ............................................................13

*Branch v. Tunnell,*
  14 F.3d 449 (9th Cir. 1994), ....................................................................4

*Chodos v. West Publ'g Co.,*
  292 F.3d 992 (9th Cir. 2002) ...................................................................7

*Edwards v. Symbolic Int'l, Inc.,*
  313 F. App'x. 930 (9th Cir. 2011).............................................................8

*Hal Roach Studios, Inc. v. Richard Feiner & Co.,*
  896 F.2d 1542 (9th Cir. 1989) .................................................................4

*Jurin v. Google, Inc.,*
  768 F. Supp. 2d 1064  (E.D. Cal. 2011) ...............................................18

*Kinkade v. Trojan Express, LLC,*
  No. SACV 08-1362 AG, 2009 WL 799390 (C.D. Cal. Mar. 23, 2009).....................3

*Lee v. City of Los Angeles,*
  250 F.3d 668 (9th Cir. 2000) ...................................................................19

*Lyons v. Bank of Am., NA,*
  No. 11-01232 CW, 2011 WL 3607608 (N.D. Cal. Aug. 15, 2011) ........................17

*Missing Link, Inc. v. eBay, Inc.,*
  No. C-07-04487 RMW, 2008 WL 3496865 (N.D. Cal. Aug. 12, 2008)................17

*Moss v. United States Secret Serv.,*
  572 F.3d 962 (9th Cir. 2009) ...................................................................4

ii

*Steckman v. Hart Brewing, Inc.*,

    143 F.3d 1293 (9th Cir. 1998) ..................................................................4

*Walter v. Hughes Commc'ns, Inc.*,

    682 F. Supp. 2d 1031 (N.D. Cal. 2010) ...................................................7

## **STATE CASES**

*Aron v. U-Haul Co. of Cal.*,

    43 Cal. App. 4th 796, 49 Cal. Rptr. 3d 555 (Cal. Ct. App. 2006) ...........13

*Barnett v. Fireman's Fund Ins. Co.*,

    90 Cal. App. 4th 500, 108 Cal. Rptr. 2d 657 (Cal. Ct. App. 2001) ...........8

*Beasley v. Wells Fargo Bank*,

    235 Cal. App. 3d 1383, 1 Cal. Rptr. 2d 446 (Cal. Ct. App. 1991) ...........8

*Blank v. Borden*,

    11 Cal. 3d 963, 524 P.2d 127 (1974) ........................................................7

*Buller v. Sutter Health*,

    160 Cal. App. 4th 981, 74 Cal. Rptr. 3d 47 (Cal. Ct. App. 2008) ...........14

*Camacho v. Auto. Club of S. California*,

    142 Cal. App. 4th 1394, 48 Cal. Rptr. 3d 770 (Cal. Ct. App. 2006) ...16, 17

*Carma Developers (Cal.), Inc., v. Marathon Dev. Cal., Inc.*,

    2 Cal. 4th 342, 826 P.2d 710 (1992) ...................................................18, 19

*Cel-Tech Comm'ns, Inc. v. Los Angeles Cellular Tel. Co.*,

    20 Cal. 4th 163, 973 P.2d 527 (1999) ...................................5, 13, 14, 15

*Crippen v. Central Valley RV Outlet*,

    124 Cal. App. 4th 1159, 22 Cal. Rptr. 3d 189 (Cal. Ct. App. 2004) ........12

*Gatton v. T-Mobile USA, Inc.*,

    152 Cal. App. 4th 571, 61 Cal. Rptr. 3d 344 (Cal. Ct. App. 2007) .....10, 11

*Kelly v. McDonald*,

    98 Cal. App. 121 (Cal. Ct. App. 1929) ......................................................7

iii

*Kuhlemeier v. Lack*,
  50 Cal. App. 2d 802, 123 P.2d 918 (1942) ..................................................................7

*Lhotka v. Geographic Expeditions, Inc.*,
  181 Cal. App. 4th 816, 104 Cal. Rptr. 3d 844 (Cal. Ct. App. 2010) ...........................9, 10, 11

*Morris v. Redwood Empire Bancorp*,
  128 Cal. App. 4th 1305, 27 Cal. Rptr. 3d 797 (Cal. Ct. App. 2005) .............6, 9, 10, 11, 12, 13

*People ex rel. Mosk v. National Research Co. of Cal.*,
  201 Cal. App. 2d 765, 20 Cal. Rptr. 516 (Cal. Ct. App. 1962 ) ................................................5

*Rose v. Bank of Am., N.A*,
  200 Cal. App. 4th 1441, 133 Cal. Rptr. 3d 615 (Cal. Ct. App. 2011) ....................................14

*Szetela v. Discover Bank*,
  97 Cal. App. 4th 1094, 118 Cal. Rptr. 2d 862 (Cal. Ct. App. 2002) ..................................10, 11

## **STATE STATUTES**

Cal. Bus. & Prof. Code § 4600 et seq ..........................................................................................15

Cal. Bus. & Prof. Code §§ 17200-17210 ........................................................................................1

Cal. Bus. & Prof. Code §§ 4600-4620 ...........................................................................................15

Cal. Bus. & Prof. Code §§ 4605-06 ...............................................................................................15

Cal. Civ. Code § 1670 .....................................................................................................................7

Cal. Civ. Code § 1670.5 ...........................................................................................................2, 9, 13

Cal. Civ. Code § 1671(b).............................................................................................................6, 8

Cal. Civ. Code § 1812.81 ...............................................................................................................14

Cal. Civ. Code § 1812.85(e)...........................................................................................................15

Cal. Civ. Code §§ 1671(c) and (d) ..................................................................................................3

Cal. Civ. Code §§ 1812.80-1812.98 ..............................................................................................14

Cal. Civ. Code § 1671 .................................................................................................................6, 7

## **FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ...................................................................................................1, 3, 4, 19, 20

iv

Defendants, MASSAGE ENVY FRANCHISING LLC and MASSAGE ENVY, LLC (collectively, "Massage Envy"), pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, move for an Order dismissing the complaint, in its entirety, on the ground that it fails to state a claim upon which relief may be granted.

## I.   INTRODUCTION

In 2008, Gail Hahn willingly[1] entered into a membership agreement with a San Diego-area Massage Envy® retail massage clinic whereby, in exchange for monthly dues of $59, she would have the contractual right to receive one massage per month at the Massage Envy location of her choice.  Ms. Hahn and Massage Envy also agreed that if, for whatever reason, she was unable to enjoy her monthly massage, the unused massage would carry over, into the future, *so long as Ms. Hahn remained a Massage Envy member in good standing*.  Now, Ms. Hahn has commenced litigation against Massage Envy, asking this Court to award her,[2] as damages, the ongoing benefits of the membership she admittedly cancelled, even though she no longer pays, or offers to pay, her membership dues.

Ms. Hahn's complaint invokes California's sweeping Unfair Competition Law (codified at Cal. Bus. & Prof. Code §§ 17200-17210, hereinafter the "UCL"), a statute intended to afford courts the tools to redress unlawful or unfair conduct[3] wherever it may be found.  But there is nothing unlawful or unfair about the terms of Ms. Hahn's Massage Envy membership agreement.  The alleged predicates of her UCL claim — void liquidated damages, and "unconscionability" — do not apply, as a matter of law, to her membership agreement.

First, Ms. Hahn's inability to use membership benefits following the conclusion of her membership term was not predicated on a breach of contract.  In addition, the amount of her alleged "loss" was not fixed at the time the agreement was entered.  Thus, even if Plaintiff had not cancelled her membership, and the "loss" *had* been triggered by a contract breach, the alleged loss would not constitute illegal liquidated damages.  As a result, Plaintiff's inability to

---

[1] There is no allegation of duress in the complaint.

[2] And thousands of other Massage Envy former members who did not use all their massages.  (Compl. ¶ 24.) This is a putative class action.

[3] The statute also penalizes fraudulent conduct, but Plaintiff does not allege any fraud.

1

avail herself of membership privileges does not constitute liquidated damages, as a matter of law.

Second, the complaint fails to state a claim for unconscionability under California law. Plaintiff does not (and cannot) put forth facts that, even if deemed true, would satisfy either procedural or substantive unconscionability tests.  And there is no  precedent for applying Cal. Civ. Code § 1670.5 to void the inherent exclusivity (whereby only members may enjoy stated membership benefits) of a membership agreement.

Furthermore, the complaint fails to properly state a claim for "unfairness" under the UCL.  The allegations of the complaint, on their face, make clear there was no deceit, and no hiding of key terms in the Massage Envy membership agreement.  (Compl., *passim*.)  In fact, Massage Envy's retention of Ms. Hahn's monthly dues meets California's stringent requirements for health clubs, even though massage therapy providers need not so comply.

Moreover, it is evident from the complaint that Ms. Hahn was afforded a reasonable amount of time in which to use her monthly benefits — she never had any less than thirty (30) days to enjoy a service that only takes one hour to perform.   In fact, the complaint acknowledges that Ms. Hahn received several contractually-imposed grace periods that extended the amount of time she had to use her membership benefits, yet she inexplicably failed to use more than two massages in a twenty-three (23) month span.  (Compl. ¶ 8).

Like a well-intentioned consumer who joins a health club, but rarely visits, or a cinema buff who rents a movie, but fails to get around to watching before the rental period expires, Ms. Hahn may experience regret that she did not fully utilize the membership benefits available to her under the Massage Envy membership agreement she voluntarily cancelled.  That regret, however, does not give rise to a UCL claim, as a matter of law, and her purported class claims should be dismissed.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff asserts three claims for relief: (i) unlawful business practices in violation of the UCL; (ii) unfair business practices in violation of the UCL; and (iii) breach of the implied covenant of good faith and fair dealing.   These claims are based on Massage Envy's

2

development of membership materials used by independent franchisees in California.   (Compl. ¶ 11.)  Massage Envy developed its massage service franchise concept based upon a health club membership model, and is the pioneer and national leader of affordable massage and spa services, with more than one million members in the United States.  (Compl. ¶¶ 13-14).

In return for a recurring monthly membership fee, customers are entitled to receive one massage per month, and book additional monthly massages at a reduced rate.  Unused massages roll over into succeeding months so long as the customer remains a Massage Envy member in good standing.  These are express terms of the membership agreement each Massage Envy member signs.

Plaintiff claims that she was enrolled in the California membership program for over two years, but ultimately "forfeited" her unused massages after she cancelled her membership.  (Compl. ¶ 9.)  She contends that her loss of membership benefits *after* she was no longer a Massage Envy member constitutes an improper liquidated damages penalty in a consumer contract, as prohibited by Cal. Civ. Code §§ 1671(c) and (d).  Plaintiff further alleges that the imposition of these alleged liquidated damages amounts to an unlawful and unfair business practice in violation of the UCL.  (Compl. ¶ 2.)

The complaint concedes (1) that the contract Plaintiff signed provides for one massage per month, and (2) that she had from September 2008 to August 2010 (a 23-month period) to redeem her massages, but failed to utilize her membership benefits.   The complaint also concedes that Plaintiff allowed her contract to automatically renew after her initial 12 month term expired in October 2009, and thereby continued as a member on a month to month basis.

Plaintiff's membership agreement is but three (3) pages long.   *See* Membership Agreement, attached as **Exhibit A** to the Declaration of Jeffrey Frankel ("Frankel Decl."), ¶ 4.[4]

---

[4] While much of it is already quoted verbatim in the complaint, the Court may take judicial notice of the full form of contract Ms. Hahn signed.  While "[g]enerally a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion," *Kinkade v. Trojan Express, LLC*, No. SACV 08-1362 AG, 2009 WL 799390, at *2 (C.D. Cal. Mar. 23, 2009) (citing *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989)), "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically

Plaintiff even *initialed* the very aspects of the agreement she now challenges.  In particular, Plaintiff specifically acknowledged and initialed the contract provision, located on the first page of the agreement, stating that:

> You have the entire term of the membership agreement to use all pre-paid massages.  You may continue to redeem your pre-paid massages after the initial term of the membership as long as your membership has been renewed and is current.

Membership Agreement, p. 1.  And again, on page 2, Plaintiff's membership agreement conspicuously states that "[y]our membership status must be active in order to redeem any membership services, including membership massages." *Id.*

## III.    THE STANDARD UNDER RULE 12(B)(6)

"[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)).  In evaluating a complaint, the Court first must disregard those conclusory allegations that are not supported by well-pled facts and are therefore not entitled to a presumption of truth. *Iqbal*, 129 S. Ct. at 1950.  Such conclusory allegations are ones that merely offer "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Importantly, the Court is not required to presume as true allegations that are contradicted by documents referenced in the complaint. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).  The allegations must show "more than a sheer possibility that a defendant has acted unlawfully" and be more than "merely consistent with" a defendant's liability. *Iqbal*, 556 U.S. at 1949 (quoting *Twombly*, 550 U.S. at 557).

attached to the pleading, may be considered in a ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

4

**IV.   THE COMPLAINT FAILS TO SATISFY THE "UNLAWFUL" PRONG OF THE CALIFORNIA UNFAIR COMPETITION LAW**

The unlawful prong of the UCL prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel–Tech Comm'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180, 973 P.2d 527, 544 (1999).  The UCL permits injured consumers to "borrow" violations of other laws and treat them as unfair competition that is independently actionable.  *Cel-Tech*, 20 Cal. 4th at 180, 973 P.2d at 544. The intent of the UCL, and its "sweeping language," is to provide flexibility to Courts and allow them to stay one step ahead of fraudulent and unfair business practices that "may run the gamut of human ingenuity and chicanery." *See People ex rel. Mosk v. National Research Co. of Cal.*, 201 Cal. App. 2d 765, 772, 20 Cal. Rptr. 516, 523 (Cal. Ct. App. 1962 ).  However, the intent of the UCL is not to turn fair contracts on their heads after consumers fail to utilize their own bargained-for membership benefits.

**A.   Tying Membership Benefits to the Payment of Dues Is Not Unlawful.**

The California statutes that prohibit certain liquidated damages do not apply to membership agreements like the one challenged here.  By definition, a membership agreement provides the benefits of membership to members only.  Those benefits are conditioned on the payment of membership dues: Plaintiff specifically bargained for the right to receive membership massages *so long as she remained a member in good standing*.  Massage Envy franchisees' enforcement of the contract terms, which limit Plaintiff from enjoying benefits reserved only to members, is not a contractual penalty.  Rather, access to the benefit of enjoying reduced price massages goes to the true character of being, or not being, a Massage Envy member.  Plaintiff admits she cancelled her membership, yet seeks ongoing benefits only available to members.

      1.   **California Civil Code Section 1671 only restricts damages resulting from contract breaches, not from the failure to use membership benefits**.

Cal. Civ. Code § 1671(b) provides, in relevant part, that "[a] provision in a contract liquidating the damages *for the breach of the contract* is valid unless the party seeking to

5

invalidate the provision establishes that the provision was unreasonable under the circumstances."(emphasis added).

Here, the complaint does not specifically allege that any breach by Plaintiff triggered the alleged illegal penalty. (*See* Compl. ¶ 9.) Plaintiff initially paid twelve months of dues as required by her membership agreement.  Following that twelve-month term, her membership continued on a month-to-month basis, during which she was free to cancel at any time in accordance with the agreement's provisions.[5]   Ultimately, Plaintiff sought to cancel her agreement in March 2009, and her membership was later suspended after she willingly "refused to authorize further Massage Envy charges to her credit card".[6] (Compl. ¶ 9).

Because Plaintiff's inability to use membership benefits resulted from her failure to satisfy the material condition of payment of dues,[7] regardless of whether that non-payment constituted breach, or was prompted by cancellation, or the end of a predetermined term, California's liquidated damages statute simply does not apply.   *See, e.g., Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1314, 27 Cal. Rptr. 3d 797, 803 (Cal. Ct. App. 2005) ("[T]o constitute a liquidated damage clause the conduct triggering the payment must in some manner breach the contract."); *Blank v. Borden*, 11 Cal. 3d 963, 969-70, 524 P.2d 127, 133-34 (1974) (holding compensation due under a contract provision that is not triggered by breach does <u>not</u> constitute damages and does not fall within Cal. Civ. Code § 1670); *Kuhlemeier v. Lack*, 50 Cal. App. 2d 802, 807-08, 123 P.2d 918, 923-24 (1942) (holding actions post-termination of a contract are not within Cal. Civ. Code § 1670).   Because Plaintiff's

---

[5] The membership agreement merely requires 30 day written notice.

[6] The complaint alleges that Plaintiff attempted to cancel in February 2009, but her account was not cancelled at that time.  Accepting Plaintiff's allegations as true for purposes of this motion, it was Plaintiff, not Massage Envy, who wanted the membership to end.  Per the Membership Agreement, any conclusion of the membership, whether caused by voluntary cancellation, failure to pay, or the ending of the initial membership term, results in the inability to use membership benefits, including unused massages.  Membership Agreement, at 1.  In other words, current monthly payments are a condition to using membership benefits.

[7] Even Plaintiff's class allegations tiptoe around the non-requirement of breach by referring to accounts that are "not paid current" *see*, *e.g.*, Compl. ¶ 1, without disclosing whether these accounts were voluntarily terminated/cancelled, as was Plaintiff's.

complained-of "losses" were post-termination, and are not dependent upon a contractual breach, as opposed to cancellation, they cannot be deemed liquidated damages.

2.  **Because Plaintiff's alleged losses are not fixed, they do not constitute liquidated damages**.

Moreover, to constitute liquidated damages under California law, the sum at issue must be "fixed and certain by agreement." *Chodos v. West Publ'g Co.*, 292 F.3d 992, 1002 (9th Cir. 2002) (quoting *Kelly v. McDonald*, 98 Cal. App. 121, 125 (Cal. Ct. App. 1929)).  If the sum varies at all, it cannot support a § 1671 claim.  *Walter v. Hughes Commc'ns, Inc.*, 682 F. Supp. 2d 1031, 1046 (N.D. Cal. 2010).

In *Walter v. Hughes*, plaintiffs brought a purported class action against their internet service provider challenging the provider's termination fees, which ranged from at least $300 to $700.  The actual amount of the assessed fee depended on the date of termination, among other things.  *Id.*  Plaintiffs argued, as Ms. Hahn does here, that the fees violated the UCL because they represented unlawful liquidated damages under § 1671.  In dismissing the complaint for failure to state a claim, the district court squarely disagreed, finding that because the termination fee was variable, "Plaintiffs have therefore failed to allege that the Subscriber Agreement included a fixed fee that constituted impermissible liquidated damages under § 1671." *Id.*

The membership agreement here, like the agreement challenged in *Walter*, does not assign a "fixed and certain" sum.  Even adopting Plaintiff's theory that unused massages equate to contractual damages, the actual number of massages left unused, or lost, is neither predetermined nor set forth anywhere in the membership agreement.  The number of unused massages is also not within Massage Envy's control.  Rather, it is solely up to the member whether she enjoys her membership massages or not.  It defies reason that Massage Envy must defend allegations that it unilaterally imposes "illegal liquidated damages" when the number of unused massages at the end of a membership term might be zero.[8]  Because the membership

---

[8] Or one, or maybe five.  Or eighteen (as in Ms. Hahn's case).

7

agreement does not fix the alleged "loss" in any way, the unused membership benefits cannot constitute liquidated damages.

### 3.    **The challenged provision is reasonable on its face**.

Even if the termination of Plaintiff's membership also constituted breach, and the amount of loss was fixed, the loss of membership benefits due to non-payment of dues is not, on its face, unreasonable.  The question of whether a contractual provision is an unenforceable liquidated damages provision is one for the Court to answer.  *Edwards v. Symbolic Int'l, Inc.*, 313 F. App'x. 930, 932 (9th Cir. 2011) (applying Cal. Civ. Code § 1671(b)); *Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1383, 1393, 1 Cal. Rptr. 2d 446, 456 (Cal. Ct. App. 1991). Where the challenged contract terms are available to the Court, as they are here, a plaintiff's characterization of a contract does not control.  *Barnett v. Fireman's Fund Ins. Co.*, 90 Cal. App. 4th 500, 505, 108 Cal. Rptr. 2d 657, 662 (Cal. Ct. App. 2001).

In accordance with the membership agreements used by Massage Envy's California franchisees, each monthly $59 dues payment entitles a member to one massage that month. Dues are collected on day one of the membership "month", and the member has no less than thirty (30) days to enjoy a massage at any one of Massage Envy's franchise locations.

In Ms. Hahn's case, she signed her membership agreement on September 13, 2008, commencing a one-year term and entitling her to her first massage.  *See* Membership Agreement, at 1-2, ¶ 4 (Frankel Decl., ¶ 4).  When her next dues were collected on or about October 13, 2008, Ms. Hahn then had *at least* 30 days (until November 13, 2008) to enjoy another massage.  And because her initial membership term was for a full year, Ms. Hahn also had additional time (until September 13, 2009) to use that first month's massage.  *Id.*  This grace period continued for the remainder of Ms. Hahn's initial term.  In other words, all massages added to Ms. Hahn's account by virtue of her monthly dues payments were available for use until at least September 13, 2009 so long as her membership was current.

Then, after Ms. Hahn's initial membership term ended on September 13, 2009, her membership continued in a "month to month" status.  While in "month to month" status, Ms. Hahn received yet another grace period to book <u>all</u> of her unused massages, so long as her

8

membership remained current.   These membership parameters are clearly set forth in the contract.   Ultimately, Plaintiff remained a member for 23 months yet failed to use more than 2 massages during this entire time frame.   As a result, even if the loss of variable membership privileges could somehow be interpreted as "liquidated damages," such a loss would not be unreasonable given the 30 day initial term, plus grace periods, that are available to enjoy a one hour professional service.

## B.   Tying Membership Benefits to the Payment of Dues Is Not Unconscionable.

As almost an afterthought in the complaint (Compl. ¶ 33), Hahn also alleges that the so-called forfeiture provision is unconscionable pursuant to Cal. Civ. Code § 1670.5.   That section provides:

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

*Id.*   Unconscionability requires an absence of meaningful choice on the part of one of the parties together with contract terms that are unreasonably favorable to the other party.   *Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 821, 104 Cal. Rptr. 3d 844, 849 (Cal. Ct. App. 2010).   In other words, unconscionability contains both a "procedural" and "substantive" element.   *Id*.   Section 1670.5 unconscionability is not analyzed specially when asserted as a UCL claim predicate.   *See Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1317-18, 27 Cal. Rptr. 3d 797, 804-05 (Cal. Ct. App. 2005).

Both the procedural and substantive elements must be met before a contract or term will be deemed unconscionable; both, however, need not be present to the same degree.   *Morris*, 128 Cal. App. 4th at 1317, 27 Cal. Rptr. 3d at 805.   California courts apply a sliding scale "so that the more substantively oppressive the contract term, the less evidence of procedural

9

unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  *Id*. (internal quotations omitted).

### 1.    **The complaint fails to plead procedural unconscionability**.

Unconscionability's procedural element requires a showing of either "surprise" or "oppression."  *Lhotka*, 181 Cal. App. 4th at 822, 104 Cal. Rptr. 3d at 849.  "Surprise" is "the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms."  *Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571, 581, 61 Cal. Rptr. 3d 344, 352 (Cal. Ct. App. 2007).  Here, Hahn fails to allege that the disputed terms surprised her, and indeed, she cannot do so.  The terms are not hidden — as she points out, Massage Envy even "reinforce[s]" them on its website.  (Compl. ¶ 17, n.2.)  The complaint therefore fails to state a claim for procedural unconscionability based on surprise.  *See also, Morris*, 128 Cal. App. 4th at 1320, 27 Cal. Rptr. 3d at 807 (finding no surprise where the amended complaint "contains no allegations that Morris was unaware of the fee when he executed the merchant agreement, or that its terms were misrepresented to him").

"Oppression" arises out of bargaining power inequality that results in no real negotiation and an absence of meaningful choice.  *Gatton*, 152 Cal. App. 4th at 581, 61 Cal. Rptr. 3d at 352.  The focus is on the manner in which the disputed clause is presented to the party in the weaker bargaining position.  *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100, 118 Cal. Rptr. 2d 862, 867 (Cal. Ct. App. 2002).

Courts are more likely to find oppression if the contract involves life necessities such as employment, or health care.  *Morris*, 128 Cal. App. 4th at 1320, 27 Cal. Rptr. 3d at 807.  This makes sense because "a sick patient seeking admittance to a hospital is not expected to shop around to find better terms on the admittance form" and "few employees are in a position to refuse a job because of an arbitration agreement in an employment contract."  *Id*.  But Hahn's contract was for purely voluntary membership-based massage services — not classifiable as life

necessities on par with employment or health care — so clearly there is no presumptive oppression under the circumstances.

Outside of contracts for employment and health care, courts find oppression only where the terms are presented in a manner that truly forecloses any meaningful choice. For example, one court found oppression where the terms were presented "as both nonnegotiable *and* no different than what plaintiffs would find with any other [similar company]." *Lhotka*, 181 Cal. App. 4th at 824, 104 Cal. Rptr. 3d at 851 (emphasis added). In other words, because Lhotka was explicitly told that better terms did not exist, he was found to have had no meaningful choice as to the subject contract.[9] *See id.* Another found oppression where a credit card amendment arrived in the mail and the recipient could only reject the new terms by canceling his credit card account. *Szetela*, 97 Cal. App. 4th at 1100, 118 Cal. Rptr. 2d at 867.

Here, Hahn fails to allege that meaningful choice was foreclosed to her as it was in *Lhotka* and *Szetela*. All she alleges about the presentment of the contract is: "on or about September 13, 2008, Plaintiff signed a standardized contract with Massage Envy."[10] (Compl. ¶ 7.) The complaint is devoid of any allegation of oppression. That is because Hahn had viable alternatives — he could have chosen not to sign the contract and could have elected to receive a massage from any number of spas or other massage service providers. She also could have continued to visit Massage Envy clinics but purchase massages at the non-member rate.

The complaint also fails to plead any facts, if deemed true, that would warrant a finding of oppression. *See also Crippen v. Central Valley RV Outlet*, 124 Cal. App. 4th 1159, 1165, 22

---

[9] Notably, the court found that the lack of meaningful choice only gave rise to a "minimal level" of procedural unconscionability. *Lhotka*, 181 Cal. App. 4th at 824, 104 Cal. Rptr. 3d at 851. And thus, given the sliding scale, the court had to find a high degree of substantive unconscionability before invalidating the contract. *See id.*

[10] To the extent Hahn intends to argue that the "standardized" contract is one of adhesion and is therefore procedurally unconscionable, that is not the end of the story - the use of a contract of adhesion establishes only "a minimal degree" of procedural unconscionability. *Gatton*, 152 Cal. App. 4th at 585, 61 Cal. Rptr. 3d at 355-56. In accordance with the sliding scale, the Court should still enforce the otherwise adhesive contract unless it has a "high degree" of substantive unconscionability, which is not present here. *Id.*

11

Cal. Rptr. 3d 189, 193 (Cal. Ct. App. 2004) (holding where plaintiff did not introduce any evidence of the circumstances surrounding the execution of the agreement, he could not show inequality of bargaining power, lack of negotiation, or lack of meaningful choice based on those circumstances).

Because Hahn has failed to adequately plead procedural unconscionability, she cannot base a UCL claim on unconscionability grounds.

2.     **The complaint fails to allege substantive unconscionability**.

The complaint also fails to adequately plead substantive unconscionability.  A provision is substantively unconscionable if it involves contract terms that are so one-sided as to "shock the conscience," or that impose "harsh or oppressive terms."  *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1322, 27 Cal. Rptr. 3d 797, 809 (Cal. Ct. App. 2005). "Harsh," "oppressive," and "shock the conscience" are not synonymous with "unreasonable." *Id.*  Basing unconscionability on a contract's degree of  reasonableness injects an inappropriate level of judicial subjectivity into the analysis.  *Id.*  Courts may not intervene to change agreed upon contractual terms merely because they may be unreasonable.  *Id.* at 1322-23, 27 Cal. Rptr. 3d at 809.  To warrant judicial interference, the terms must actually "shock the conscience."  *Id.*

The terms challenged here do not shock the conscience under any measure.  This is not even a close question.  The contract, as cited in the complaint, clearly spells out that Plaintiff was free to redeem all accrued massages so long as her membership remained in good standing: "You have the entire term of the membership agreement to use all pre-paid massages.  You may continue to redeem your pre-paid massages after the initial term of the membership as long as your membership has been renewed and is current." (Compl. ¶ 17.)  For whatever reason (it is not addressed in the complaint) Ms. Hahn only used two massages during the 23-month term of her membership.  (Compl. ¶ 8.)  Providing Ms. Hahn almost two years to redeem 23 one-hour massages can hardly be called unreasonable, let alone "shocking," as a matter of law.

12

Also, if certified verbatim, Plaintiff's proposed Class would include all persons who "forfeited paid-for massages . . . .", regardless of number.  (Compl. ¶ 23.)  The Class would therefore include members who failed to redeem just one massage, which is valued at $59 at the membership rate.  (Compl. ¶ 7.)  The loss of the ability to book a $59 massage after an initial membership period (of at least thirty days) has concluded is simply not "shocking" under California's unconscionability jurisprudence or otherwise.  *See, e.g., Morris*, 128 Cal. App. 4th at 1324, 27 Cal. Rptr. 3d at 810 (finding no unconscionability and stating "we are skeptical that a one-time [account fee] of $150 is so harsh or oppressive as to 'shock the conscience'"); *Aron v. U-Haul Co. of Cal.*, 43 Cal. App. 4th 796, 809, 49 Cal. Rptr. 3d 555, 565 (Cal. Ct. App. 2006) ($20 refueling fee did not "shock the conscience as a matter of law").

Because Hahn has failed to plead the elements, or factual basis, required for Section 1670.5 unconscionability, her claim fails.  *See Morris*, 128 Cal. App. 4th at 1316, 27 Cal. Rptr. 3d at 804 ("[a]s a separate . . . basis for the UCL claim, the complaint alleges that the termination fee . . . is unconscionable under [§ 1670.5].  We conclude Morris's factual allegations fail to state an unconscionability claim"); *Biggins v. Wells Fargo & Co.*, 266 F.R.D. 399, 411-12 (N.D. Cal. 2009) (dismissing an insufficiently pleaded Section 1670.5-based UCL claim).

## V.   THE COMPLAINT FAILS TO SATISFY THE "UNFAIR" PRONG OF THE CALIFORNIA UNFAIR COMPETITION LAW

### A.   Plaintiff's UCL Theory Is Inconsistent with Existing Legislative Intent.

To evaluate the validity of a UCL claim for unfair business practices, a court must examine existing legislative intent. *Cel–Tech, supra,* 20 Cal. 4th at 182, 973 P.2d at 546. "Courts may not simply impose their own notions of the day as to what is fair or unfair. Specific legislation may limit the judiciary's power to declare conduct unfair.  If the Legislature has permitted certain conduct … courts may not override this determination." *Id.*  In deference to legislative intent, a court must step aside when legislative action creates a "safe harbor" that prevents conduct from being subject to a UCL claim.  *See Rose v. Bank of Am., N.A,* 200 Cal.

13

App. 4th 1441, 1448, 133 Cal. Rptr. 3d 615, 622 (Cal. Ct. App. 2011) (summarizing sources of safe harbors).

And even in the absence of a literal safe harbor, when a consumer brings a claim under the UCL, a court must examine legislative intent to determine if the consumer states a claim. *See, e.g.*, *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 990-992, 74 Cal. Rptr. 3d 47, 55-56 (Cal. Ct. App. 2008) (holding plaintiff failed to state a UCL claim because plaintiff failed to show the requisite legislative intent showing that the complained-about business practice was unfair). A consumer's UCL claim for unfair business practices must be dismissed unless she shows that "the allegedly unfair business practice [is] *'tethered' to a legislatively declared policy* or has some actual or threatened impact on competition." *Id.* at 56 (emphasis added).

Here, a review of existing legislation makes clear that the Legislature intended to exempt massage therapy businesses like Massage Envy from litigation over its straightforward membership practices. Existing legislative intent is certainly clear and strong enough to dispel doubt that Plaintiff can produce any "legislatively declared policy" that supports her allegations that Massage Envy's business policy is unfair within the meaning of the UCL. *See Buller*, 160 Cal. App. 4th at 991, 74 Cal. Rptr. 3d at 55.

Discussion of legislative intent requires a brief summary of Cal. Civ. Code §§ 1812.80-1812.98, which are the consumer protection statutes that govern health club membership contracts.[11] These statutes govern, in extensive detail, how members can cancel or terminate gym memberships, and what portion of a contract must be refunded upon termination or cancellation. *See* Cal. Civ. Code §§ 1812.80-1812.98. However, the Legislature has exempted professional massage businesses from these statutes. Cal. Civ. Code § 1812.81 (exempting "contracts for professional services rendered or furnished by a person licensed under the provisions of Division 2 (commencing with Section 500) of the Business and Professions

---

[11] Civil Code refers to health clubs and gyms as "health studios."

Code"), Cal. Bus. & Prof. Code §§ 4600-4620 (regulating massage therapists and related businesses).

In addition, the Legislature has established the California Massage Therapy Council, a regulatory board with authority over massage therapy businesses. Cal. Bus. & Prof. Code § 4600 *et seq.* The Legislature also has declared certain "unfair business practices" that are specific to massage therapy businesses. Cal. Bus. & Prof. Code §§ 4605-06. Despite this regulatory landscape, the Legislature has declined to regulate cancellation or termination of contracts, or refunds, for massage therapy businesses.

A closer look at this statutory scheme shows that the Legislature did not intend to subject Massage Envy to UCL claims as to its refund policy. If Massage Envy met the statutory definition of a health club (and indeed, the Massage Envy membership agreement and business model share many similarities with that of a health club), Plaintiff's UCL action would be plainly barred. When a health club member cancels her membership contract, she remains liable "for that portion of the total contract payment, including initiation fees and other charges however denominated, *that has been available for use* by the consumer." Cal. Civ. Code § 1812.85(e) (emphasis added). Because Plaintiff was entitled to benefits for the entirety of her membership term, Massage Envy's policy complies with this statute. Therefore, if Massage Envy were subject to the same enhanced regulations governing health clubs, the same terms challenged in this lawsuit would be deemed statutorily compliant, and Massage Envy would be free to claim "safe harbor" protection from the UCL. *Cel–Tech,* 20 Cal. 4th at 182-83, 973 P.2d at 546-47 (establishing safe harbor from UCL claims of unfair practices when a statute "clearly permit[s] the conduct" at issue).

Stated another way, the Legislature decided to regulate massage studios *less* than health clubs, yet the Massage Envy contractual provision challenged here is already compliant with the heightened refund regulations reserved for health clubs. The similarities between a gym and Massage Envy are evident. Yet Plaintiff would like the Court to find that the Legislature

15

allows the forfeiture of unused yoga studio dues, but intends to prohibit the same terms for massages.  The Legislature has not made such a distinction, nor could one be found.  As a result, Plaintiff cannot demonstrate that her complaint is "tethered to a legislatively declared policy" that makes Massage Envy's refund policy unfair. If anything, the opposite is true: Massage Envy's policy is "tethered to a legislatively declared policy" in a way that compels dismissal of the UCL unfair competition claim.

Plaintiff cannot make the requisite showing of legislative intent for a second reason: her UCL claim conflicts with the Legislature's intent to exempt massage therapy businesses from *any* health-club contract termination statutes. It stands to reason that the Legislature exempted massage therapy businesses from health-club regulations to spare them the burden of complying with those statutes. But perversely, plaintiff would have the Court find that by granting an exemption, the Legislature intended to subject massage therapy businesses to even *greater* burdens in the form of defending class actions under the UCL. Plaintiff's lawsuit runs contrary to the accepted understanding that an exemption from business regulations evidences a legislative intent to reduce regulatory burdens, not increase them.

## B.   The Massage Envy Membership Agreement Is Not "Unfair" Under the UCL.

To adjudicate a contract "unfair" under the UCL, the Court must find the following factors: (1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided.  *Camacho v. Auto. Club of S. California*, 142 Cal. App. 4th 1394, 1403, 48 Cal. Rptr. 3d 770, 777 (Cal. Ct. App. 2006)

Hahn cannot prove the first prong because she suffered no "injury"; case law amply illustrates this point.  In *Camacho*, the plaintiff owed money because of an auto accident for which he was at fault.  *Id*. at 1405-1406, 48 Cal. Rptr. 3d at 779.  He alleged "unfair" business practices under the UCL when a collection agency attempted to collect that money.  *Id*.  The court found that Camacho failed the first unfairness prong because he suffered no "injury."  *Id*.

16

It reasoned that "[s]ince Camacho was liable for the damages arising from the accident, it does not violate his rights to attempt to collect those damages . . . he was not injured." *Id*.  Another court reached the same conclusion where the plaintiff sued eBay for an allegedly "unfair" fee; it found no "injury" because eBay's user agreement —to which the plaintiff had agreed— expressly permitted eBay to charge the disputed fee. *Missing Link, Inc. v. eBay, Inc.*, No. C-07-04487 RMW, 2008 WL 3496865 at *6-7 (N.D. Cal. Aug. 12, 2008).

As outlined herein, Hahn voluntarily agreed to the now-disputed provisions, clearly stated in the contract (again, she does not allege that the policies were hidden or misrepresented).  So, like the *Camacho* and *Missing Link* plaintiffs, Hahn has not been "injured," as a matter of law.

Hahn is also unable to meet the third unfairness prong (*i.e.*, it must be an injury that consumers themselves could not reasonably have avoided).  In finding that the plaintiff in *Camacho* failed to satisfy the third prong, the court held that "Camacho could have reasonably avoided [the alleged injury] by complying with the law and obtaining insurance" and thus, "even if there is some theory under which Camacho can claim that he was 'injured,' the fact is that he could have avoided any and all action taken by defendants by obtaining and carrying insurance, as the law requires." *Camacho*, 142 Cal. App. 4th at 1406, 48 Cal. Rptr. 3d at 779. Another court reached this same result in a wrongful foreclosure case —it found that that an alleged injury of a lower credit score was not "unfair" because plaintiffs could have prevented the "injury" by making timely mortgage payments. *Lyons v. Bank of Am., NA*, No. 11–01232 CW, 2011 WL 3607608, at *11-12 (N.D. Cal. Aug. 15, 2011).

Here, to the extent that one could even classify the unused membership benefits as an "injury" (which, in accordance with the above analysis, is not conceded), Ms. Hahn only has herself to blame — at all times during her membership, she was free to use all 23 one-hour

17

massages. [12]   Yet despite having 23 months do so, she inexplicably failed to redeem the vast majority (21) of them.   The *Camacho* plaintiff could have obtained insurance, the *Lyons* plaintiff could have made timely mortgage payments and Ms. Hahn could have scheduled and received her massages.

All in all, Plaintiff's unfairness-based UCL claim should be dismissed.  She suffered no "injury" because she herself caused the alleged "damages."  And to the extent the Court is inclined to find an "injury," the claim still fails because Hahn could have avoided her damages by simply redeeming her massages.

## VI.   PLAINTIFF MAY NOT INVOKE THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING TO NEGATE EXPRESS CONTRACT TERMS

Where a plaintiff alleges a breach of the implied covenant of good faith and fair dealing, but defendant's conduct is allowed by express terms of the contract, as it is here, then the claim should be dismissed. *See, e.g.*, *Jurin v. Google, Inc.*, 768 F. Supp. 2d 1064, 1073-74 (E.D. Cal. 2011) (granting motion to dismiss claim for breach of implied covenant of good faith and fair dealing and finding "[t]he implied covenant of good faith and fair dealing is limited to protecting express terms of the contract, and cannot itself override an express contractual provision"). California law on this point is clear: if a defendant's conduct is "expressly permitted" by contract and that conduct is also "within the parties' reasonable expectations," then that defendant never violates an implied covenant of good faith and fair dealing. *Carma Developers (Cal.), Inc., v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 376, 826 P.2d 710, 729 (1992) (en banc).

Ms. Hahn at least twice expressly agreed that she could not use monthly Massage Envy massages unless her membership remained active. (Membership Agreement, at 1: "You may continue to redeem your pre-paid massage after the initial term of the membership as long as your membership has been renewed and is current"; Membership Agreement, at 2: "Your

---

[12] Had Ms. Hahn experienced a medical condition that prevented her from receiving massages, for example, she would have been entitled to cancel her contract and receive a refund of all paid in full services.  *See* Membership Agreement, at 2, ¶ 4 (Frankel Decl., ¶ 4).

membership status must be active in order to redeem any membership services including membership massages"). Yet in her complaint, Ms. Hahn contends that the implied covenant of good faith overrides these express terms. Indeed, she alleges that when Massage Envy exercised these express contract rights, it violated an implied covenant of good faith and fair dealing. (Complaint, ¶¶ 45-49.) This cannot be so.

Because Ms. Hahn complains about acts that are expressly permitted by contract, she fails to plead the existence of an implied covenant that that forbids Massage Envy from refusing to allow Ms. Hahn to redeem massages after her membership lapsed. *Carma*, 2 Cal. 4th at 374, 826 P.2d at 728 ("As to acts and conduct authorized by the express provisions of the contract, no covenant of good faith and fair dealing can be implied which forbids such conduct"). Similarly, she fails plead a breach of any such implied covenant. *Id.* ("And if defendants were given the right to do what they did by the express provisions of the contract there can be no breach").

For much the same reason, Ms. Hahn fails to allege that the Membership Agreement violates the parties' reasonable expectations. The Membership Agreement spells out the parties' obligations in plain English. In addition, reasonable expectations should be viewed in light of the large, competitive marketplace for licensed massage therapy services in California. When she signed the Membership Agreement, Ms. Hahn lived in a suburb of San Diego. (*See* Membership Agreement, at 1.) Presently, more than 1,800 licensed massage therapists are registered in San Diego's city limits.[13] Given this plentitude of licensed massage therapists, and

---

[13] *See* California Massage Therapy Council therapist registry (the "Registry"), available at https://www.camtc.org/VerifyCertification.aspx (last accessed January 24, 2012). In deciding a Rule 12(b)(6) motion, the Court may take judicial notice of "matters of public record" without converting the motion to one for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2000). The Registry is a public database of the California Massage Therapy Council, which is the state entity that regulates massage therapists, and is therefore a public record. *See* https://www.camtc.org/

The number of licensed massage therapists in San Diego can be ascertained as follows: From the Registry's search page (https://www.camtc.org/VerifyCertification.aspx) enter "San Diego" as city of residence, and leave all other fields blank. The Registry provides in alphabetical order the names of all massage therapists licensed and living in San Diego, with 10 results per page, for 181 consecutive pages. The user may navigate between pages by using the "Next" link atop the results list, or for all pages after the first results page, by changing by increments of 10 the number that ends the URL

given that California does not regulate terms of massage therapy contracts, Ms. Hahn had the freedom to shop for a contract that best fit her preferences. So it would be reasonable to expect that if Ms. Hahn did not find the Membership Agreement convenient, she could find a suitable contract with one or more of the 1,800-plus massage therapists in her area.   Therefore, Ms. Hahn has complained about conduct that is both expressly authorized by contract *and* within the parties' reasonable expectations.   As a result, the complaint fails to state a claim for breach of implied covenant of good faith and fair dealing and this claim should be dismissed.

## VII.   CONCLUSION

For all the foregoing reasons, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, Defendants respectfully move the Court for an Order dismissing the putative class action complaint, in its entirety, for failure to state a claim upon which relief can be granted. Defendants request that this dismissal be *with prejudice*, as review of the facts that have already been specifically pleaded, and the terms of the membership agreement, make clear that amendment would be futile.

displayed on the search results page. The first page of results is http://search.camtc.org/cgi-shl/TWServer.exe?Run:CMTSEARCH_1;   the   second   page   is   http://search.camtc.org/cgi-shl/TWServer.exe?Run:CMTSEARCH_1:PASSPOSTS:City=san diego:NEXT:11, and the subsequent 179 pages can be accessed by changing the end of the URL from
NEXT:11   to   NEXT:21,   then   NEXT:31   and   so   on   until   the   last   page,   which   is http://search.camtc.org/cgi-shl/TWServer.exe?Run:CMTSEARCH_1:PASSPOSTS:City=san diego:NEXT:1811

Dated:  January 25, 2012

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By        *s/ John C. Dineen*
          JOHN C. DINEEN

Attorneys for Defendants
MASSAGE ENVY FRANCHISING, LLC, and
MASSAGE ENVY, LLC
Email:  jdineen@sheppardmullin.com

21