1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9         **SOUTHERN DISTRICT OF CALIFORNIA**
10

11   GAIL HAHN, *et al*.,                              Case No. 12cv153 DMS (BGS)

12                            Plaintiffs,        **ORDER (1) GRANTING MOTION**
                                                 **TO INTERVENE; AND (2)**
13         vs.                                   **GRANTING IN PART AND**
                                                 **DENYING IN PART MOTION**
14   MASSAGE ENVY FRANCHISING, LLC,              **FOR CLASS CERTIFICATION**

15                            Defendant.

16

17          In this consumer class action, Chaille Duncan and Alexis Hernandez filed a motion under

18   Federal Rule of Civil Procedure 24(b) to intervene as named plaintiffs and class representatives.

19   Defendant Message Envy Franchising, LLC ("Message Envy") does not oppose the motion.

20   Accordingly, the motion to intervene is granted as unopposed. *See* Civ. Loc. Rule 7.1(f). Duncan and

21   Hernandez are granted leave to intervene as named plaintiffs and class representatives.

22          In addition, Plaintiffs filed a motion for class certification under Rule 23(b)(2) and (b)(3).

23   Defendant filed an opposition and Plaintiffs replied. On December 20, 2014, the matter came on for

24   a hearing. Jeffrey Krinsk and William Restis appeared on behalf of Plaintiffs. Luanne Sacks and

25   Cynthia Ricketts appeared on behalf of Defendant. On January 15, 2014, Defendant filed a motion

26   to file additional evidence, which Plaintiffs opposed. The motion was denied on January 17, 2014.

27   On February 6, 2014, Defendant filed notice of a recently decided case, *Berger v. Home Depot*, 741

28   F.3d 1061 (9th Cir. 2014), to which Plaintiffs responded. Upon consideration of the foregoing and

1  for the reasons which follow, Plaintiffs' motion for class certification is granted in part and denied in

2  part.

3  # I.

4  ## BACKGROUND

5      Plaintiffs allege Defendant Massage Envy is a membership-based massage franchise that

6  allows its consumer members to receive one fifty minute, transferrable massage per month in

7  exchange for a monthly membership fee of approximately $60.  Under Defendant's membership

8  agreement, when members are unable to schedule their monthly massages, all "unused prepaid

9  massages" accrue and can be redeemed at any time.  The membership agreement, however, requires

10  a member to continue to purchase additional monthly massages as a condition to redeem the massages

11  already purchased. When a member cancels or ceases membership payments, all unredeemed prepaid

12  massages are "summarily and irreversibly forfeited."  (FAC ¶ 1.)

13      According to Plaintiffs, Massage Envy designed its massage memberships to mimic the "health

14  club" membership model.  (*Id.* ¶ 16.)  Unlike a health club, however, Defendant's members do not

15  purchase access to Massage Envy's facilities, but instead only purchase prepaid massage services at

16  a discounted price.[1]  Plaintiffs allege the "membership" aspect of Defendant's business model arises

17  from the recurring nature of Defendant's charges, not from any exclusivity members receive to

18  Massage Envy's services.  (*Id.*)

19      The FAC alleges that in September 2008, Plaintiff Gail Hahn purchased a membership at

20  Massage Envy's Lakeside franchise. (Pl.'s Ex. H.) The standardized membership agreement provided

21  that Hahn would receive one massage with each of her $59 monthly dues payments.  The agreement

22  provided that unredeemed prepaid massages could be used at any time, so long as the membership was

23  active.  Active membership required payment of the monthly fee.  Hahn made 23 monthly payments,

24  but was only able to redeem two massages during her membership.  In March 2009, she attempted to

25  cancel her membership, but was refused.  After Hahn directed her credit card company to stop the

26  

27      [1] Defendant argues that membership has "distinct advantages," including a reduced price for

28  one massage monthly (pointing out the "pay as you go" rate for a fifty minute massage is $98), plus additional massages and facials, retail products, and family memberships all at discounted prices through a nationwide reciprocity network of franchisees.  *See* Opp'n at 2-3.

automatic monthly payments, her account was referred to collections, but later the Lakeside Massage Envy franchise agreed to cease collection efforts. However, Hahn's request to redeem her 21 unused prepaid massages was denied.

Plaintiff Duncan signed a form membership agreement in June 2009, at a San Diego franchise. She cancelled her membership on February 11, 2011, at which time she had three unused prepaid massages. Her request to redeem the massages was denied based on the cancellation of her membership. (Duncan Decl. & Pl.'s Ex. J.)

Plaintiff Hernandez signed a form membership agreement in October 2011, at a Chula Vista franchise. When she cancelled her membership in March 2013, she had eight unused prepaid massages. As with Hahn and Duncan, Hernandez was precluded from redeeming any messages after cancellation of her membership. (Hernandez Decl. at 1 & Pl.'s Ex. I.)

Hahn filed this putative consumer class action against the franchisor, Defendant Massage Envy. The gravamen of the case is that Massage Envy's standard form membership agreements impermissibly provide for forfeiture of prepaid massage services. Plaintiffs advance two principal theories of wrongdoing, each of which Plaintiffs assert is susceptible to class adjudication: (1) the membership agreements are procedurally and substantively unconscionable as consumer contracts of adhesion that permit forfeiture of the prepaid massage services in violation of California Civil Code §§ 1670.5 and 1442; and (2) the membership agreements provide a "penalty liquidated damages" through forfeiture of the prepaid massage services upon breach of the agreement in violation of California Civil Code § 1671(d).

Plaintiffs allege four claims in their FAC: (1) violation of the unlawful business practices provision of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. ("UCL"); (2) violation of the UCL's unfair business practices provision; (3) breach of the implied covenant of good faith and fair dealing; and (4) declaratory relief. Plaintiffs seek injunctive relief prohibiting the loss of prepaid unredeemed massage services, reinstatement of the right to use any prepaid unredeemed massages, and restitution. The action was filed in State court, and later removed to this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332(d)(10) and 1453.

1    There are approximately 132 Massage Envy franchises in California.  The franchisees, also

2    referred to as "clinics," sell the memberships at issue.  Plaintiffs contend that Defendant requires all

3    franchisees to follow the same procedure for aggressively promoting memberships to customers while

4    including the unlawful "forfeiture" provision in its standardized membership agreements.

5    Plaintiffs seek to certify a class action with two subclasses consisting of California residents,

6    excluding legal entities, who forfeited unused prepaid massage services either because they cancelled

7    their membership or allowed the membership to fall into arrears, as follows:

8    All California residents, from December 7, 2007 to the present, who were enrolled in
     a Massage Envy membership program and forfeited prepaid massages because they
9    cancelled their Massage Envy account.

10   All California residents, from December 7, 2007 to the present, who were enrolled in
     a Massage Envy membership program and forfeited prepaid massages because they did
11   not keep their membership current by making timely payments.

12   Hahn is the proposed representative of the "arrears class," while Duncan and Hernandez are the

13   proposed representatives for the "cancellation class".  Certification is sought with respect to the UCL

14   and declaratory relief claims.  Because Plaintiffs seek a declaration that Defendant's business practices

15   are improper and prohibited, the declaratory relief claim is coextensive with the UCL claims.

16   Accordingly, this order focuses on the UCL claims.

17   **II.**

18   **DISCUSSION**

19   "The class action is an exception to the usual rule that litigation is conducted by and on behalf

20   of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, ___U.S.___, 131 S.Ct. 2541,

21   2550 (2011) (internal quotation marks and citation omitted).  "A party seeking class certification must

22   satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one

23   of the categories under Rule 23(b)." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir.

24   2013); *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l*

25   *Union v. ConocoPhillips Co.*, 593 F.3d 802, 806-07 (9th Cir. 2010) ("*United Steel*") (the burden is on

26   the moving party).

27   The district court must conduct a rigorous analysis to determine whether the prerequisites of

28   Rule 23 have been met. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).  It is a well-recognized

1    precept that "the class determination generally involves considerations that are enmeshed in the factual

2    and legal issues comprising the plaintiff's cause of action." *Coopers & Lybrand v. Livesay*, 437 U.S.

3    463, 469 (1978) (internal quotation marks and citation omitted).  However, "[a]lthough some inquiry

4    into the substance of a case may be necessary to ascertain satisfaction of the commonality and

5    typicality requirements of Rule 23(a), it is improper to advance a decision on the merits at the class

6    certification stage." *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir. 1983) (citation

7    omitted).  Rather, the Court's review of the merits is limited to those aspects relevant to making the

8    certification decision on an informed basis.  *See* Fed. R. Civ. P. 23 Advisory Committee Notes.  If a

9    court is not fully satisfied that the requirements of Rules 23(a) and (b) are met, certification should

10   be denied.  *Falcon*, 457 U.S. at 161.

11   **A.      Rule 23(a) Requirements**

12          "Rule 23(a) ensures that the named plaintiff is an appropriate representative of the class whose

13   claims she wishes to litigate.  The Rule's four requirements – numerosity, commonality, typicality, and

14   adequate representation – effectively limit the class claims to those fairly encompassed by the named

15   plaintiff's claims." *Dukes*, 131 S.Ct. at 2550-51 (internal quotation marks and citations omitted).  "A

16   party seeking class certification must affirmatively demonstrate his compliance with the Rule – that

17   is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions

18   of law or fact, etc." *Id*. at 2551 (emphasis in original).

19          **1.      Numerosity**

20          Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is

21   impracticable." Fed. R. Civ. P. 23(a)(1); *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003).  The

22   plaintiff need not state the exact number of potential class members; nor is a specific minimum

23   number required.  *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal.

24   1994).  Rather, whether joinder is impracticable depends on the circumstances of each case.  *Id*.  It is

25   undisputed that since 2007, more than 100,000 Massage Envy members in California lost unused

26   prepaid massage services due to cancellation, and more than 30,000 members lost such services

27   because their accounts were in arrears.  Defendant does not dispute a sufficient number of putative

28   class members exist to meet the numerosity requirement, and Court finds this requirement is met.

2.        **Commonality Under Rule 23(a) and Predominance Under Rule 23(b)(3)**

The second element of Rule 23(a) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  This means that the putative class members' claims depend on a common contention that:

> must be of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. [¶]  What matters to class certification ... is not the raising of common "questions" – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Dukes*, 131 S.Ct. at 2551 (internal quotation marks and citation omitted).

Under Rule 23(b)(3), "[t]he predominance inquiry focuses on the relationship between the common and individual issues and tests whether the proposed class [is] sufficiently cohesive to warrant adjudication by representation." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (internal quotation marks, footnote and citation omitted).  Unlike Rule 23(a)(2), which is met when there is "even a single common question," *Dukes*, 131 S.Ct. at 2556 (quotation marks and brackets omitted), Rule 23(b)(3) requires that "common questions *predominate* over any questions affecting only individual class members." *Amgen, Inc. v. Conn. Retirement Plans and Trust Funds*, __ U.S. __, 133 S.Ct. 1184, 1196 (2013) (internal quotation marks and citation omitted, emphasis in original).  Because "Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions[,]" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 & 623 (1997), the Court considers these matters – commonality and predominance – together.

Plaintiffs argue they satisfy the requirements of commonality and predominance because Defendant's membership policy, embodied in standardized membership agreements, was uniform in that the agreements provide for forfeiture of unused prepaid massages upon cancellation or arrears.  All putative class members entered into a form membership agreement with Massage Envy clinics.  Plaintiffs point out that Defendant, as opposed to the clinics, is the exclusive owner of customer accounts, and, based on the Franchise Disclosure Agreement and the Franchise Agreement, Defendant exercises wide reaching control over the clinics, including customer service policies, issuance of gift

1  cards, and the terms of membership agreements. (*See* Pl.'s Req. for Jud. Notice in Opp'n to Def.'s

2  Mot. to Dismiss, doc. no. 43 ("RJN"), Exs. A (Franchise Disclosure Agreement) & B (Franchise

3  Agreement at 18-19 & 34)).

4  According to Plaintiffs, Defendant also has a uniform policy that its clinics must follow when

5  soliciting customers for membership. The clinics are required to follow Defendant's sales script. (Pls'

6  Ex. G; *see also* Conklin Decl. at 5-6 (Defendant distributed template sales scripts to clinics); Pls' Ex.

7  L at MEF-Hahn3532.) The policy requires clinics to present a customer with Defendant's form

8  membership agreement immediately after giving them a massage. (Pls' Exs. F, G & K; Hansen Decl.

9  at 11; *see also* Operator Decls.[2]) The script explains that a member will be entitled to a one hour

10  massage each month so long as the monthly fee is paid, but does not expressly disclose that unused

11  accumulated prepaid massages can be irrevocably forfeited upon cancellation or arrears. (Pls' Ex. F.)

12  Instead, the script states:

13  [Y]ou have the entire term of your membership to use your member services. As long
   as your membership is active, your services roll over. In other words, if you can't
14  come in one month, you'll have two waiting for you the next month ... .

15  (*Id.*)

16  Plaintiffs argue the membership agreements, like the sales script, gloss over the consequences

17  of cancellation of membership or default. For example, Hernandez's membership agreement provides,

18  in pertinent part:

19  You have the entire initial and renewed term of the membership agreement to use all
   membership services. You may continue to redeem membership services as long as
20  your membership is in effect and is paid current. Upon termination or cancellation of
   your membership, all unredeemed membership services will expire.
21

22  (Pls' Ex. K.) Plaintiffs assert the membership agreements are ambiguous and do not expressly inform

23  consumers that forfeiture of prepaid services may occur when a membership is cancelled or falls into

24  arrears, and yet that is exactly what happens: "all pre-paid massages are permanently forfeited ... ."

25  (FAC ¶19.) "In other words, Massage Envy gets paid but gives nothing in return." (*Id.*)

26

27  [2] Defendant filed declarations from ten clinic managers, owners and/or regional
   developers in California – Heather Allen, Chris Binkley, John Choi, Dennis Conklin, Andrew Garsten,
28  Triss Goodwin, Stephanie Hough, Amanda Martinez, Kirk Peacock and Carol Warren. Collectively,
   these declarations are referred to as the "Operator Declarations."

Plaintiffs note that Defendant's cancellation policy is uniform for all clinics. (Pls' Exs. S & T.)  The form agreement limits cancellation during the initial term to cases of permanent relocation or medical infirmity, either of which the member must substantiate with written proof, (Pls' Ex. S), thus forcing a member to purchase at least one massage per month for the initial term, whether or not she is able to use it.  After expiration of the initial term, the membership becomes month-to-month. To cancel a month-to-month membership, the member must give 30 days' notice.  If the clinic agrees to cancel, the member is charged one more monthly payment and the membership terminates 30 days after the last payment.  As discussed, unused prepaid massages expire upon termination. (*See* Hansen Decl. Exs. G-T; Pls' Exs. H-J.)  Similarly, under the arrears policy, a member cannot use prepaid massages until the account is brought current. (*See id.* & Levine Depo. at 138.)[3]

Defendant enforces compliance with its policies through quality control procedures with its clinics, including a standardized policy to identify and cure issues of noncompliance or violations of the Franchise Agreement, System Standards or Business Policies. (Pls' Ex. V (Compliance Policy).)  Compliance is monitored by means of announced or unannounced visits to the clinics referred to as Operations Standard Review.  (Pls' Ex. W.)  Defendant monitors its clinics to ensure that they are using the "Current Corporate Approved Membership Agreement" and that "[e]very Sales Associate know[s] the script word-for word."  (Pls' Ex. P at MEF-Hahn3559, 3579.)  A clinic that sells "unapproved membership offerings and/or modif[ies] the terms of existing membership types" is automatically in default of the Franchise Agreement.  (Pls' Exs. V & W.)

Defendant also enforces compliance through use of its Millenium software, a standardized computer system linking the clinics to each other and to Defendant.  (RJN Ex. B at 18-19; Miller Depo.[4] at 40, 44, 132; Pls' Ex. O.)  All membership agreements and transactional information, including payments and cancellations, are processed though Millenium.  (Miller Depo. at 52-53, 67, 91; *see also* Opp'n at 3 n.1.)

---

[3]     Excerpts from the deposition of Jordan Levine, Defendant's director of field operations, are contained in Plaintiffs' Exhibit U.

[4]     Excerpts from the deposition of Dan Miller, Defendant's Chief Information Officer, can be found in Plaintiffs' Exhibit D.

Plaintiffs argue commonality and predominance are met because Defendant uses a uniform sales script and a form membership agreement.  The commonality and predominance requirements are analyzed in light of Plaintiffs' causes of action.  *Berger*, 741 F.3d at 1068.  Here, Plaintiffs allege the form membership agreements violate the UCL.  The UCL "establishes three varieties of unfair competition – acts or practices which are unlawful, or unfair, or fraudulent."  *Cal-Tech. Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999).  While Plaintiffs' FAC alleges claims under both the "unfair" and "unlawful" prongs of the UCL, their motion for class certification focuses entirely on the unlawful prong.  Thus, in the absence of substantive discussion by the parties of the proof necessary for class certification under the unfair prong of the UCL, this order neither addresses that prong nor has application to any claim under that prong.[5]

An unlawful business practice under the UCL is "an act or practice, committed pursuant to business activity, that is at the same time *forbidden by law*."  *Progressive W. Ins. Co. v. Yolo County Super. Ct. (Preciado)*, 135 Cal. App. 4th 263, 287 (2006) (emphasis in original)(citation omitted).  Plaintiffs assert that, as to the cancellation and arrears subclasses, the form membership agreements are unconscionable and in violation of California Civil Code §§ 1670.5 and 1442. With respect to the arrears subclass, Plaintiffs assert that the membership agreements provide an unlawful penalty upon default (forfeiture) in violation of California Civil Code § 1671(d).  These theories are addressed in turn.

a.   Unconscionability

Plaintiffs maintain that the membership agreements are unconscionable under settled California case law.  Further, Civil Code § 1670.5(a) provides that if any clause of a contract is found to be "unconscionable at the time it was made" the court may "enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."  Civil Code § 1442 provides that a "condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created."  Plaintiffs argue

_____

[5]     The UCL does not define the term "unfair," *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012), and the extent to which such claims "must be tethered to a legislatively declared policy is a question of debate in California courts." *Gutierrez v. Wells Fargo Bank, N.A.*, 704 F.3d 712, 717 n.3 (9th Cir. 2012).

1 | that Defendant's membership agreements violate the foregoing statutes, therefore Defendant's acts

2 | or practices are unlawful under the UCL.

3 | Unconscionability is a question of law for the court to decide.  *See Gatton v. T-Mobile USA,*

4 | *Inc.*, 152 Cal. App. 4th 571, 579 (2008).  To prevail, the plaintiff must show that a contract provision

5 | is both procedurally and substantively unconscionable.  *Armendariz v. Found. Health Psychcare*

6 | *Servs. Inc.,* 24 Cal.4th 83, 99 (2000).  The procedural element focuses on "oppression or surprise due

7 | to unequal bargaining power," and the substantive element focuses on "overly harsh and one-sided

8 | results."  *Id.*  A sliding scale is applied, so that the more substantively oppressive the contract term,

9 | the less evidence of procedural unconscionability is required to find it unenforceable, and *vice versa*.

10 | *Id.*

11 | Plaintiffs argue that because unconscionability focuses on the terms of the contract, class

12 | certification is appropriate.  Defendant counters that individual inquiries into contract formation and

13 | differences in the terms of each contract will be required to determine unconscionability, thus

14 | individual issues will predominate.

15 | More specifically, with respect to the procedural element of unconscionability, Defendant

16 | argues the Court will have to engage in a subjective individualized inquiry regarding contract

17 | formation, including the relative sophistication of each class member.  Procedural unconscionability

18 | generally takes the form of a contract of adhesion, that is, a standardized contract drafted by the party

19 | of superior bargaining strength and imposed on the other, without the opportunity to negotiate the

20 | terms. *See Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976, 981 (9th Cir. 2007).  In this

21 | case, the clinics use a script in presenting the form membership agreements to consumers.  The script

22 | not only instructs clinic staff what to say, but directs the circumstances under which the membership

23 | offer is made: customers should be approached immediately after a massage and after "mak[ing] sure

24 | they enjoyed the massage and the therapist was a good fit before trying to sell a membership."  (Pls'

25 | Ex. F.)  Although Defendant has presented evidence that clinic employees do not necessarily follow

26 | the script vebatim and clinics sometimes allow experienced employees to personalize, (*see, e.g.,*

27 |

28 |

1   Operator Declarations), those modifications – even if credited – do not affect the uniform manner in

2   which the script directs clinics to sell memberships.[6]

3        Furthermore, Defendant has presented no evidence that the terms of membership were

4   individually negotiated before entering into agreements.  Thus, whether the form agreements at issue

5   are contracts of adhesion and presented in a manner "that results in no real negotiation and an absence

6   of meaningful choice[,]" *Gatton*, 152 Cal. App. 4th at 581 (internal quotation marks and citation

7   omitted), may be determined on common evidence.  S*ee also AT&T Mobility LLC v. Concepcion*, __

8   U.S. __, 131 S.Ct. 1740, 1750 (2011) ("the times in which consumer contracts were anything other

9   than adhesive are long past").

10        "[A]bsent unusual circumstances, use of a contract of adhesion establishes a minimal degree

11   of procedural unconscionability... ."  *Gatton*, 152 Cal. App. 4th at 585.  Unusual circumstances are

12   present when the plaintiff is highly sophisticated (for example, when the plaintiff is an attorney

13   specializing in litigation of the very terms claimed to be unconscionable), "and the challenged

14   provision does not undermine important public policies."  *Id*. at 585 n.8.  Defendant argues unusual

15   circumstances are present because Hahn is a paralegal in the business of preparing legal documents

16   for the public, (Hahn Depo. at 20);[7] however, this does not rise to the level of sophistication required,

17   nor does it address whether the challenged forfeiture provision undermines important public policies.

18   Whether the standard form membership agreements are adhesive is therefore suitable for class

19   adjudication as the issue can be determined based on common evidence.

20        The adhesive nature of a contract alone is sufficient to meet the procedural unconscionability

21   element, and "justifies scrutiny of the substantive fairness of the contractual terms."  *Gatton*, 152 Cal.

22   App. 4th at 586 n.9.  As the court in *Gatton* observed:

23            ... [T]he imbalance of power creates an opportunity for overreaching in drafting form
             agreements.  *The possibility of overreaching is even greater in ordinary consumer*
24            *transactions involving relatively inexpensive goods or services because consumers*
             *have little incentive to carefully scrutinize the contract terms* or to research whether
25

26        [6]     Defendant does not attempt to explain the inconsistency between the requirement that
     clinic staff follow the script verbatim, (*see* Pls' Ex. P at MEF-Hahn3559, 3579 (Operations Standards
27   Review)), and the Operators' representation that they do not follow the script verbatim.

28        [7]     Excerpts from Hahn's deposition can be found at Ricketts Decl. Ex. A and Pls' Reply
     Ex. E.

- 11 -

1         there are adequate alternatives with different terms, and companies have every
2         business incentive to craft the terms carefully and to their advantage. *The unconscionability doctrine ensures that companies are not permitted to exploit this dynamic by imposing overly one-sided and onerous terms.*
3

4    *Id.* at 585 (emphasis added).

5         Substantive unconscionability focuses on whether the results of the contract term are overly

6 harsh or one-sided. *Armendariz*, 24 Cal.4th at 114. Defendant argues commonality and predominance

7 are lacking because the clinics modified the sales script, the form membership agreement varied over

8 time (at least twelve different versions were used from 2007 through the present), (Hansen Decl. at

9 11 & Exs. G-T), and individual clinics may have deviated from the form. (Hansen Decl. at 14-15; *see*

10 *also* Operator Decls.).

11         Although the form agreements varied over time in many respects, only changes to the

12 provisions concerning loss of prepaid massages are relevant here. In this respect, all versions state

13 that a monthly dues membership entitles the member to one fifty minute massage session per month,

14 and that such massages can be redeemed at any time so long as the membership is active (also

15 described as "current" and/or "in good standing").[8] (*See* Hansen Decl. Exs. G-T; Pls' Exs. H-J.)

16 Hahn's September 13, 2008 agreement also provided that her "membership status must be active in

17 order to redeem any membership services including membership massages." (Pls' Ex. H at 2 (Hahn).)

18 The October 2008 form added that, "Upon termination or cancellation of your membership, all

19 unredeemed membership massages will expire." (Hansen Decl. Ex. G.) In October 2009, the

20 agreement added at the end of that sentence that expiration occurs "30 days after the final EFT

21 payment has been processed." (*Id.* Ex. J.) The March 2011 version added that "[n]o refunds will be

22 given for any remaining unused sessions." (*Id.* Ex. N.) Until March 2011, all versions of the

23 agreement incorporated the membership brochure, which was copyrighted in 2007. (*See* Hansen Decl.

24 at 13 & Exs. G-T & W.) The membership brochure provides, in relevant part, "You have the entire

25

---

26       [8]      The agreements are set up for an initial 3 to 13 month term. At the end of the initial
27 term, the membership renews to a month-to-month term until terminated. All versions provide that the membership cannot be cancelled during the initial term except with written proof of moving more than 25 miles from *any* franchise, or medical reason precluding use of massage services. After the
28 initial term, the automatically renewed membership can be cancelled upon 30 days' written notice to the clinic where membership originated. (Hansen Decl. Exs. G-T; Pls' Exs. H-J.)

term of your membership to use your pre-paid massages.  Any unused massages will expire should you elect not to renew your membership."  (*Id*. Ex. W.)

When read together with the membership brochure, the various versions of the form agreement are not materially different, because they all provide that prepaid massages will expire at the end of the membership term.  Plaintiffs contend the form agreements are ambiguous and fail to place class members on notice that their prepaid massages will be forfeited.  (FAC ¶ 20.)  Plaintiffs assert that Defendant impermissibly construes the terms at issue to allow forfeiture of prepaid massage services, which violates the requirement that a "condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created."  Cal. Civ. Code § 1442.  Thus, whether the form agreements are sufficiently harsh or one-sided to be substantively unconscionable and in violation of the UCL can be decided on a classwide basis as the agreements can be interpreted on common facts and law.

Nevertheless, because of the variations in the membership agreement over time, Defendant likens this case to *Berger v. Home Depot USA, Inc.*, 741 F.3d at 1061.  *Berger* was a putative class action asserting, in relevant part, a UCL claim for fraudulent business practices based on Home Depot's practice of automatically imposing a ten percent surcharge for a damage waiver on tool rentals without informing consumers of their right to decline the surcharge.  *Id.* at 1064.  The Ninth Circuit affirmed the denial of class certification based on the plaintiff's failure to establish that common questions would predominate over questions affecting only individual members.  Home Depot presented evidence that at various California stores consumers were informed about the surcharge by sales associates in different ways, as well as through posted signs that differed among the stores.  Home Depot also used five different versions of the tool rental agreement, each of which discussed the damage waiver in a different way.  *Id*. at 1066.

Notably, the plaintiff in *Berger* asserted a fraudulent business practice claim, which required the court to assess the likelihood of deception for each of the various versions of the agreement.  741 F.3d at 1068-69.  Moreover, the putative class members were exposed to various oral representations by sales associates as well as to posted signs in stores that related specifically to the surcharge and were not uniform.  *Id*. at 1069.  Here, however, the precise wording of the membership agreements

- 13 -

is not critical to the procedural and substantive unconscionability determination, and, in any event, Plaintiffs have established that the various iterations of the agreements did not differ materially with respect to the provisions concerning expiration of prepaid messages. Furthermore, unlike *Berger*, Plaintiffs have shown that Defendant instructed its franchisees to use a uniform sales script geared toward soliciting new members, and Defendant has presented no evidence that the clinics varied from the script regarding the uniform manner in which membership agreements were presented to customers. Accordingly, *Berger* is not dispositive.

Next, Defendant argues that the clinics themselves modified the membership agreement from time-to-time. (Hansen Decl. at 14; Operator Decls.) But Defendant has not provided any examples of such modified forms, (*see* Pls' Reply Ex. C at 2), and has not shown that the relevant massage redemption terms were modified *at the time* of entering the agreement. (*See* Operator Decls.). Instead, it appears that the alleged modifications were attempts by clinics to meet requests for accommodation from members who had accumulated prepaid massages. (Operator Decls.; Hansen Decl. at 12-14, Exs. U & V.)[9] Conduct during performance of an allegedly unconscionable agreement is not relevant to the unconscionability analysis. *See* Cal. Civ. Code § 1670.5(a) ("unconscionable *at the time it was made*") (emphasis added); *see also Am. Software, Inc. v. Ali*, 46 Cal. App. 4th 1386, 1391 (1996) ("The critical juncture for determining whether a contract is unconscionable is the moment when it is entered into by both parties – not whether it is unconscionable in light of subsequent events."). Moreover, individuals who were able to use their prepaid massages due to accommodations provided by the clinics, are not included in the class definition.

Defendant's arguments are insufficient to show that proof of procedural and substantive unconscionability will involve individual inquiries that predominate over common issues capable of driving resolution on a classwide basis. Plaintiffs have demonstrated that the possibility of overreaching in an ordinary consumer transaction involving relatively inexpensive services where

---

[9]     Exhibits U and V to the Hansen declaration are two addenda the clinics could add to the membership agreement starting in 2009. The "transfer" addendum allowed the member, for a fee, to transfer a prepaid massage credit to a family member or friend on a pre-approved list. (*Id*. at 12 & Ex. U.) The "Pay-As-You-Go Membership" addendum allowed a pay-as-you-go member to pre-pay an annual fee, presumably instead of paying monthly fees. (*Id*. at 13 & Ex. V.)

consumers have little incentive to scrutinize a form contract in the setting presented, can be determined on a classwide basis based on common facts and law.

b.      Unlawful Penalty

With respect to the arrears subclass, Plaintiffs assert the loss of pre-paid massages when a member falls behind in monthly dues payments is an unlawful penalty in violation of California Civil Code § 1671, which prohibits certain liquidated damages clauses in consumer contracts:

> [A] provision in a contract liquidating damages for the breach of the contract is void except that the parties to such a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage.

Cal. Civ. Code § 1671(d).  A liquidated damages provision that violates this statute "is an unlawful penalty," and is "presumed void."  *In re Cellphone Termination Fee Cases*, 193 Cal. App. 4th 298, 322 (2011).  A claim under section 1671 has two elements: "(1) fixing the amount of actual damages must be impracticable or extremely difficult, and (2) the amount selected must represent a reasonable endeavor to estimate fair compensation for the loss sustained." *Id.*  These elements necessarily focus on the defendant's conduct and motivation, rather than the plaintiff's conduct.  *Id.*  Whether it was impractical for Defendant to ascertain an amount of actual damages sustained by a member's breach, and whether Defendant made a reasonable effort to estimate fair compensation under such circumstances can be readily determined by focusing on evidence relating to Defendant's conduct and motivation.

Defendant contends that the membership agreements do not contain a uniform provision, and that every agreement and its surrounding facts would have to be individually examined because accommodations were offered to members with accumulated prepaid massages.  However, all versions of the membership agreement include provisions (a) obligating members to pay membership fees, and (b) granting the clinic the right to terminate the agreement if a member breaches this obligation.  (*See* Hansen Decl. Exs. G-T & Pls' Ex. H-J.)  Defendant does not contend there is any variance regarding these provisions.  As discussed above, the agreements uniformly provide that unused prepaid massages expire when the membership is not "current" or "in good standing".  Therefore, the form agreements lend themselves to interpretation by the Court on a classwide basis.

- 15 -

1    Defendant also maintains that the clinics had discretion to enforce or not enforce the alleged

2    penalty provision.  (*See* Operator Decls.)  But post-contract conduct is not relevant, *In re Cellphone*

3    *Termination Fee Cases*, 193 Cal. App. 4th at 329, and members who did not lose prepaid massages

4    are not included in the proposed class.  Accordingly, Plaintiffs' penalty claim under the unlawful

5    prong of the UCL is suitable for classwide adjudication.

6                    c.    Class Members' Injury

7    Defendant argues that the number of each putative class member's unused prepaid massages

8    is uncertain.  But Defendant's Millenium computer system gathers information that makes it possible

9    to generate a list of all California members who cancelled their membership or went into arrears, and

10   the date each member joined and cancelled, the membership fees paid, the services used and products

11   purchased, and the amount paid in each instance, as well as whether the service used was not charged

12   because it was prepaid under the membership agreement.  (Miller Depo. at 47-50, 52-54, 56, 61-71,

13   91-93, 108-09; Pls' Reply Ex. D.)

14   Defendant contends that individualized inquiries are necessary because the number of each

15   class member's unused prepaid massages varies widely, different members received different

16   accommodations from various clinics regarding their unredeemed massages, and different clinics

17   charged different monthly fees.  (*See* Opp'n at 23-24.)[10]  Defendant also argues that granting relief

18   may result in a windfall to class members, depending on the number of unused massages and the

19   membership fees paid.  The arguments raised by Defendant are relevant only to the calculation of

20   restitution for each putative class member.  While such calculations may be individualized, that is

21   insufficient to defeat class certification. *See Yokoyama v. Midland Nat. Life Ins.*, 594 F.3d 1087, 1089

22   (9th Cir. 2010).

23   Finally, Defendant maintains that the clinics, not Defendant, provided membership services

24   and received membership fees.  Thus, Defendant asserts it cannot be ordered to provide the requested

25   _____

26       [10]    Defendant points out that a variety of membership plans were offered, varying in duration from 3 to 13 months, "extending benefits to family members or provided through employers

27   or the military" or corporate memberships, with different payment options, including paying membership fees in advance or monthly.  (*See* Opp'n at 3 n.2; Hansen Decl. at 9; Pls' Ex. K.)  The

28   proposed class, however, excludes legal entities; and the remaining differences in membership plans go to the potential injury sustained by each class member, but these matters will not defeat class certification for the reasons discussed above.

1    relief under the UCL, if Plaintiffs prevail.  Whether Plaintiffs are entitled to recover from Defendant

2    is a merits question, not relevant to class certification.  *See Moore*, 708 F.2d at 480.  Nonetheless, that

3    question can be answered uniformly for the class based on the Franchise Agreement.  (*See* RJN Ex.

4    B at § 17.A.)

5          For the foregoing reasons, Plaintiffs' claim that Defendant engaged in unlawful business

6    practices because the membership agreements are unconscionable and impose an unlawful penalty on

7    putative class members, as well as the related declaratory relief claim, meet the commonality

8    requirement of Rule 23(a) and predominance requirement of Rule 23(b)(3), as questions of fact and

9    law common to class members will predominate over any questions affecting only individual

10   members.

11         **3.      Typicality**

12         The typicality requirement of Rule 23(a)(3) focuses on the relationship of facts and issues

13   between the class and its representatives.  "[T]he commonality and typicality requirements of Rule

14   23(a) tend to merge.  Both serve as guideposts for determining whether under the particular

15   circumstances maintenance of a class action is economical and whether the named plaintiff's claim

16   and the class claims are so interrelated that the interests of the class members will be fairly and

17   adequately protected in their absence."  *Dukes*, 131 S.Ct. at 2551 n.5 (internal quotation marks and

18   citation omitted).  "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those

19   of absent class members; they need not be substantially identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d

20   1011, 1020 (9th Cir. 1998).  "The test of typicality is whether other members have the same or similar

21   injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether

22   other class members have been injured by the same course of conduct."  *Hanon v. Dataproducts*

23   *Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation and internal quotation marks omitted).

24         Plaintiffs contend they are typical because their claims arise from the same event or course of

25   conduct as the class members' claims, and they suffered the same type of injury as the class members.

26   Duncan and Hernandez both cancelled their membership and, as a result, forfeited their unused

27   prepaid massage services. (Duncan Decl. at 1; Hernandez Decl. at 1.)  Hahn forfeited prepaid massage

28   services after her account went into arrears. (Hahn Depo. at 199.)  As discussed above, all class

1  members, including Plaintiffs, entered into form membership agreements which provided that prepaid

2  massage services would expire upon cancellation or when a membership fell into arrears.

3      Defendant counters that Hahn is not typical of the arrears class because she claims she did not

4  fall behind on her payments. Hahn testified she had made regular automatic membership payments

5  on her credit card. She tried to cancel her membership, but the clinic continued to charge her credit

6  card account until she instructed the credit card company to stop paying. (Hahn Depo. at 118-19, 123,

7  127, 177-80, 325-27.) It is undisputed that Hahn's account was thereafter referred to collections. (*See

8  also id*. at 177-80; Pls' Reply Ex. F.) Subsequently, Hahn contacted the clinic and threatened a class

9  action. (*Id*. at 176-77, 180.) The clinic then stopped collection efforts and cancelled Hahn's

10 membership. (*Id*. at 127.) Although Hahn's account was ultimately cancelled, the clinic treated it as

11 an account in arrears after Hahn stopped making payments. Her claim is therefore sufficiently co-

12 extensive with the arrears class to be typical.

13      Alternatively, Defendant contends Hahn is not typical because she entered into the

14 membership agreement based on a clinic staff member's alleged oral misrepresentation that she could

15 cancel the membership and redeem prepaid massages at any time. Although Hahn testified that is how

16 she entered into the agreement, (Hahn Depo. at 81-84, 141-47), that does not defeat typicality. The

17 complaint does not allege a UCL claim based on fraudulent business practices, as Defendant implies.

18 The circumstances relevant to the UCL claim alleged on behalf of the class, *i.e.,* the terms of Hahn's

19 agreement and the commercial setting surrounding entry of the agreement, are the same. That Hahn

20 could potentially assert an additional fraud or fraudulent business practice claim under the UCL does

21 not render her atypical on the claims she shares with the putative class.

22      Defendant next contends Hahn and Hernandez are not typical because their unconscionability

23 claim is subject to a defense that they did not read the membership agreement before signing. But this

24 defense is neither dispositive nor renders these Plaintiffs atypical. *See Gatton*, 152 Cal. App. 4th at

25 585 ("consumers have little incentive to carefully scrutinize the contract").

26      Defendant further claims that Duncan and Hahn are not typical because they seek a refund for

27 the forfeited massage services rather than reinstatement. In the FAC, Plaintiffs seek restitution and

28 reinstatement as alternative forms of relief. (FAC at 21.) Moreover, Defendant's argument overstates

1   the testimony.  Duncan expressed a preference for restitution over reinstatement.  (Duncan Depo. at

2   86-87.)[11]  Similarly, Hahn was asked about the amount of money she sought in restitution, and not

3   whether she would accept reinstatement.  (Hahn Depo. at 399-400.)

4           Finally, Defendant argues that to the extent Plaintiffs declined accommodations, they are not

5   typical.  This argument is rejected for the reasons discussed in the context of commonality and

6   predominance.  Plaintiffs' claims depend on the contract at the time of formation, and subsequent

7   developments are not relevant to liability.  Defendant's argument appears to be based on the premise

8   that it is the extent of injury, *i.e.*, the potential size of individual remedy, that governs typicality;

9   however, the relevant consideration is the type of injury and whether it was caused by the same event

10  or course of conduct.  *See Hanon*, 976 F.2d at 508.  For the foregoing reasons, Plaintiffs meet the

11  typicality requirement of Rule 23(a)(3).

12          **4.      Adequacy**

13          Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately

14  protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement is grounded in

15  constitutional due process concerns: "absent class members must be afforded adequate representation

16  before entry of judgment which binds them."  *Hanlon*, 150 F.3d at 1020.  In reviewing this issue,

17  courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts

18  of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the

19  action vigorously on behalf of the class?"  *Id*.  In other words, the named plaintiffs and their counsel

20  must have sufficient "zeal and competence" to protect the interests of the rest of the class.  *Fendler*

21  *v. Westgate-California Corp*., 527 F.2d 1168, 1170 (9th Cir. 1975).

22          Defendant does not dispute the adequacy of Plaintiffs' counsel.  Based on the resume of

23  counsel's law firm, (Pls' Reply Ex. X), the Court finds Jeffrey Krinsk and Mark Knutson[12] adequate

24  for purposes of Rule 23(a)(4) and (g)(1).

25

26

---

27          [11]      Excerpts from the deposition of Chaille Duncan are provided in Ricketts Decl. Ex. C.

28          [12]      William Restis is not referenced in the resume and no declaration containing his
    qualifications was filed.

Defendant's principal inadequacy argument is that Plaintiffs, while asserting it for themselves, do not seek class certification of their claim for breach of the implied covenant of good faith and fair dealing, which provides for a jury trial and damages for breach of contract.[13]  Defendant, however, has not shown that the remedy for breach of the implied covenant would result in greater recovery than restitution for, or reinstatement of, forfeited massages.  Furthermore, any difference between the remedies and procedural rights available to a plaintiff for a breach of covenant claim as opposed to a UCL claim can be disclosed in the class notice, thereby allowing putative class members to make an informed decision whether to opt out of the class and individually pursue any rights they may be giving up by participating in the class.

Defendant next contends that Hernandez has a personal relationship with Plaintiffs' counsel William Restis.  This argument is moot for the reasons stated in footnote 12, *supra*, as Restis is not appointed class counsel.  More importantly, Defendant's evidence that Hernandez had a personal relationship with Restis prior to her involvement with this action is insufficient, without more, to show a conflict of interest between Hernandez and the putative class.

Alternatively, Defendant contends Hernandez is inadequate because she lied in her deposition about how she met Restis and the circumstances of getting involved in this class action.  Defendant's evidence does not support a finding of inadequacy.  (*See* Hernandez Depo. at 17-18, 20-21, 25-28, 30, 32-33, 37-39, 243-46[14] & Ricketts Decl. Ex. E.)  The latter issue is largely privileged, *see Barton v. U.S. District Court (Smithkline Beecham Corp.)*, 410 F.3d 1104 (9th Cir. 2005), and insofar as an inconsistency exists between Hernandez' personal text messages with Restis and her deposition testimony, it concerns whether she met Restis through friends or online, the precise date of their first communication about Massage Envy, and whether that exchange was in person or by text message – all matters which are irrelevant to the class members' claims for relief.  Moreover, to the extent any

---

[13]   To the extent Defendant bases this argument on the assertion that Plaintiffs are not entitled to recovery from Defendant for their UCL claim, the argument is addressed, *supra*, in the context of commonality and predominance.

[14]   Excerpts from the deposition of Alexis Hernandez are provided in Ricketts Decl. Ex. B and Pls' Reply Ex. G.

1   inconsistency exists regarding these matters, it was cleared up during the deposition session.

2   Defendant does not contend Hernandez was untruthful about any substantive matter.

3        Defendant further maintains there is no evidence about Hahn's adequacy because she did not

4   file a declaration.  However, at her deposition, Defendant extensively questioned Hahn on the matter

5   and Hahn sufficiently established she is an adequate representative.  (*See* Hahn Depo. at 45, 47-50,

6   182, 191, 198-200, 339-41, 347, 349, 351-53, 388, 390, 392.)

7        Finally, Defendant argues Duncan and Hernandez misapprehend this case and their role as

8   representatives.   Based on their deposition testimony, the Court finds they have sufficient

9   understanding to vigorously prosecute the action on behalf of the class. (*See*  Hernandez Depo. at 63-

10  66, 76, 81-84, 199-203, 223-24, 226; Duncan Depo. at 28-29, 34-35, 38-39, 49-50, 104-05, 118-120,

11  125, 179, 265, 275-77, 316.)  For the foregoing reasons, the Court finds Plaintiffs and their counsel

12  adequate to represent the class.

13  **B.        Rule 23(b)(3) Requirements**

14       Certification under Rule 23(b)(3) is proper when "the questions of law or fact common to class

15  members predominate over any questions affecting only individual members, and ... a class action is

16  superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R.

17  Civ. Proc. 23(b)(3).  As discussed above, this action meets the predominance requirement of Rule

18  23(b)(3).  The superiority requirement is satisfied as well.

19       The superiority requirement includes consideration of:

20       (A) the class members' interests in individually controlling the prosecution or defense
         of separate actions;

21

22       (B) the extent and nature of any litigation concerning the controversy already begun
         by or against class members;

23       (C) the desirability or undesirability of concentrating the litigation of the claims in the
         particular forum; and

24

25       (D) the likely difficulties in managing a class action.

26  Fed. R. Civ. Proc. 23(b)(3).  This inquiry "requires the court to determine whether maintenance of this

27  litigation as a class action is efficient and whether it is fair," such that the proposed class is superior

28

to other methods for adjudicating the controversy. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010).

Defendant does not dispute that the elements of the class members' interest in individually controlling the prosecution of separate actions or the desirability or undesirability of concentrating the litigation in this forum are met. Because the individual claims of putative class members likely are small compared to the cost of prosecuting an individual action, and because several of Defendant's franchisees are located in this District and no other action is known to be proceeding, these elements favor certification.

Defendant does not directly address the likely difficulties of managing this case as a class action, other than to imply, in the context of its predominance analysis, that the class may not be ascertainable because of the variety of ways in which the clinics may have attempted to accommodate members with accumulated unused massages. As discussed, Defendant's Millenium software is available to identify potential class members and any accommodations that were extended to them, as well as to determine each member's remaining unused prepaid massage services. The Court finds that the class is ascertainable and does not foresee difficulties in managing this case as a class action. For these reasons, Plaintiffs' motion for class certification under Rule 23(b)(3) is granted.

## C.     Rule 23(b)(2) Requirements

Plaintiffs also seek certification under Rule 23(b)(2). Such certification is limited to instances when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Dukes*, 131 S. Ct. at 2557. On the other hand, Rule 23(b)(3), which provides class members with additional procedural protections, *see id.* at 2559, embraces all actions that meet its predominance and superiority requirements. Because Rule 23(b)(3) does not preclude, but subsumes, the injunctive and declaratory relief sought by Plaintiffs, their request for certification under Rule 23(b)(2) is denied as moot.

/ / / / /

/ / / / /

**III.**

**CONCLUSION**

For the foregoing reasons, Plaintiffs have met their burden to show that the requirements for certification of a class action under Federal Rule of Civil Procedure 23(b)(3) are met in this case. Accordingly, it is hereby **ORDERED** as follows:

1.   Chaille Duncan's and Alexis Hernandez' motion to intervene as named plaintiffs and putative class representatives is granted as unopposed.  The Clerk shall include Duncan and Hernandez on the docket as party plaintiffs.

2.   Plaintiffs' motion for class certification is granted pursuant to Federal Rule of Civil Procedure Rule 23(b)(3) with respect to: (1) their claim under California Unfair Competition Law that the provisions of Massage Envy's membership agreements providing for expiration of accumulated unused prepaid massage services upon cancellation or during arrears is unlawful as an unconscionable forfeiture provision in violation of California Civil Code §§ 1670.5 and 1442; and, with respect to the arrears subclass, is an unlawful liquidated damages penalty in violation of California Civil Code Section 1671(d); and (2) their related declaratory relief claim.  Class certification is granted under Rule 23(b)(3).  In all other respects, class certification is denied.

3.   The Court certifies a class defined as:

All California residents, from December 7, 2007 to the present, who were enrolled in a Massage Envy membership program, and who

(a) forfeited prepaid massages because they cancelled their Massage Envy membership; or

(b) forfeited prepaid massages because they did not keep their membership current by making timely payments.

4.   Chaille Duncan and Alexis Hernandez are appointed as class representatives for subclass (a), the "cancellation subclass".  Gail Hahn is appointed as class representative for subclass (b), the "arrears subclass".  Plaintiffs' counsel Jeffrey Krinsk and Mark Knutson are appointed as counsel for the class.

5.   Class counsel shall give notice to the class of the pendency of this action.  No later than **May 14, 2014**, the parties shall jointly file a motion for approval of their proposed form of notice,

1  method of distributing it to the class members, and time for distributing it.  The proposal shall comply

2  with Federal Rule of Civil Procedure 23(c)(2)(B).

3        **IT IS SO ORDERED.**

4

5  DATED:  April 15, 2014

6        _____

7        HON. DANA M. SABRAW
        United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28