# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

GAIL HAHN, *et al.*,

                Plaintiffs,

vs.

MASSAGE ENVY FRANCHISING, LLC,

                Defendant.

Case No. 12cv153 DMS (BGS)

**ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION; (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION; (3) DENYING DEFENDANT'S MOTION TO EXCLUDE EXPERT OPINIONS OF THOMAS NECHES; AND (4) DENYING DEFENDANT'S MOTION TO DECERTIFY CLASS ACTION**

In this consumer class action, the parties filed cross-motions for summary judgment, or in the alternative, for partial summary judgment. Defendant Massage Envy Franchising, LLC, also moved to decertify the class action and exclude the opinions of Plaintiffs' expert, Thomas Neches. Opposition and reply briefs were filed for all motions. Defendant's motions for decertification and exclusion of expert opinions were submitted on the briefs. On August 8, 2014, the cross-motions for

summary judgment came on for hearing. William Restis appeared on behalf of Plaintiffs; Luanne Sacks and Cynthia Ricketts appeared on behalf of Defendant. On August 29, 2014, Defendant filed a notice of supplemental authority, and on September 11, 2014, Plaintiffs filed a response, together with their own notice of supplemental authority. Upon consideration of the briefing and oral argument, and for the reasons set forth below, Plaintiffs' and Defendant's cross-motions for summary adjudication are each granted in part and denied in part. Defendant's motions to exclude expert opinions and decertify class action are denied.[1]

# I.

# BACKGROUND

This Court previously certified for class treatment Plaintiffs' claim under California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200 *et seq.*) that the provisions of Defendant Massage Envy's form membership agreements providing for expiration of accumulated unused prepaid massage services upon cancellation of membership or during arrears is unlawful as an unconscionable forfeiture provision in violation of California Civil Code §§ 1670.5 and 1442, and extracts an unlawful liquidated damages penalty upon default in violation of Civil Code § 1671(d). Plaintiffs now argue that Defendant's membership agreements violate California law and thus, are "unlawful" under the UCL as a matter of law.

According to Plaintiffs, Massage Envy designed its massage memberships to mimic the "health club" membership model. Unlike a health club, however, Defendant's members do not purchase access to Massage Envy's facilities, but instead only purchase massage services at a discounted price. Plaintiffs allege the "membership" aspect of Defendant's business model arises from the recurring nature of Defendant's charges, not from any exclusivity members receive to Massage Envy's services. (First Amended Complaint "FAC" ¶ 16.) Defendant argues that membership

---

[1] The parties filed numerous objections. Unless expressly stated otherwise below, the objections are overruled.

has "distinct advantages," including a reduced price of approximately $60 for one massage monthly (pointing out the "pay as you go" rate for a one-hour massage is $98), plus additional massages and facials, retail products, and family memberships all at discounted prices through a nationwide reciprocity network of franchisees.

Plaintiffs contend that all of Defendant's 132 California franchisees, also referred to as "clinics," must follow Defendant's prescribed procedures when soliciting new members. New members, according to Plaintiffs, think they are purchasing massage services that accumulate and can be redeemed at a later time, when in fact the services are subject to forfeiture under unanticipated circumstances, all while Massage Envy makes millions of dollars on prepaid massages it never performs.

The FAC alleges that in September 2008, Plaintiff Gail Hahn purchased a membership at Massage Envy's Lakeside franchise. In exchange for each $59 monthly membership payment, Hahn became entitled to one massage per month. Hahn made 23 monthly payments, but was only able to redeem two massages. In March 2009, she attempted to cancel her membership, but was refused. After Hahn directed her credit card company to stop the automatic monthly payments, her account was referred to collections, but later the Lakeside Massage Envy franchise agreed to cancel the collection efforts. Hahn's request to redeem her prepaid massages was denied.

Plaintiff Chaille Duncan signed a membership agreement in June 2009, at a San Diego franchise. She cancelled her membership on February 11, 2011. She had three unused prepaid massages at that time and sought to redeem them. She, too, was denied that request due to canceling her membership.

Plaintiff Alexis Hernandez signed a membership agreement in October 2011, at a Chula Vista franchise. When she cancelled her membership in March 2013, she had eight unused prepaid massages. As with Hahn and Duncan, Hernandez was precluded from redeeming any massages after cancellation.

Plaintiffs allege four claims against Massage Envy: (1) violation of the unlawful business practices provision of California's UCL; (2) violation of the UCL's unfair

business practices provision; (3) breach of the implied covenant of good faith and fair dealing; and (4) declaratory relief. Plaintiffs seek injunctive relief prohibiting the forfeiture of prepaid massage services, reinstatement of the right to use any forfeited massages, and restitution.

On April 15, 2014, the Court granted Plaintiffs' motion to certify a class action pursuant to Federal Rule of Civil Procedure 23(b)(3). The class encompasses all California residents, from December 7, 2007, to the present, who were enrolled in a Massage Envy membership program, and who forfeited prepaid massages because they cancelled their membership (cancellation subclass), or fell into arrears by failing to make timely payments and keep their membership current (arrears subclass). The claims were certified for class treatment under the "unlawful" prong of the UCL and the related claim for declaratory relief. The class issues as to the cancellation and arrears subclasses focus on whether the membership agreements are unconscionable and in violation of California Civil Code §§ 1670.5 and 1442, and, with respect to the arrears subclass, whether the membership agreements violate Civil Code § 1671(d) by providing an unlawful penalty upon default.

## II.

## DISCUSSION

### A.    Standard for Summary Judgment

Federal Rule of Civil Procedure 56 empowers the court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment or adjudication of issues is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

The burden on the party moving for summary judgment depends on whether it bears the burden of proof at trial. "When the party moving for summary judgment

would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *See C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). If the nonmoving party would bear the burden at trial, the moving party can meet the burden on summary judgment by pointing out the absence of evidence with respect to any one element of the opposing party's claim or defense. *See Celotex*, 477 U.S. at 325.

"When the moving party has carried its burden ..., its opponent must do more than simply show that there is some metaphysical doubt as to the material facts[, but] must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation marks, citations and footnote omitted). The nonmoving party can make its showing by "citing to particular parts of materials in the record ...; or [¶] showing that the materials cited do not establish the absence ... of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. Proc. 56(c). "[W]here the nonmoving party will bear the burden of proof at trial, [it must] go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial" on all matters as to which it has the burden of proof. *Celotex*, 477 U.S. at 324 (internal quotation marks omitted).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of

the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The filing of cross-motions for summary judgment "does not necessarily mean there are no disputed issues of material fact and does not necessarily permit the judge to render judgment in favor of one side or the other." *Starsky v. Williams*, 512 F.2d 109, 112 (9th Cir. 1975). "[E]ach motion must be considered on its own merits." *Fair Hous. Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). Furthermore, the court must consider evidence submitted in support of and in opposition to both motions before ruling on each one. *Id.*

**B.   Cross-Motions for Summary Judgment**

Plaintiffs move for summary adjudication of their UCL and related declaratory relief claims,[2] and seek restitution for the forfeited massage services. Plaintiffs contend the form membership agreements violate the UCL. The UCL "establishes three varieties of unfair competition – acts or practices which are unlawful, or unfair, or fraudulent." *Cal-Tech. Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Plaintiffs focus entirely on the unlawful prong of the UCL. An unlawful business practice under the UCL is "an act or practice, committed pursuant to business activity, that is at the same time *forbidden by law*." *Progressive W. Ins. Co. v. Yolo County Super. Ct. (Preciado)*, 135 Cal. App. 4th 263, 287 (2006) (emphasis in original)(citation omitted).

**1.   Unconscionability and Forfeiture**

Plaintiffs contend that the membership agreements are unconscionable under California case law. Further, Civil Code § 1670.5(a) provides that if any clause of a contract is found to be "unconscionable at the time it was made" the court may "enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Civil

---

[2] Because Plaintiffs seek a declaration that Defendant's business practices are improper and prohibited, the declaratory relief claim is coextensive with the UCL claim. Accordingly, this Order focuses on the UCL claim.

Code § 1442 provides that a "condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created." Plaintiffs argue that Defendant's membership agreements violate the foregoing statutes, therefore Defendant's acts or practices are unlawful under the UCL.

As an initial matter, Defendant argues that § 1442 does not proscribe anything, and therefore it cannot support a UCL claim. Defendant maintains the provision only applies to how a court, rather than a party to the contract, interprets the contract. Plaintiffs argue § 1442 makes clear that forfeiture is unavailable as a matter of law, *i.e.,* unlawful, unless the party who benefits from the extreme remedy clearly and unambiguously spells it out. This issue need not be resolved because Plaintiffs do not tether their claim solely to § 1442.

Defendant also contends that § 1442 does not apply because Plaintiffs did not forfeit any property or right. Defendant argues the monthly dues do not purchase a monthly massage service, but a "right to access a number of member benefits," and that Plaintiffs simply "chose not to use all member benefits to which they had access during their membership term." (Def.'s Opp'n at 12-13.) But Defendant's argument is contrary to the plain language of the membership agreements, which refers to massages as "prepaid." (*See* Decl. of Melanie Hansen dated Nov. 22, 2013 ("Hansen Class Cert. Decl."), Exs. G-T & W.) Although members may have access to other benefits, such as discounted products and services other than monthly massages, the agreements specify that payment of each monthly membership fee *entitles* the member to a one-hour massage, and do not reference any other benefits in this context.[3] On the face of the agreements, the monthly dues entitled members to one massage each month. Defendant's argument that the members did not forfeit any property or right is therefore rejected.

---

[3] Starting in March 2011, the agreements offered a one-hour facial (for an additional charge) in lieu of a massage.

Finally, Defendant contends that § 1442 does not permit rewriting a contract if the parties clearly intended it to include a forfeiture provision. *See Troughton v. Eakle*, 58 Cal. App. 161, 173 (1922). Defendant "has the burden of showing that such was the unmistakable intention of the instrument." *ABI, Inc. v. City of Los Angeles*, 152 Cal. App. 3d 669, 682 (1984). Plaintiffs maintain the forfeiture provision is ambiguous, and was not clearly disclosed to them, thus warranting application of the statute.

The membership brochure, incorporated into the membership agreements through March 2011, provides: "You have the entire term of your membership to use your pre-paid massages. Any unused massages will expire should you elect not to renew your membership." (Hansen Class Cert. Decl. at 13 & Exs. G-T & W.) The March 2011 and subsequent versions of the form agreements included similar language: "Upon termination or cancellation of your membership, all unredeemed membership massages will expire." (*Id.*, Ex. N.) "You may continue to redeem your membership massages as long as your membership is in effect and is current." (*Id.*, Exs. G-T.) "Your membership status must be active in order to redeem any membership services including membership massages." (*Id.*) On the other hand, the agreements refer to the monthly membership massages as "prepaid" to which members are "entitled," (*id.*), which implies that members had purchased them. The agreements therefore do not unequivocally state that upon termination or cancellation of membership the prepaid massages will be forfeited.[4] "[F]orfeiture can never take place by implication, but must be effected by express, unambiguous language." *ABI*, 152 Cal. App. 3d at 682 (quoting *Berardi v. Gen. Motors Corp.*, 143 Cal. App. 3d 7, 13 (1983)).

---

[4] Plaintiffs point out that even though the membership agreements state that membership must be "active" and "current" to "redeem" prepaid massages, the agreements do not specifically provide that prepaid massages are subject to forfeiture. (Pls' Mot. at 13.) The word "active," according to Plaintiffs, is ambiguous as used in the agreements and reasonably could be construed to mean that membership is "active" if a member has unredeemed prepaid massages. (*Id.*) The word "current" is also ambiguous and reasonably could be construed to mean that "a Class member is 'current' on a massage if (s)he has paid for it, and not "current" only as to massages that are in arrears. This is harmonious with Massage Envy's policy that massages are available for redemption only after they have been paid for, *i.e.*, 'pre-paid.'" (*Id.* at 13-14) (citation omitted).

In contrast, Defendant's cancellation form, which members do *not* see until they cancel their membership, includes an unequivocal forfeiture provision: "I ... understand that I have 30 days after my last EFT payment in which to use any remaining membership massages. After that time is over, I will *forfeit* any unused membership massages as my membership will no longer be active." (Restis Reply Decl. Exs. 15-18) (emphasis added). Defendant clearly articulated the forfeiture provision when it served its interests, but did not do so when new member solicitation was the focus.

Defendant argues the membership agreement is not ambiguous, contending that Plaintiffs Hernandez and Duncan testified they knew they would lose their unused massages if they cancelled their membership. The parties disagree whether witness testimony is admissible for purposes of contract interpretation. Under California law, interpretation of a written contract is a matter of law for the court even though questions of fact are involved. *Southland Corp. v. Emerald Oil Co.*, 789 F.2d 1441, 1443 (9th Cir. 1986). Nevertheless, even with respect to integrated contracts which appear unambiguous, interpretation "requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties." *In re W. Asbestos Co.*, 416 B.R. 670, 695 (N.D. Cal. 2009) (discussing Cal. law). Defendant's evidence therefore can be considered. However, it does not support Defendant's argument. The deposition testimony is not as emphatic as Defendant suggests. (*See* Scott Decl. Exs. A (Hahn Depo. at 146); B (Hernandez Depo. at 128-30) & C (Duncan Depo. at 245-46).) Hernandez and Duncan testified about their current understanding of the agreements. They were not asked about their understanding at the time of contracting. Contrary to Defendant's argument, Hernandez and Hahn testified that at the time of contracting they did *not* understand that prepaid massages would be forfeited. (Hernandez Depo. at 129 ("But I didn't realize. Like, I was never told. Nobody ever verbalized it to me."); Hahn Depo. at 146.) Accordingly, rather than create a genuine issue of material fact in Defendant's favor, the deposition testimony supports Plaintiffs' position.

Based on the form membership agreements, the cancellation form, and deposition testimony, Plaintiffs have presented sufficient evidence to establish as a matter of law that the membership agreements are ambiguous regarding forfeiture of massage services. Plaintiffs' testimony, offered by Defendant, does not create a genuine issue of material fact. Strictly interpreted against Massage Envy, the membership agreements do not provide a right of forfeiture.

Plaintiffs claim the membership agreements are unconscionable under Civil Code § 1670.5(a) to the extent they effect a forfeiture of unused prepaid massage services. Like § 1442, the unconscionability doctrine does not allow courts to "rewrite agreements and impose terms to which neither party has agreed." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109, 1143 (2013). Instead, "it has long been the proper role of courts ... to ensure that the terms of a bargain are not unreasonably harsh, oppressive, or one-sided." *Id*. "The core concern of the unconscionability doctrine is the absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Id*. at 1145 (internal quotation marks and citations omitted).

Unconscionability is a question of law for the court to decide. *See Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571, 579 (2008). To prevail, the plaintiff must show that a contract provision is both procedurally and substantively unconscionable. *Armendariz v. Found. Health Psychcare Servs. Inc.*, 24 Cal. 4th 83, 99 (2000). The procedural element focuses on "oppression or surprise due to unequal bargaining power," and the substantive element focuses on "overly harsh and one-sided results." *Id*. A sliding scale is applied, so that the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to find it unenforceable, and vice versa. *Id*.

a. Procedural Unconscionability

Procedural unconscionability generally takes the form of a contract of adhesion, that is, a standardized contract drafted by the party of superior bargaining strength and

imposed on the other, without the opportunity to negotiate the terms. *See Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976, 981 (9th Cir. 2007). "Whether the challenged provision is within a contract of adhesion pertains to the oppression aspect of procedural unconscionability." *Gatton*, 152 Cal. App. 4th at 582. "Oppression arises from inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Id*. at 581. S*ee also Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 821 (2010).

It is undisputed that Defendant Massage Envy, the party with superior bargaining strength, drafted the form membership agreements. Defendant admits the agreements were presented to consumers on a take-it-or-leave-it basis. (Reply at 5.) The form membership agreements are therefore contracts of adhesion. *See AT&T Mobility LLC v. Concepcion*, __ U.S. __, 131 S.Ct. 1740, 1750 (2011) ("the times in which consumer contracts were anything other than adhesive are long past"). "[A]bsent unusual circumstances, use of a contract of adhesion establishes a minimal degree of procedural unconscionability... ." *Gatton*, 152 Cal. App. 4th at 585, 586 n.9 (adhesiveness alone is sufficient to meet the procedural unconscionability element, and "justifies scrutiny of the substantive fairness of the contractual terms").

Nevertheless, Defendant argues that procedural unconscionability cannot be established as a matter of law because a massage is a non-essential recreational service, and Plaintiffs had other market alternatives, including purchasing massages at a higher cost from Defendant at a "pay as you go" rate or purchasing them elsewhere. Defendant cites *Lhotka*, 181 Cal. App. 4th at 822-23, which held that the non-essential nature of recreational services and availability of other alternatives *may* negate adhesiveness all together. Defendant also relies on *Smith v. Ford Motor Co.*, 462 Fed. Appx. 660 (9th Cir. 2011), which held that the availability of an extended warranty from the same car dealer was a "meaningful choice" that eliminated any procedural unconscionability. *Id.* at 663. Here, Defendant argues Plaintiffs' option to purchase massage services from

Defendant at a higher price was a "meaningful choice" negating the adhesiveness of the membership agreement.

The Court is not persuaded. Relevant California appellate decisions such as *Gatton* remain good law. In *Gatton*, which involved mobile phone service agreements where other market alternatives were available, the court held:

> ... [T]he imbalance of power creates an opportunity for overreaching in drafting form agreements. The possibility of overreaching is even greater in ordinary consumer transactions involving relatively inexpensive goods or services because consumers have little incentive to carefully scrutinize the contract terms or to research whether there are adequate alternatives with different terms, and companies have every business incentive to craft the terms carefully and to their advantage. The unconscionability doctrine ensures that companies are not permitted to exploit this dynamic by imposing overly one-sided and onerous terms.

152 Cal. App. 4th at 585. *Gatton* rejected the contention that market choice necessarily negates the oppression aspect of procedural unconscionability:

> The existence of consumer choice decreases the extent of procedural unconscionability but does not negate the oppression and obligate courts to enforce the challenged provision regardless of the extent of substantive unfairness. The existence of consumer choice is relevant, but it is not determinative of the entire issue.

*Id*. at 583. Based on *Gatton* and *Lhotka*, the availability of market alternatives for non-essential services mitigates the adhesive nature of consumer contracts, but does not eliminate it. Adhesiveness, therefore, "establishes a minimal degree of procedural unconscionability... ." *Gatton*, 152 Cal. App. 4th at 585, 586 n.9.[5]

Procedural unconscionability also may be based on surprise, which provides an alternative ground to oppression. *See Lhotka*, 181 Cal. App. 4th at 821 & 824.

_____

[5] Neither side has cited any California Supreme Court authority regarding the effect of market alternatives and the nature of recreational activities on procedural unconscionability, and the Court is aware of none. "[A] federal court interpreting state law is bound by the decisions of the highest state court. ... Where the state supreme court has not spoken on an issue presented to a federal court, the federal court must determine what result the state supreme court would reach based on state appellate court opinions, statutes, and treatises." *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1391 (9th Cir. 1994) (citations omitted). Based on a review of California appellate case law cited by the parties, it is likely the California Supreme Court would find that the existence of market alternatives, including "meaningful choice," in the context of recreational activities, is relevant, but would not automatically preclude a finding of oppression.

- 12 -

"Surprise is defined as the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Gatton*, 152 Cal. App. 4th at 581 (internal quotation marks and citation omitted). Also relevant are the "circumstances surrounding the execution of the agreement." *Lhotka*, 181 Cal. App. 4th at 824.

Defendant instructs the clinics when and how to present the membership agreement. (*See* Order (1) Granting Motion to Intervene; and (2) Granting in Part and Denying in Part Motion for Class Certification, filed Apr. 15, 2014 ("Class Cert. Order") at 7 & 10-11.) The clinics are obligated to use a script to solicit membership. The script not only instructs clinic staff what to say, but directs the circumstances under which the membership offer is made: customers should be approached immediately after a massage and after "mak[ing] sure they enjoyed the massage and the therapist was a good fit before trying to sell a membership." (Pls' Mot. for Class Cert. Ex. F.)[6]

The membership agreement is presented to consumers in three parts: (1) the front of the one-page form, which is signed and initialed; (2) the terms and conditions on the back of the form, which are not signed or initialed; and (3) the membership brochure. Starting in March 2011, additional terms and conditions of membership were posted on Defendant's website in lieu of the membership brochure. Presenting the agreement in this disjointed format alone is confusing, as the same topics are covered in three different places in varying levels of detail. Moreover, the form agreement is printed in small dense print. Finally, as discussed, the agreement does not clearly state that unused prepaid massage sessions will be forfeited upon termination or cancellation of membership. (*See* Hansen Class Cert. Decl. Exs. G-T & W; Pls' Mot. for Class Cert. Exs. H-J; Pls' Class Cert. Ex. H at 2 (Hahn Depo.).)

---

[6] Although Defendant has presented evidence that clinic employees do not necessarily follow the script verbatim and that clinics sometimes allow experienced employees to personalize, (*see* Class Cert. Order at 10-11), those modifications do not affect the timing and uniform manner in which membership agreements are presented to customers.

The agreement is also presented to customers while a clinic staff member is making a sales presentation, which further discourages meaningful review. When Plaintiffs were presented with the agreement, they did not understand that unused prepaid massages would be forfeited upon cancellation or default.

Defendant's cancellation provisions in the agreement also result in surprise. (Pls' Class Cert. Exs. S & T.) The form agreement is set up for an initial term of three to thirteen months. The agreement limits cancellation during the initial term to cases of permanent relocation at least 25 miles away from *any* Massage Envy clinic, or medical infirmity, either of which the member must substantiate with written proof, (Pls' Ex. S), thus effectively forcing a member to purchase at least one massage per month for the initial term, whether or not she is able to use it. If the member cancels at the end of the initial term, the unused prepaid massages vanish. (Class Cert. Order at 8 & 12 n.8.) To be able to use those massages, the member must continue the membership on a month-to-month basis and keep paying monthly dues until she uses up the massages from the initial term, as well as the new ones that accumulate with monthly payments after the expiration of the initial term. To cancel a month-to-month membership, the member must give 30 days' written notice to the clinic where the membership originated. If the clinic agrees to cancel, the member is charged one more monthly payment, and the membership terminates 30 days thereafter. Under this provision, a member is required to make at least two monthly payments after deciding to cancel and then the accumulated prepaid massages disappear upon termination. (*See* Hansen Class Cert. Decl. Exs. G-T; Pls' Class Cert. Exs. H-J.) Similarly, under the arrears policy, a member cannot use the prepaid massages that accumulated before default, until the account is brought current. (*See id.* & Levine Depo. at 138.)[7] Because forfeiture is not apparent from the face of the agreement, the event of forfeiture results in surprise.

---

[7] Excerpts from the deposition of Jordan Levine, Defendant's director of field operations, are contained in Plaintiffs' Mot. for Class Cert. Ex. U.

At oral argument, defense counsel argued that 54 to 58 percent of Massage Envy members have not forfeited any massage services, (Tr. at 27 & 45), thus suggesting no surprise. These statistics, however, don't reveal the reasons why these members used their prepaid massages before cancellation or termination – let alone that they understood that the massages would be forfeited if not used prior to cancellation or termination. Unlike the remaining 42 to 46 percent who forfeited their massages, the members referenced by Defendant did not suffer such a loss and thus, had no occasion to be surprised. Defendant's have failed to raise a genuine issue of material fact regarding this element of procedural unconscionability.

### b. Substantive Unconscionability

Substantive unconscionability focuses on whether the results of the contract term are overly harsh or one-sided. *Armendariz,* 24 Cal. 4th at 114. Defendant suggests that substantive unconscionability requires the degree of one-sidedness that shocks the conscience. Although some California appellate decisions frame the issue in these terms, this is not required.

> Unconscionability doctrine ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as overly harsh, unduly oppressive, so one-sided as to shock the conscience, or unfairly one-sided. All of these formulations point to the central idea that unconscionability doctrine is concerned not with a simple old-fashioned bad bargain, but with terms that are unreasonably favorable to the more powerful party. These include terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms, or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction.

*Sonic-Calabasas A, Inc.*, 57 Cal.4th at 1145 (internal quotation marks and citations omitted). "As with any contract, the unconscionability inquiry requires the court to examine the totality of the agreement's substantive terms as well as the circumstances of its formation to determine whether the overall bargain was unreasonably one-sided." *Id*. at 1146.

The membership agreement form meets each of the foregoing considerations, leading to the conclusion it was unreasonably one-sided. As discussed, the membership agreements are at least minimally adhesive. The integrity of the bargaining process is compromised by the vagueness of the forfeiture provision, the disjointed nature of the agreement, and the circumstances under which it is presented to customers – immediately after a massage and while a clinic employee is making a sales presentation. Strictly construed against Massage Envy, as mandated by § 1442, the agreement fails. The forfeiture provision negates the reasonable expectation that the member will be able to redeem their already purchased massage services at a later time. Prepaid massages are the main selling point and the central aspect of the membership agreement: "Your Dues Based membership entitles you to a one (1) hour massage session in clinic per month during the term of your membership ('membership massages')."[8] (Hansen Class Cert. Decl. Ex. H.) When considered together with the cancellation and arrears provisions, the forfeiture of prepaid massage services is an unexpected, unduly harsh term. As discussed in the context of surprise and procedural unconscionability, these policies, in combination with the forfeiture provision, enable Massage Envy routinely to receive payments for massage services that will never be performed. That is fundamentally wrong.

Nevertheless, Massage Envy argues the membership agreement is not substantively unconscionable as matter of law, citing *Freeman v. Wal-Mart Stores, Inc.*, 111 Cal. App. 4th 660 (2003), *Leong v. Square Enix of America Holdings, Inc.*, 2010 WL 1641364 (C.D. Cal.), and *Morris v. Redwood Empire Bankcorp*, 128 Cal. App. 4th 1305 (2005). Because these cases are distinguishable, the Court is not persuaded Defendant is entitled to summary adjudication in its favor.

*Freeman* involved a gift card which incurred a monthly fee if the card was not used within two years. The fee was applied until the value of the card was exhausted.

---

[8] Starting in October 2009, the agreements included a reference to facials, which were available in some locations in lieu of the pre-paid massage for an additional charge. (Hansen Class Cert. Decl. Exs. G-T.)

If the card holder did not use the card, the fee alone eventually exhausted the card. Unlike here, where forfeiture was not clearly stated, the gift card in *Freeman* had a clear warning that a monthly fee would be charged if the card was not used within two years. 111 Cal. App. 4th at 669 ("The card stated on the back ... that a monthly $1 fee would be imposed if the card was not used within 24 months."). Moreover, unlike here, where *all* unused prepaid massages vanish upon termination, in *Freeman*, once the monthly fee was triggered, the card holder could stop it by using the card. *Id*. at 669-70 ("could terminate the fee at any time by using the card"). Further, Defendant's membership agreement locked members into paying monthly dues for the entire initial term, thus requiring them to renew the membership and continue to pay monthly dues if they wanted to use the prepaid massages that had accumulated during the initial term. In contrast, the card holder in *Freeman* was not required to pay additional fees to use the card.

*Leong* involved a user agreement for an online video game in exchange for a monthly subscription fee. If the fee was not paid for more than three consecutive months, the subscriber's game, including any characters he or she had purchased or created for the game, were deleted. Under the user agreement, the subscribers did not own any game data, including their game accounts or characters. 2010 WL 1641364 at *6. Unlike *Leong*, Defendant's agreement refers to membership massages as "prepaid," states that the member becomes "entitled" to a one-hour massage with each monthly dues payment, and indicates that unused massages accumulate and can be used at a later time. While the user agreement in *Leong* gave no basis for a subscriber to believe he or she had any ownership of in-game characters, Defendant's agreement provided a clear basis for members to expect they would be able to redeem their prepaid massage services (without realizing the restrictive conditions that applied).

*Morris* did not involve a consumer contract, but a merchant contract, a fact that the *Morris* court found persuasive. 128 Cal. App. 4th at 1322. The contract at issue was for credit card payment processing, and included a $150 termination fee, which the

plaintiff argued was unconscionable. Unlike here, the termination fee was unambiguously disclosed. *Id.* at 1321.

Finally, the findings of no unconscionability in *Morris* and *Leong* were based in part on a legitimate business justification for the allegedly unconscionable provision. "[U]nconscionability turns not only on a one-sided result, but also on an absence of justification for it." *Armendariz*, 24 Cal.4th at 117-18 (internal quotation marks and citation omitted). Lack of mutuality in a contract provision does not necessarily trigger a finding of unconscionability, so long as "the business realities that create the special need for ... advantage" favoring the party with the superior bargaining strength are "factually established." *Id*. at 117 (discussing *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1536 (1997)) (internal quotation marks and citations omitted). Thus, in *Leong*, without the provision, the defendant and its competitors would be forced to incur the expense of making games available in perpetuity and storing customer account data without compensation. 2010 WL 1641364 at *10. In *Morris*, a part of the termination fee was incurred for the services provided for opening and maintaining the account, rather than closing it. 128 Cal. App. 4th at 1324.

Defendant's forfeiture clause, on the other hand, is not supported by a legitimate business reason, as it essentially assures income for services which will never be rendered if the consumer terminates the membership or defaults. At bottom, it is a deceptive way for a business to extract relatively small monthly sums from thousands of consumers (generating large sums over time) in exchange for an illusory service. It is undisputed that between December 2007 and April 2014, almost 100,000 members lost prepaid massage services upon termination, and almost 40,000 members lost them when their accounts fell into arrears. Defendant's internal valuation of the forfeited prepaid massage services is approximately $22 million. (Restis Decl. Ex. 30.) Although Defendant's CEO testified that the forfeiture clause was intended to get members to use the membership massages "with some urgency," (Restis Decl. Ex. 16, Depo. of David Crisalli ("Crisalli Depo.") at 130-31), this explanation does not show

any "business reality" which created a special need for Defendant to benefit from the substantial economic gain provided by the forfeiture clause at the expense of its members. Far from a "square deal,"[9] this is a raw deal which finds no shelter under the law.

Plaintiffs have presented sufficient evidence of procedural and substantive unconscionability to prevail on their UCL claim under this theory. The arguments and evidence put forth by Defendant are insufficient to raise a genuine issue of material fact.

## 2. Unlawful Penalty

With respect to the arrears subclass, Plaintiffs assert the loss of prepaid massages upon default is an unlawful penalty in violation of § 1671, which prohibits certain liquidated damages clauses in consumer contracts:

> [A] provision in a contract liquidating damages for the breach of the contract is void except that the parties to such a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage.

Cal. Civ. Code § 1671(d). A liquidated damages provision that violates this statute "is an unlawful penalty," and is "presumed void." *In re Cellphone Termination Fee Cases*, 193 Cal. App. 4th 298, 322 (2011).

Defendant initially argues Plaintiffs' claim fails because the forfeiture provision can be triggered by events other than breach of the membership agreement. While the provision is triggered by failure to timely pay membership fees (which is a breach of the agreement), it is also triggered by termination of the agreement (which is not a breach). Defendant has cited no authority, and the Court is aware of none, supporting the proposition that when the same contractual provision can be triggered by a breach as well by an act permitted by the contract, § 1671 does not apply. Here, Plaintiffs assert § 1671 only where the forfeiture provision is triggered by breach of the membership provision. Accordingly, the Court rejects Defendant's argument that §

---

[9] "All I ask is a square deal for every man. Give him a fair chance. Do not let him wrong anyone, and do not let him be wronged." Theodore Roosevelt, December 2, 1904.

1671 does not apply because the forfeiture provision was not necessarily triggered by breach.

Defendant's remaining argument is that the forfeiture of prepaid massages is not a form of liquidated damages because the amount of damages is not certain at the time of contract formation, but only after cancellation of the contract. Generally, liquidated damages are defined as "an amount of compensation to be paid in the event of a breach of contract, the sum of which is fixed and certain by agreement." *Chodos v. West Publ'g Co., Inc.*, 292 F.3d 992, 1002 (9th Cir. 2002) (applying Cal. law). When a contract provides a formula to calculate liquidated damages based on profits, and damages can be calculated after breach when the profits had been earned, the provision is for liquidated damages, even if the actual amount cannot be calculated at the time of contract formation. *Higgins v. Desert Breamar, Inc.*, 219 Cal. App. 2d 744, 752 (1963). Here, the value of the massage services is apparent from the membership agreement's monthly dues, and the number of forfeited massages is ascertainable upon breach, *i.e.*, when the agreement is in arrears. The membership agreement is sufficiently certain to support liquidated damages.

Having concluded that the forfeiture provision constitutes liquidated damages for purposes of § 1671, the Court turns to whether Plaintiffs are entitled to summary adjudication of this claim. A claim under § 1671 has two elements: "(1) fixing the amount of actual damages must be impracticable or extremely difficult, and (2) the amount selected must represent a reasonable endeavor to estimate fair compensation for the loss sustained." *In re Cellphone Termination Fee Cases*, 193 Cal. App. 4th at 322. Defendant admits it did not attempt to estimate actual damages, and does not contend that doing so would have been difficult. (Restis Decl. Ex. 34 & Def.'s Opp'n at 22-25.) Plaintiffs are therefore entitled to summary adjudication in their favor on the unlawful business practices claim under § 1671(d).

**3.  Defendant's Liability**

Defendant argues it cannot be held liable for the practices discussed above, and that liability can be asserted only against its franchisee clinics, who, unlike Defendant, were parties to the membership agreements. In *People v. Sarpas*, 225 Cal. App. 4th 1539 (2014), the court defined the parameters of UCL liability for conduct of another:

> Liability under the UCL ... must be based on the defendant's participation in or control over the unlawful practices found to violate section 17200 ... . Although a UCL claim cannot be predicated on vicarious liability, liability under the UCL may be imposed against those who aid and abet the violation. Liability may be imposed if the defendant knows the other's conduct constitutes a breach and gives substantial assistance or encouragement to the other to so act.

*Id.* at 1563 (internal quotation marks, citations and ellipsis omitted).

As discussed in the Order Denying Defendant's Motion to Dismiss ("Motion to Dismiss Order," filed Sep. 17, 2013, at 3-4, 6-7) and Class Certification Order (Class Cert. Order at 6-8, 10-11, 16-17), based on the Franchise Disclosure Agreement, the Franchise Agreements entered into between Defendant and its clinics, and other evidence referenced in the Orders, Defendant required its clinics to use the membership agreement and cancellation forms that Defendant had prepared. In addition, Defendant exercised wide-reaching control over its franchisees' day-to-day operations beyond what was necessary to protect Defendant's brand and goodwill. The evidence demonstrates that Defendant originated the business practices at issue, and exercised control to ensure its clinics implemented them as intended.

Defendant's supplemental authority, *Patterson v. Domino's Pizza, LLC*, __ Cal. 4th __, 2014 WL 4236175 (Cal., Aug. 28, 2014), does not alter this reality. *Patterson* addressed the issue of agency between a franchisor and franchisee for purposes of liability under the Fair Employment and Housing Act for sexual harassment committed by the franchisee's employee against a coworker. The court held that a uniform marketing and operational plan, which was imposed and enforced by the franchisor against the franchisee much like in the pending case, "cannot *automatically* saddle the franchisor with responsibility for employees of the franchisee who injure each other on the job." 2014 WL 4236175 at *1 (emphasis in original). The agency issue was

decided by focusing on whether the franchisor "retained or assumed a general right of control over factors such as hiring, direction, supervision, discipline, discharge, and relevant day-to-day aspects of the workplace behavior of the franchisee's employees." *Id*. at *1 & *15. Because Domino's did not have control over aspects of the franchisee's business regarding employment matters, it was found not liable for the franchisee's employee's harassment. By contrast, Defendant here retained control over the *content* of the membership agreement as reflected in the documents governing the franchisor-franchisee relationship. Accordingly, *Patterson* does not preclude a finding of Defendant's liability for the business practices reflected in and arising from the membership agreement.

Defendant's argument that it cannot be held liable because it was not a party to the membership agreements and did not administer the agreements, including making any modifications to the agreements during performance, and did not interface with Plaintiffs, were addressed in the Motion to Dismiss and Class Certification Orders. In an effort to raise a genuine issue of material fact, Defendant relies almost exclusively on the evidence it filed in opposition to Plaintiffs' class certification motion. Upon review of the evidence for purposes of the pending motions, it is insufficient to raise a genuine issue of material fact. Defendant's arguments are rejected for the reasons stated in those Orders.

As noted in the Class Certification Order based on the declarations of clinic operators, (*see* Class Cert. Order at 7 n.2), it is apparent that the modifications Defendant relies upon did not involve altering Defendant's membership agreement form, but occurred during performance, apparently in response to requests from members who had accumulated prepaid massages. Post-formation conduct is not relevant to liability. *See* Cal. Civ. Code § 1670.5(a). *See also Am. Software, Inc. v. Ali*, 46 Cal. App. 4th 1386, 1391 (1996) (unconscionability); *In re Cellphone Termination Fee Cases*, 193 Cal. App. 4th at 329 (liquidated damages). That the clinics did not always use the most current membership agreement form is likewise irrelevant. As

discussed in the Class Certification Order and based on the Court's review of all versions of the membership agreement form Defendant created and disseminated during the relevant time, the variations from one form to another are not material to the forfeiture issues presented in this case. Finally, to the extent Defendant presented evidence that the clinic staff did not always follow Defendant's sales script, the evidence does not raise a genuine issue of material fact, as the Court's findings and conclusions with respect to the asserted unlawful practices are not based on the text of the sales presentation, but on the written provisions of the membership agreements. Defendant, therefore, has not raised a genuine issue of material fact regarding liability for the unlawful business practices.

### 4. Causation

To recover under the UCL, the plaintiff must prove that his or her economic injury occurred as a result of the unlawful practice. *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 326 (2011) (citing Cal. Bus. & Prof. Code §17204). This requirement "is satisfied if a causal connection exists between the harm suffered and the unlawful business activity." *Nelson v. Pearson Ford Co.*, 186 Cal. App. 4th 983, 1014 (2010) (internal quotation marks, brackets and citation omitted). Defendant maintains that Plaintiffs' motion should be denied because they cannot show causation.

"[T]he causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law." *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1349 (2009). Defendant argues that Plaintiffs' loss of prepaid massages was not caused by the forfeiture provision but was self-inflicted by failure to timely avail themselves of this benefit. Plaintiffs testified to their various reasons for not using the services before cancellation and/or termination. Nevertheless, it is beyond dispute that but for the forfeiture provision, Plaintiffs could have used the massage services after termination or cancellation. Defendant also points to the large percentage of class members who did not have any accumulated prepaid massages at the time of termination or cancellation. But this fact is immaterial to those

members who lost massage services as a result of the forfeiture provision. Finally, Defendants argue that Plaintiffs Duncan and Hernandez consented to the forfeiture when they signed the cancellation forms, thus breaking the causal connection. As discussed, conduct occurring after formation of the membership agreement is irrelevant. Defendant's evidence is insufficient to raise a genuine issue of material fact with respect to causation.

### 5. Restitution

Plaintiffs argue they are entitled to restitution as a matter of law. They also argue the amount of restitution and/or entitlement to any other relief requested in the FAC, such as injunctive relief, declaratory judgment, disgorgement, treble damages for senior citizen members, and attorneys' fees and costs can be reserved for trial. (*See* Pls' Mot. at 27.) Defendant's cross-motion regarding Plaintiffs' request for treble damages and disgorgement is granted. Plaintiffs have not opposed this aspect of Defendant's motion, and, in any event, restitution is the only monetary remedy available for a UCL violation. *Clark v. Super. Ct. (Nat. W. Life Ins. Co.)*, 50 Cal. 4th 605, 614 (2010) (internal quotation marks and citations omitted). Treble damages are not recoverable, (*id.*), and disgorgement under the UCL is available only to the extent it constitutes restitution. *Madrid v. Perot Systems Corporation*, 130 Cal. App. 4th 440, 459-62 (2005). The cross-motion with respect to the other remedies is denied.

The UCL provides for "such orders or judgments ... as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Accordingly, the object of restitution under the UCL is to restore the status quo by returning the plaintiff's funds, and is "measured by what was taken from the plaintiff." *Clark*, 50 Cal. 4th at 613.

Defendant contends that Plaintiffs are not entitled to restitution because they have no ownership interest in the prepaid massage services they forfeited. This issue is addressed above in the context of forfeiture under §1442. For the reasons stated there,

Defendant has not raised a genuine issue of material fact regarding the members' ownership interest in unused prepaid massage services.

Defendant next requests summary adjudication of the issue that, to the extent Plaintiffs are entitled to restitution, Defendant cannot be liable for more than it received, *i.e.*, that Plaintiffs' relief against Defendant is limited by the 5 or 6% royalty Defendant received from its franchisee clinics. This argument was rejected in *Sarpas*, 225 Cal. App. 4th at 1558. There, the court held the focus of the UCL is to restore the victim to pre-violation status:

> Where restitution is ordered as a means of redressing a statutory violation, the courts are not concerned with restoring the violator to the status quo ante. The focus instead is on the victim. The status quo ante to be achieved by the restitution order was to again place the victim in possession of that money. The object of [statutory] restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest.

*Id.* at 1562 (internal quotation marks and citations omitted). Where the defendant is not the direct recipient of plaintiff's funds, but was sufficiently involved in the UCL violation, the defendant may be ordered to restore what the plaintiff lost, even if the amount exceeds what the defendant received. For example, the court in *Sarpas* affirmed a restitution award against two owners whose company violated the UCL, because they were active participants in the company's day-to-day operations and were in a position of control over its daily operations. *Id.* at 1563-64. The award against the owners was for the entire amount the plaintiffs paid as a result of the unlawful practice, and greatly exceeded net profits received by the owners from the company. *Id*. at 1562-63.

The same principle was applied in *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305 (2009), under circumstances similar to the present case. The defendant, an insurance company, argued it could not be held liable for restitution under the UCL for service charges for payment of car insurance premiums, which were charged by and paid to a billing company. The billing company was a separate business entity which handled monthly billing for the defendant and other insurance companies in the

industry. *Id.* at 1315-16. The billing company had agreements with individual insureds to handle the billing, and charged the customers a monthly fee for the service. *Id.* at 1316. The insurer required its customers to enter into the agreement with the billing company when they elected monthly billing, but the service charge was not disclosed in the insurance contract. The customers could not avoid the service charge once they elected monthly billing. *Id.* at 1316. Although the service charges were billed by and paid directly to the billing company, and were not forwarded to the insurer, the court rejected the argument that the insurer could not be ordered to pay restitution, as the insurer's business practice caused the UCL violation. *Id.* at 1338. *See also Sarpas*, 225 Cal. App. 4th at 1560-61 (discussing *Troyk*).

As discussed, Defendant required the clinics to use the form membership agreements it disseminated to them, thus causing the UCL violation. Under *Sarpas* and *Troyk*, Defendant can be held liable for restitution of membership fees paid for massage services, even if the sum exceeds the royalties Defendant received from its clinics.

Defendant also relies on *Madrid*, 130 Cal. App. 4th at 440, for its argument. In *Madrid*, the plaintiff, an electricity customer, sought to recover the money the defendant received from third-party energy suppliers and generators in exchange for insider information about California's electricity market. This exchange of information allegedly increased electricity rates in California. The plaintiff was not requesting recovery for the increase in rates, but the revenue the defendant earned from selling the insider information. The court affirmed dismissal of the UCL complaint, holding that restitution under the UCL is available only to return the money "to those persons from whom it was taken or who had an ownership interest in it," rather than to restore the violator to the status quo ante. *Id.* at 455-56. Because the revenue from selling insider information did not represent any money lost by the plaintiff, it was not recoverable. 130 Cal. App. 4th at 453-59. *Madrid* does not address the issue presented in this case.

Alternatively, Defendant contends it is entitled to summary judgment because members received benefits in addition to prepaid massages, such as discounts for other

services, products and gift cards, access to Massage Envy at other locations under a reciprocity program, option to freeze monthly membership dues, option to add family members at a discounted rate, and the ability to gift unused prepaid massages before they were forfeited. (*See* Hansen Class Cert. Decl.) According to Defendant, Plaintiffs received these benefits as a part of their membership, and their value should be deducted from the membership dues they paid for the monthly massages. The proper measure of restitution is "[t]he difference between what the plaintiff paid and the value of what the plaintiff received." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009). Defendant argues that Plaintiffs cannot prove the value of the benefits they received in addition to the monthly massage services to calculate the amount they are entitled to recover.

Plaintiffs maintain they are entitled to recovery of the monthly membership dues paid for the unused massages, less any refunds, without any offset for the additional benefits. They base this formula on the express terms of the membership agreement, which provides that the monthly dues entitle the members to a monthly massage service, which can be used at a later time. (Hansen Class Cert. Decl. Exs. G-T.) They argue that any other services are not provided in exchange for the monthly dues, are therefore gratuitous, and not offset against the dues. *See Payne v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 128 Cal. App. 2d 295, 304 (1954).

To the extent such benefits are not gratuitous, Plaintiffs maintain they have speculative value, if any. Plaintiffs are only requesting restitution of the forfeited prepaid massages. Access to reciprocal locations, freezing the membership, and splitting membership services are not membership benefits *per se*, but additional means to use them. Finally, some benefits, such as, adding family members and gifting prepaid massages, require compliance with specific requirements and/or payment in addition to monthly dues. (Hansen Class Cert. Decl. Ex. W (discussing freezing the account) & Ex. U (gifting a prepaid massage)). Based on the foregoing, Plaintiffs have raised a genuine issue of material fact regarding the recoverable amount of restitution.

For these reasons, Defendant's motion for summary adjudication that any restitution ordered against it be limited to the royalties obtained from its franchisee clinics is denied. So, too, is its motion for summary adjudication that any restitution be offset for membership benefits other than monthly massages. Plaintiffs' motion for summary adjudication that they are entitled to restitution and reserving the amount of restitution for trial is granted.

### 6. Affirmative Defenses

Plaintiffs move for summary adjudication of Defendant's 19 affirmative defenses.[10] Defendant opposes the motion only with respect to its equitable defenses (consent, failure to mitigate, setoff, unclean hands, waiver and good faith) and unconstitutional taking.

Equitable defenses are not automatically precluded in a UCL action. *See Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 179-81 (2000) (what would otherwise be equitable defenses may be considered by the court when the court exercises its discretion over which, if any, remedies authorized by the UCL should be awarded). The Court, however, has summarily adjudicated Plaintiffs' claim for unlawful business practices as well as issues relating to restitution. In opposition to Plaintiffs' motion, Defendant had an opportunity to raise arguments, whether or not labeled as affirmative defenses, to defeat summary adjudication in Plaintiffs' favor. The only equitable defense which appears to have been raised and survived summary adjudication is offset.

In a footnote, Defendant also opposes summary adjudication of its unconstitutional taking defense, which it had pled as an affirmative defense. (Opp'n at 40 n.26.) The entirety of Defendant's opposition is that unconstitutional taking was not addressed in the briefing or ruling on Plaintiffs' class certification motion.

---

[10] Plaintiffs' motion is based on the alternative ground that Defendant waived all of its affirmative defenses because it was late filing the answer. This argument is rejected because Plaintiffs waited more than six months after the answer was filed to raise the timeliness issue, during which time Defendant expended significant resources on discovery, and class certification and other proceedings in this case.

Defendant has provided no reason why this issue should have been addressed at that time, or why it did not raise it in opposition to class certification. In its answer, Defendant states restitution would constitute an unconstitutional taking. Although Defendant had the opportunity, it has not made this argument in opposition to Plaintiffs' motion for summary adjudication with respect to restitution. This Order provides that Plaintiffs and the class are entitled to restitution, and leaves for trial the amount to be awarded. To the extent the affirmative defense of unconstitutional taking was intended to preclude Plaintiffs from receiving any restitution, or limit restitution to Defendant's royalties, these issues have been adjudicated in Plaintiffs' favor, thus precluding further litigation of this defense.

## C.     Defendant's Motion to Exclude Expert Opinions of Thomas Neches

Defendant seeks to exclude the opinions of Plaintiffs' expert Thomas Neches, who opined that the members are entitled to restitution for the prepaid massage services they forfeited times the monthly membership fees paid for them, less any refunds. For the reasons which follow, the motion is denied.

Initially, Defendant seeks to exclude all of Neches' expert opinions as untimely pursuant to Federal Rule of Civil Procedure 37. In this regard, Defendant's motion pertains to discovery, and should have been presented to the magistrate judge assigned to this case no later than 30 days after service of the objectionable report. *See* Civ. Loc. Rule 72.1(b); Chambers Rules of the Hon. Bernard G. Skomal (Discovery Disputes); *see also* Case Management Conference Order, filed Oct, 2, 2013, ¶¶ 2& 6. Because Defendant has not complied with these requirements, the timeliness argument is rejected.

Defendant next argues the opinions should be excluded because they do not meet the requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Defendant does not disagree with Neches' qualifications as a certified public accountant and business valuation expert, the scientific soundness of his arithmetic, or that his opinions logically advance a material

aspect of Plaintiffs' case. Defendant's disagreement is with Plaintiffs' theory of restitution and the corresponding assumptions, which were incorporated into the opinions, *i.e.*, that restitution is not limited to Defendant's royalties or reduced by membership benefits other than monthly massages. These issues were also raised in the summary judgment context, and are addressed above. Defendant's motion to exclude Neches' opinions is denied.

## D.     Defendant's Motion to Decertify

Finally, Defendant moves to decertify the class action arguing that Plaintiffs cannot meet the predominance requirement of Federal Rule of Civil Procedure 23(b)(3) because they have no admissible evidence to calculate the benefit the members received from their membership or the amount Defendant received as a result of forfeiture of prepaid massage services. A class certification order "may be altered or amended before final judgment." Fed. R. Civ. Proc. 23(c)(1)(C). The standard to decertify a class action is the same as to certify it, and the burden of showing that the certification requirements of Rule 23 continue to be met remains with Plaintiffs. *See Marlo v. UPS, Inc.*, 639 F.3d 942, 947 (9th Cir. 2011).

In part, Defendant bases its decertification motion on California case law, which denies class certification when the plaintiff cannot reliably prove restitution as measured by the defendant's net gain after an offset for the value received by the plaintiff. (Def.'s Mot. at 21)( citing cases). "However, Federal Rule of Civil Procedure Rule 23 governs the class-certification issue even if the underlying claim arises under state law." *Marlo*, 639 F.3d 942, 947 (9th Cir. 2011).

Under federal law, what is necessary to maintain certification with respect to monetary remedies is a showing that individual monetary claims "stem[] from the defendant's actions that created the legal liability." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)(discussing *Comcast Corp. v. Behrend*, __ U.S. __, 133 S. Ct. 1426 (2013)). Defendant argues that Plaintiffs' theory of restitution, reflected in Neches' opinion, does not meet this standard because the award should be limited to

Defendant's royalties and reduced by membership benefits other than pre-paid massage services. Plaintiffs' theory is supported by the law and sufficient evidence to survive summary judgment. As discussed above, the monetary claims were caused by the forfeiture and cancellation provisions of the membership agreement, which was drafted and disseminated by Defendant. Moreover, calculation of individual recovery will not overwhelm questions common to the class, *see Comcast*, 133 S.Ct. at 1433, because Defendant's Millenium software enables an accurate determination of membership dues paid, prepaid massages forfeited, and the amount of any other transactions between a member and a clinic, to calculate an individual amount of restitution for each member. *See Leyva*, 716 F.3d at 514. Defendant's request to decertify this action is therefore denied.

### III.

### CONCLUSION

For the foregoing reasons, it is ordered as follows:

1. Plaintiffs' motion for summary judgment, or in the alternative for summary adjudication, is granted with respect to Defendant's liability for unlawful business practices, Plaintiffs' entitlement to restitution, and all affirmative defenses except for offset. Defendant's motion for summary judgment, or in the alternative for summary adjudication, is granted with respect to Plaintiffs' claims for treble damages and non-restitutionary disgorgement. The issues of injunctive relief and the amount of restitution remain for trial. The issue whether restitution should be limited to Defendant's royalties is adjudicated in Plaintiffs' favor.

2. Defendant's motions to exclude expert opinions of Thomas Neches and decertify class action are denied.

**IT IS SO ORDERED.**

DATED: September 25, 2014

_____
HON. DANA M. SABRAW
United States District Judge