**Thomas Neches & Company LLP**
633 West 5th Street, Suite 2800
Los Angeles, California 90071-2039

*Gail Hahn, et al. v. Massage Envy Franchising, LLC*

# United States District Court
# Southern District of California
# Case No. 3:12-cv-00153-DMS-BGS

# Report of Thomas Neches Valuing Settlement Benefits

# April 20, 2015

## Background and Assignment

I was retained in the matter *Gail Hahn, et al. v. Massage Envy Franchising, LLC* ("this lawsuit") on behalf of plaintiffs to determine plaintiffs' and class members' restitution or economic damages, assuming liability has been proved. Previously in this lawsuit, I prepared a declaration dated March 30, 2014, an expert report dated April 11, 2014, and a second expert report dated May 2, 2014. By this reference, the opinions stated and documents relied upon in the declaration and previous reports are incorporated into this report.

In December 2014, the parties in this lawsuit entered into a Stipulation of Class Action Settlement and Release ("Settlement Agreement"). The terms of the Settlement Agreement provide that all Former Members (as defined in paragraph I.M. of the Settlement Agreement)[1] have 60 days from the date they receive notice of the Settlement Agreement to submit a request for any unutilized massages to be reinstated, and 180 days from that day to utilize any reinstated massages issued.[2] The number of reinstated massages each Former Member may receive is as follows:

Number of Reinstated Massages Available to Former Members

| Number of Unutilized Massages ("N") | Length of Reinstated Massage | Number of Massages Reinstated ("R") |
|---|---|---|
| 1 | 50 minutes | 1 |
| 2 | 90 minutes | 1 |
| 3 or more | 50 minutes | R = 0.75 × N (rounded down to the nearest whole number) |

The terms of the Settlement Agreement also provide that for two years after the effective date of the Settlement Agreement, all Current Members (as defined in paragraph I.H. of the Settlement Agreement)[3] will have 60 days (rather than the previous policy of 30 days) after cancellation, non-renewal, or termination for nonpayment to redeem any unutilized massages.[4]

Counsel for Former Members and Current Members ("Claimants") requested me to determine the economic value of the services Claimants may or will obtain as a result of the Settlement Agreement. My findings and opinions are summarized in this report, which has been prepared in accordance with Federal Rule of Civil Procedure 26(a)(2)(B).

**Qualifications, Publications, Compensation, Prior Expert Testimony and Documents Relied Upon or Considered**

I am a Certified Public Accountant, Accredited in Business Valuation, a Certified Valuation Analyst, a Certified Fraud Examiner and am Certified in Financial Forensics. I received my BA in Mathematics and Literature from UC San Diego and my MS in Operations Research from UCLA. I have more than thirty-seven years of experience performing accounting, financial, valuation and statistical analyses. Other disclosures regarding my qualifications are presented in **Exhibit A**.

A list of all publications I have written is attached as **Exhibit B**. My compensation in this matter is at a rate of $575.00 per hour and is not contingent on the outcome of this lawsuit. A list of all cases in which I have testified as an expert at trial or in deposition for the past four years is attached as **Exhibit C**. A list of all documents and other data sources I reviewed or considered (in addition to the documents and other sources previously disclosed, which are incorported by reference) is attached as **Exhibit D**.

## Findings and Opinions

<u>Summary</u>

- A reasonable estimate of the value of each 50-minute massage obtained from the Settlement Agreement is $56.00.

- A reasonable estimate of the value of each 90-minute massage obtained from the Settlement Agreement is $82.00.

- A reasonable estimate of the value to Former Members of reinstatement of unutilized massages is $179,000,000.[a]

- A reasonable estimate of the value to Current Members of receiving an additional 30 days after leaving Massage Envy to redeem any unutilized massages is $36,000,000.

<u>A reasonable estimate of the value of each 50-minute massage obtained from the Settlement Agreement is $56.00.</u>

Using its Millennium Computer System, with which the Court is familiar,[5] Massage Envy performed statistical studies of Former Members who were California residents. One study captured the distribution of monthly dues rates paid by California-resident Former Members.[6]

---

(a)  This calculation assumes: (1) 100% participation by claimants, and (2) no claimant will utilize more than six reinstated massages during the 180-day redemption period.

From this study I calculated that the weighted average of the monthly dues paid by this population is $56.55. This calculation is presented in **Exhibit E**.

Because of the large sample size and the diversity of the population in California, it is reasonable to assume the population of California-resident Former Members is a representative sample of the monthly dues paid by all Former Members. Further, as explained below, it is reasonable to use the average monthly dues paid by Former Members, with one adjustment, to represent the value of a 50-minute massage obtained from the Settlement Agreement.

Because members may receive goods and services in addition to a monthly massage in return for their monthly dues, arguably the value of a single massage is less than the amount of total monthly dues.[7] However, a quick review of these benefits easily demonstrates that — with one exception — these benefits add little or no value to the monthly massage purchased.

The exception is the fact that monthly dues allow members to obtain a second massage during a month at a discounted price. As shown in **Exhibit F**, the price of the second massage varies from $39.00 to $59.00. As calculated in **Exhibit E**, incorporating the ratio of second massage price to monthly dues paid by California-resident Former Members yields a weighted average cost of a second massage during a month of $41.11. As calculated in **Exhibit G**, the average cost per massage for members who take two or more massages per month is $48.83. However, less than 7% of Massage Envy members regularly take two or more massage per month.[8] As calculated in **Exhibit G**, the overall average cost per massage for California-resident Former Members therefore is $56.01 ($0.54 less than average monthly dues paid of $56.55). Rounding down to the nearest dollar yields a reasonable estimate of the average cost per massage of $56.00.

What about the other benefits included in the monthly dues? The table below summarizes these potential benefits included in monthly dues and the reasons they offer little value above and beyond the first and (very occasionally) second massage.

| Benefit | Discussion |
| --- | --- |
| Discounts on products and services | In practice, such discounts were rarely received or had little value when received. Massage Envy was able to identify total discounts to California-resident Former Members of only $81,073 for retail items and $10,730 for family discounts (compared to Massage Envy's internal valuation of forfeited prepaid massage services of $22 million).[9] |
| Ability to transfer services | This benefit was not included in the services provided paid for with monthly dues. Massage Envy charges members $10 to transfer a membership service.[10] |
| Ability to "split" or combine some member services | In the end, each member pays the same total price for the combined services. The value of "convenience" may be real, but it is too small to be measured. |

A comparison to market prices for a generic one-hour massage further supports a finding that a value of $56.00 per 50-minute massage is reasonable and conservative.

- According to a price elasticity study performed on behalf of Massage Envy by WestGroup Research in 2008, the average expected price for a generic one-hour massage was $65.12.[11]

- According to a survey prepared by Harstad Strategic Research, Inc. in 2013, the national average cost (including tip) for a massage was $69.00, and the national median cost (including tip) for a massage was $60.00.

  - These costs have not changed significantly since surveying began in 2005.[12]

  - A survey prepared by Associated Bodywork & Massage Professionals in 2009 reported that the average massage session taken lasts one hour, and the vast majority of massages (78.5%) are 50-75 minutes in length.[13]

<u>A reasonable estimate of the value of each 90-minute massage obtained from the Settlement Agreement is $82.00.</u>

As shown in **Exhibit H**, the average ratio of the cost of a 90-minute massage to a 50-minute massage is 1.47. As shown in **Exhibit I**, multiplying the value of a 50-minute massage by this ratio yields a value of a 90-minute massage of $82.00.

<u>A reasonable estimate of the value to Former Members of reinstatement of unutilized massages is $179,000,000.</u>

Massage Envy provided a spreadsheet summarizing the distribution of Former Members by the number of massages forfeited.[14] I applied the rules for the number of reinstated massages summarized in the Background section of this report to this distribution to calculate the number of reinstated massages available to the Former Members. This calculation is presented in **Exhibit J,** summarized in **Exhibit K** and **Exhibit L**, and summarized below.

Summary of Former Members, Forfeited Massages and Available Massage Reinstatements

| | |
|---|---|
| Number of Former Members | 1,142,724 |
| Number of forfeited massages | 5,465,745 |
| Average number of forfeited massages per member | 4.8 |

| | |
|---|---|
| Number of massages available to be reinstated | 3,919,242 |
| Percent of forfeited massages[(b)] | 74% |
| Average number of massage reinstatements available per member | 3.4 |

As shown in **Exhibit J**, Former Members forfeited between 1 and 122 massages each, and each is entitled to between 1 and 91 massage reinstatements. As shown in **Exhibit M**, the typical member takes 33 days between each massage, an average of .922 massages per month.[15] Given that Former Members must utilize all reinstated massages within six months, it is reasonable to assume each member will utilize at most six reinstated massages. Therefore, Former Members who forfeited more than nine massages might not utilize all massage reinstatements available (Former Members who forfeited nine or massages are entitled to six or fewer reinstated massages; Former Members who forfeited ten or more massages are entitled to seven or more reinstated massages). However, relatively few Former Members (14%) forfeited more than nine massages (see **Exhibit K**). Therefore, 86% of Former Member will not expect to see the value of their settlement be restricted by the limit of 180 days to utilize reinstated massages.

Taking into consideration that 14% of Former Members who forfeited more than nine massages will be limited by the likelihood of utilizing no more than six reinstated massages during the 180-day redemption period, the expected number of massages utilized is as follows.

Summary of Expected Massage Reinstatements Utilized
Assume a Maximum of Six Reinstatements Utilized per Former Member

| | |
|---|---|
| Expected number of massage reinstatements utilized | 3,104,255 |
| Percent of forfeited massages[(b)] | 59% |
| Average number of massage reinstatements utilized per member | 2.7 |

As shown in **Exhibit N**, multiplying the expected number of massage reinstatements (which consist of 205,538 90-minute massages and 2,898,717 50-minute massages) by the value per massage ($82.00 and $56.00, respectively) yields an expected value for reinstated massages of $179,182,000. Rounding down yields:

**Expected Value of Reinstated Massages Utilized = $179,000,000.**

---

[(b)] In calculating the percentage, 90-minute massages are weighted by 1.5.

It would not be unreasonable to expect that Former Members would be motivated to utilize as many reinstated massages as possible. If we assume Former Members will utilize reinstated massages as often as twice per month, for a total of twelve massages reinstated massages utilized during the 180-day reinstatement period, we obtain the statistics shown below, which are calculated in **Exhibit J**, **Exhibit L** and **Exhibit N**.

Summary of Massage Reinstatement Utilization Results
Assume a Maximum of Twelve Reinstatements Utilized per Former Member

| | |
|---|---|
| Expected number of massage reinstatements utilized | 3,686,939 |
| Percent of forfeited massages[(b)] | 69% |
| Average number of massage reinstatements utilized per member | 3.2 |
| Former Members with 12 or fewer reinstatements available (%) | 97% |
| Expected value of reinstated massages utilized | $212,000,000 |

If we do not limit the number of reinstated massages individual Former Members will be able to utilize, the expected value of reinstated massages utilized is $225,000,000. This calculation is shown in **Exhibit N**.

<u>A reasonable estimate of the value to Current Members of receiving an additional 30 days after leaving Massage Envy to redeem any unutilized massages is $36,000,000.</u>

According to documents produced by Massage Envy, as of December 2011 total current membership was approximately 1,100,000, and approximately 38,000 members discontinued their services each month (which equals 468,000 members per year).[16] This yields an annual attrition rate of 41.5%. According to documents produced by Massage Envy, the total number of Current Members is 1,601,821,[17] yielding annual compound growth in membership from 2011 to 2014 of 13.3%. Extrapolating this growth and assuming the attrition rate remains constant, it is reasonable to expect annual attrition of 709,000 Current Members in 2015 and 803,000 Current Members in 2016, for a total of 1,512,000 membership terminations during the upcoming two years.

As shown below, based on data provided by Massage Envy, I calculated that 46.4% of members whose Massage Envy membership terminates may be expected to forfeit one or more massage service (this percentage already excludes members who redeemed all prepaid services during the first thirty days after termination).

All Members of a California-address Massage Envy Franchise
Whose Membership was Cancelled or Terminated
December 7, 2007 through April 15, 2014[18]

|  | Number of Members | |
|---|---|---|
| Lost a membership service upon cancellation | 137,213 | 46.4% |
| Did not lose a membership service | 158,368 | 53.6% |
| Total | 295,581 | 100.0% |

Therefore, it is reasonable to expect that in the upcoming two years 702,000 Current Members (i.e., 46.4% of 1,512,000 Current Members who will terminate) will be able to take advantage of the additional month provided under the Settlement Agreement to redeem an unutilized massage after termination. Given that, on average, members take 0.922 massages per month,[19] it is reasonable to assume terminating Current Members will be able to redeem 647,000 additional massages (i.e., $0.922 \times 702,000$) as a result of the additional month provided under the Settlement Agreement to redeem unpaid massages. Multiplying the 647,000 additional redeemed massages by the value per massage of $56.00 calculated in **Exhibit G** yields:

**Value of Additional Redeemed Massages to Current Members = $36,000,000.**

The calculation of the value to Current Members to receiving an additional 30 days after termination is summarized in **Exhibit O**. Finally, it is reasonable to assume Current Members who would have forfeited one massage on termination under the previous policy now will be able to utilize the redeemed massage within the sixty-day period. Therefore, the number of Current Members who terminate without forfeiting any massages will increase from 53.6% to 66.0% (i.e., 53.6% + 46.4% × 26.8%, where 26.8% is the percent of members expected to terminate with one forfeited massage [see **Exhibit K**]), and perhaps higher.

**Certifications and Limitations**

I have no present or prospective interest in any entity discussed in this report. I have no personal interest or bias with respect to the parties involved. My compensation is not contingent on an action or event resulting from the analyses, opinions or conclusions in, or the use of, this report. This report has been prepared for the specific purpose set forth herein and is intended for no other purpose. I reserve the right to revise or supplement these opinions in light of events and circumstances that may occur subsequent to the date of this report.

I attest under penalty of perjury the statements above are true.

Executed on April 20, 2015
At Santa Barbara, California

_____
Thomas M. Neches, CPA/ABV, CVA, CFE, CFF

## Notes

1  Settlement Agreement, page 5.

2  *ibid.*, page 7, 15-16.

3  *ibid.*, page 4.

4  *ibid.*, page 14.

5  The Court noted in its 4/15/2014 Order (1) Granting Motion to Intervene; and (2) Granting in Part and Denying in Part Motion for Class Certification (16:7-13):

> "Defendant's Millenium computer system gathers information that makes it possible to generate a list of all California members who cancelled their membership or went into arrears, and the date each member joined and cancelled, the membership fees paid, the services used and products purchased, and the amount paid in each instance, as well as whether the service used was not charged because it was prepaid under the membership agreement. (Miller Depo. at 47-50, 52-54, 56, 61-71, 91-93, 108-09; Pls' Reply Ex. D.)"

6  AEO Confidential Millennium Summaries.xlsx, Tab MembershipDuesBreakdowns.

7  10/24/2014 Massage Envy Franchising, LLC's Memorandum of Contentions of Fact and Law, 16:5-17-18.

8  MEF-Hahn002069.

9  Massage Envy Franchising, LLC's Memorandum of Contentions of Fact and Law (16:18-22, 17:1-6). MEF-Hahn002069. 4/15/2014 Order (1) Granting Motion to Intervene; and (2) Granting in Part and Denying in Part Motion for Class Certification (18:17-25).

10  Massage Envy Franchising, LLC's Memorandum of Contentions of Fact and Law (17:11-12).

11  "Massage Envy Price Elasticity Research," WestGroup Research, March 5, 2008 (MEF-Hahn002797, 002803).

12  http://www.massagetherapy.com/media_metrics_message_clients.php, citing the Harstad Strategic Research 2013 Consumer Survey.

13  http://www.massagetherapy.com/media_metrics_message_clients.php, citing the 2009 ABMP Member Survey.

14  ENV – Reinstated Massage Breakdown by Qty.xlsx.

15  MEF-Hahn002069.

16  MEF-Hahn036789.

17  2015-03-25 email from Cindy Ricketts to Bill Restis re: Hahn - class data.

18  2014-07-02 Declaration of Mathew Michuta, 2:11-15.

19  MEF-Hahn002069.

# Thomas M. Neches, CPA – Resume

Thomas Neches, managing partner of Thomas Neches & Company LLP, provides accounting, financial, business valuation and statistical analyses to assist attorneys involved in litigation. Mr. Neches has testified as an expert in state and federal courts in Arizona, California, Florida, Kentucky, Missouri, Nevada, New York and Oregon. He is a Certified Public Accountant, Accredited in Business Valuation, a Certified Valuation Analyst, a Certified Fraud Examiner and is Certified in Financial Forensics. He received his BA in Mathematics and Literature from UC San Diego and his MS in Operations Research from UCLA.

Mr. Neches has testified to juries on behalf of both plaintiffs and defendants in antitrust, breach of contract, fraud, intellectual property, lender liability, personal injury and wrongful termination cases. Examples of the litigation issues he has addressed include lost profits, lost business value, determining a reasonable royalty and piercing the corporate veil. Representative industries include banking, entertainment, insurance, manufacturing, retail, securities and wholesale. Mr. Neches specializes in applying computer database and statistical techniques to assemble and analyze voluminous and complex data.

Mr. Neches has over thirty-seven years of professional experience. During the past twenty-eight years he has provided litigation services almost exclusively. Prior to forming Thomas Neches & Company in January 2000, he was Senior Partner of Simpson & Company, a firm of certified public accountants specializing in litigation services. Previously, he was a partner at Coopers & Lybrand (now known as PricewaterhouseCoopers) in its litigation services practice in Los Angeles. Prior to joining Coopers & Lybrand he was a manager in the management consulting group of Arthur Young & Company (now known as Ernst & Young), where he specialized in operations improvement, systems analysis and litigation consulting. Before that he was head of the technical staff at The Assessment Group, a consulting firm which conducted economic and cost analysis for the U.S. Navy. Mr. Neches has acted as a Judicial Arbitrator of the Superior Court of the State of California for the County of Los Angeles.

Mr. Neches was an Adjunct Professor at Loyola Law School during 2003 – 2013 and is an Approved California MCLE Provider. He has been an instructor in numerous regional and local courses on litigation services. Among other publications he has authored, Mr. Neches is the co-author of "Use of Expert Witnesses" in *Prosecuting and Defending Insurance Claims* (John Wiley & Sons, 1989).

Mr. Neches is a member of the American Institute of Certified Public Accountants, the National Association of Certified Valuators and Analysts, the Association of Certified Fraud Examiners, the American Statistical Association and the American Bar Association.

**Exhibit B**
**Thomas M. Neches, CPA – Publications**

- "Use of Expert Witnesses," *Prosecuting and Defending Insurance Claims*, ed. Robert F. Cushman, Bruce W. Roznowski and William E. Simpson, (New York: John Wiley & Sons, 1989).

- "The Role of the Expert in Environmental Insurance Coverage Litigation," *Environmental and Toxic Tort Claims -- Insurance Coverage in 1990 and Beyond*, (Practicing Law Institute, 1990).

- "Settling CERCLA Actions," *Environmental Dispute Handbook: Liability and Claims*, ed. David A. Carpenter, Robert F. Cushman and Bruce W. Roznowski (John Wiley & Sons, 1991)

- "Expert Accounting Assistance in Intellectual Property Litigation," *Intellectual Property Litigation* (March 1992: 5-10).

- "Expert Assistance in Wrongful Termination Litigation," *Employment & Labor Relations Law Litigation* (Winter 1992: 24-28).

- "The Spoiler," *Verdicts & Settlements* (Los Angeles Daily Journal), April 30, 1999.

- Forward to *The Complete Guide to Spotting Accounting Fraud & Cover-Ups*, Martha Maeda (Atlantic Publishing Group, 2010)

- "Direct and Cross Examination of Financial Experts – Lessons from the Trenches," *Santa Barbara Lawyer* (July 2014: 10-11, 31)

| Side | Case Number | Case Name | Venue |
|------|-------------|-----------|-------|
| DEF | BC 528691 | *Juanita Patterson-Wright v. Housing Authority of the City of Los Angeles* | California Superior Court, Los Angeles County<br>deposition 03/31/2015 |
| DEF | BC 496533 | *George Diego and Allan Corrales v. City of Los Angeles, et al.* | California Superior Court, Los Angeles County<br>trial 03/16/2015<br>deposition 02/26/2015 |
| DEF | 30-2014-0070693 0-CU-OR-CJC | *Harbor Marina, LLC v. Golden Hills Properties, LLC* | California Superior Court, Orange County<br>trial 02/24/2015<br>deposition 02/04/2015 |
| DEF | BC490805 | *Sa Young Hong, et al. v. Interpols Network, Inc, et al.* | California Superior Court, Los Angeles County<br>deposition 01/28/2015 |
| DEF | BC430809 | *Sylvester Stewart and Ken Roberts v. Gerald Goldstein, et al.* | California Superior Court, Los Angeles County<br>trial 01/21/2015<br>trial 01/20/2015<br>deposition 12/30/2014 |
| DEF | 72 517 00904 13 TNM | *Victor Perez Leon v. Vicente Del Rio* | American Arbitration Association<br>trial 11/18/2014 |
| PLN | BC523868 | *Ronda D. Sutton v. Citibank, N.A., et al.* | California Superior Court, Los Angeles County<br>trial 10/14/2014 |
| DEF | 1:13-CV-00336-A WI-BAM | *Derek Thomason v. City of Fowler, et al.* | United States District Court, Eastern District of California<br>deposition 08/07/2014 |
| PLN | 3:12-cv-00153-D MS-BGS | *Gail Hahn, et al. v. Massage Envy Franchising, LLC* | United States District Court, Southern District of California<br>deposition 05/13/2014 |

| Side | Case Number | Case Name | Venue |
|------|-------------|-----------|-------|
| DEF | SC 104853 | *Patrón Spirits International AG v. Ajendra Singh* | California Superior Court, Los Angeles County<br>deposition 02/25/2014 |
| PLN | SC119066 | *California Hand Center, Inc. v. J. Timothy Katzen, et al.* | California Superior Court, Los Angeles County<br>trial 01/29/2014<br>deposition 01/13/2014 |
| DEF | 72 505 00294 12 VIAM | *West Coast Transfer Service, Inc. v. Calex Engineering Company* | American Arbitration Association<br>trial 11/18/2013<br>deposition 06/26/2013 |
| PLN | PC050410 | *Valorie Lenz Margalit, et al. v. Evershine Granites PVT. LTD, et al.* | California Superior Court, Los Angeles County<br>deposition 05/03/2013 |
| DEF | 72 140 Y 06644 11 S1M | *William Morris Endeavor Entertainment, LLC v. Howard Schultz and Lighthearted Entertainment, Inc.* | American Arbitration Association<br>trial 05/01/2013<br>deposition 04/10/2013 |
| DEF | BC468353 | *Overland Corners, LLC v. Lisa A. Chan, et al.* | California Superior Court, Los Angeles County<br>trial 02/04/2013 |
| PLN | BC444869 | *Danny Huynh v. Seacrest Seafood Corporation, et al.* | California Superior Court, Los Angeles County<br>trial 12/19/2012 |
| PLN | BC463778 | *Sabiha Khan v. Metropolitan Transportation Authority, et al.* | California Superior Court, Los Angeles County<br>deposition 12/14/2012 |
| PLN | GC042173 | *Sabrina Hicks, et al. v. Huntington Hospital, et al.* | California Superior Court, Los Angeles County<br>deposition 08/27/2012 |
| DEF | CV 11-04054 MMM (CWx) | *BDO Remit (USA), Inc. v. Stichting BDO and BDO USA LLP* | United States District Court, Central District of California<br>deposition 06/28/2012 |

| Side | Case Number | Case Name | Venue |
|------|-------------|-----------|-------|
| PLN | 00180143 | *National Home Auction Company, LLC and National Home Auction Corporation v. Real Estate Disposition Corporation, et al.* | California Superior Court, Orange County<br><br>deposition 04/10/2012 |
| PLN | EC052660 | *Sergie Aftandelian, et al. v. Luciano Gomez, M.D.* | California Superior Court, Los Angeles County<br><br>trial 02/15/2012<br>trial 02/14/2012<br>deposition 10/27/2011 |
| PLN | 06-10316 "H" | *The GR Group, LLC v. Lafayette Insurance Company* | Louisiana District Courts, Parish of Orleans Civil District Court<br><br>deposition 01/30/2012 |
| PLN | 1:10-CV-00411 LJO JLT | *E. & J. Gallo Winery, et al. v. Proximo Spirits, Inc., et al.* | United States District Court, Eastern District of California -- Fresno Division<br><br>deposition 10/19/2011 |
| PLN | 30-2009-0033323 3 | *Peter Reilly v. Inquest Technology, et al.* | California Superior Court, Orange County<br><br>trial 10/06/2011<br>trial 10/04/2011 |
| PLN | 2:08-cv-00442-H DM-PAL | *Aniplex, Incorporated v. The Upper Deck Company* | United States District Court, District of Nevada<br><br>trial 09/23/2011 |
| DEF | SC 107891 | *Gina Mammana v. Greenrose, Inc. dba Conroy Flower's, et al.* | California Superior Court, Los Angeles County, West District<br><br>trial 08/10/2011 |
| PLN | S-1500-CV 261005 LPE | *The Citri-Lite Company, Inc. v. Cott Beverages, Inc.* | United States District Court, Eastern District of California<br><br>trial 07/19/2011 |
| PLN | 623-989 | *I&A Properties, Inc. and KeyClick Outsourcing, Inc. v. St. Paul Travelers Insurance Company* | Louisana State Court, 24th Judicial District Court, Parish of Jefferson<br><br>deposition 04/27/2011 |

| Description | Bates |
|---|---|
| 2008-03-05 Massage Envy Price Elasticity Research | MEF-Hahn002791-2811 |
| 2010-01-01 Massage Envy Business Policies | MEF-Hahn031885 |
| 2010-02-25 Key Findings, Implications from Massage Envy Focus Groups | MEF-Hahn002250-63 |
| 2011-07-01 Driving Decision Making for Massage Envy Via Analytical Data Mining | MEF-Hahn036790-1 |
| 2011-07-15 Massage Envy Price Elasticity Research | |
| 2012-09-01 Clinic Capacity Optimization Study | MEF-Hahn036788-9 |
| 2012-11-01 Massage Envy Franchising, LLC Operations Manual | MEF-Hahn030129-272 |
| 2013-02-01 Massage Envy Franchising, LLC Operations Manual | MEF-Hahn029504-7 |
| 2013-06-19 First Amended Class Action Complaint | |
| 2014-04-14 Class Representatives' Memorandum of Points and Authorities in Support of Motion For Preliminary Approval of Class Action Settlement and Motion For Leave To File Second Amended Complaint | |
| 2014-04-15 Order (1) Granting Motion to Intervene; and (2) Granting in Part and Denying in Part Motion for Class Certification | |
| 2014-07-02 Declaration of Mathew Michuta | |
| 2014-10-14 Class Representatives' Memorandum of Contentions of Law and Fact Pursuant To Local Rule 16.1(F)(2) | |
| 2014-10-14 Massage Envy Franchising, LLC's Memorandum of Contentions of Fact and Law | |
| 2014-12-03 Stipulation of Class Action Settlement and Release | |
| 2014-12-04 Declaration of William R. Restis In Support of Unopposed Motion For Preliminary Approval of Class Action Settlement and Motion For Leave To File Second Amended Complaint | |
| 2015-01-30 Reporter's Transcript of Proceedings - Motion Hearing | |
| 2015-03-25 email from Cindy Ricketts to Bill Restis re: Hahn - class data | |
| 2015-04-09 email from Lori Castaneda (Garden City Group) to Bill Restis and Cindy Ricketts re:  Hahn - class data | |
| AEO Confidential Millennium Summaries.xlsx | |
| ENV - Reinstated Massages Breakdown by Qty.xlsx | |

**Exhibit E**

**California Former Members' Weighted Average Monthly Dues Rate**
**and Expected Cost of Second Monthy Massage**

| Number of Class Members[1] | Percent[1] | Dues Rates Paid by Class Members[1] | Ratio of Second Massage Cost to Monthly Dues[2] | Expected Cost of Second Monthly Massage[3] |
|---|---|---|---|---|
| 108 | 0.1% | $39.00 | 1.00 | $39.00 |
| 14 | 0.0% | $44.00 | 0.80 | $39.00 |
| 24,669 | 20.6% | $49.00 | 0.80 | $39.00 |
| 9,162 | 7.7% | $54.00 | 0.80 | $42.98 |
| 85,481 | 71.4% | $59.00 | 0.70 | $41.50 |
| 147 | 0.1% | $59.99 | 0.70 | $42.20 |
| 104 | 0.1% | $69.09 | 0.86 | $59.08 |
| 119,685 | 100.0% | **$56.55** | | **$41.11** |

[1]Source: *AEO Confidential Millennium Summaries.xlsx* , *Tab MembershipDuesBreakdowns.*

[2]Source: Exhibit F.

[3](Dues Rates Paid by Class Members) × (Ratio of Second Massage Cost to Monthly Dues), but not less than $39.00.

**Exhibit F**

**Massage Envy Price Policies for Second Member Massage[1]**

| Price Point | Monthly Dues | Second Member Massage | Ratio |
|---|---|---|---|
| Price Point 2 | $49.00 | $39.00 | 0.80 |
| Price Point 3 | $59.00 | $39.00 | 0.66 |
| Price Point 4 | $59.00 | $49.00 | 0.83 |
| Price Point 5 | $59.00 | $39.00 | 0.66 |
| Price Point 6 | $49.00 | $39.00 | 0.80 |
| Price Point 7 | $69.00 | $59.00 | 0.86 |
| Price Point 8 | $59.00 | $39.00 | 0.66 |
| | | | |
| Average | $49.00 | $39.00 | 0.80 |
| Average | $59.00 | $41.50 | 0.70 |
| Average | $69.00 | $59.00 | 0.86 |

---

[1]Source: MEF-Hahn029672.

**Exhibit G**
**Value of 50-Minute Massage**

| | | | |
|---|---|---|---|
| A | Average Price for Massage 1 | $56.55 | Exhibit E |
| B | Average Price for Massage 2 | $41.11 | Exhibit E |
| C | Average Price if Two Massages per Month | $48.83 | C = (A + B) ÷ 2 |
| D | Percent of Members Taking Two or More Massages per Month | 7% | MEF-Hahn002069 |
| E | Average Price per Monthly Massage | $56.01 | E = D × C + (1 - D ) × A |
| F | **Value of a 50-Minute Massage** | **$56.00** | F = E (rounded down) |

**Exhibit H**

**Massage Envy Price Policies for 1-Hour and 1.5-Hour Massages[1]**

| Price Point | 1 Hour | 1.5 Hour | Ratio | Price Point | 1 Hour | 1.5 Hour | Ratio |
|---|---|---|---|---|---|---|---|
| Price Point 2 | | | | Price Point 6 | | | |
| Introductory Rate | $39.00 | $57.00 | 1.46 | Introductory Rate | $49.00 | $74.00 | 1.51 |
| Non-Member | $65.00 | $95.00 | 1.46 | Non-Member | $65.00 | $95.00 | 1.46 |
| Valued Guest | $55.00 | $81.00 | 1.47 | Valued Guest | $55.00 | $81.00 | 1.47 |
| | | | | | | | |
| Price Point 3 | | | | Price Point 7 | | | |
| Introductory Rate | $39.00 | $57.00 | 1.46 | Introductory Rate | $59.00 | $84.00 | 1.42 |
| Non-Member | $78.00 | $114.00 | 1.46 | Non-Member | $118.00 | $168.00 | 1.42 |
| Valued Guest | $65.00 | $95.00 | 1.46 | Valued Guest | $100.00 | $143.00 | 1.43 |
| | | | | | | | |
| Price Point 4 | | | | Price Point 8 | | | |
| Introductory Rate | $49.00 | $74.00 | 1.51 | Introductory Rate | $49.00 | $74.00 | 1.51 |
| Non-Member | $98.00 | $148.00 | 1.51 | Non-Member | $98.00 | $148.00 | 1.51 |
| Valued Guest | $69.00 | $104.00 | 1.51 | Valued Guest | $78.00 | $114.00 | 1.46 |
| | | | | | | | |
| Price Point 5 | | | | Average | | | |
| Introductory Rate | $49.00 | $74.00 | 1.51 | Introductory Rate | $47.57 | $70.57 | 1.483 |
| Non-Member | $78.00 | $114.00 | 1.46 | Non-Member | $85.71 | $126.00 | 1.47 |
| Valued Guest | $69.00 | $100.00 | 1.45 | Valued Guest | $70.14 | $102.57 | 1.462 |

[1]Source: Massage Envy Spa Business Policies, MEF-Hahn029672-5.

**Exhibit I**
**Value of 90-Minute Massage**

| A | Value of a 50-Minute Massage | $56.00 | Exhibit G |
|---|---|---|---|
| B | Average ratio of 90-massage to 50-massage cost | 1.47 | Exhibit H |
| C | Average price of a 90-minute massage | $82.32 | C = A × B |
| **D** | **Value of a 90-Minute Massage** | **$82.00** | D = C (rounded down) |

**Exhibit J**
**Distribution of Former Members, Available Massage Reinstatements and Expected Massage Reinstatement Utilization**

| Length of Reinstated Massage (Minutes) | Number of Former Members | Massages Forfeited Per Former Member | Cumulative Percent of Former Members | Total Massages Forfeited | Massages Reinstated per Former Member | Available Reinstated Massages | Available Percent Reinstated | Max 6 Massages Utilized | | | Max 12 Massages Utilized | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Expected Massages Reinstated per Former Member | Expected Massages Reinstated | Expected Percent Reinstated | Expected Massages Reinstated per Former Member | Expected Massages Reinstated | Expected Percent Reinstated |
| 50 | 305,881 | 1 | 27% | 305,881 | 1 | 305,881 | 100% | 1 | 305,881 | 100% | 1 | 305,881 | 100% |
| 90 | 205,538 | 2 | 45% | 411,076 | 1 | 205,538 | 75% | 1 | 205,538 | 75% | 1 | 205,538 | 75% |
| 50 | 135,747 | 3 | 57% | 407,241 | 2 | 271,494 | 67% | 2 | 271,494 | 67% | 2 | 271,494 | 67% |
| 50 | 163,543 | 4 - 5 | 71% | 667,785 | 3 | 490,629 | 73% | 3 | 490,629 | 73% | 3 | 490,629 | 73% |
| 50 | 58,197 | 6 | 76% | 349,182 | 4 | 232,788 | 67% | 4 | 232,788 | 67% | 4 | 232,788 | 67% |
| 50 | 44,983 | 7 | 80% | 314,881 | 5 | 224,915 | 71% | 5 | 224,915 | 71% | 5 | 224,915 | 71% |
| 50 | 70,127 | 8 - 9 | 86% | 572,690 | 6 | 420,762 | 73% | 6 | 420,762 | 73% | 6 | 420,762 | 73% |
| 50 | 27,494 | 10 | 89% | 274,940 | 7 | 192,458 | 70% | 6 | 164,964 | 60% | 7 | 192,458 | 70% |
| 50 | 23,468 | 11 | 91% | 258,148 | 8 | 187,744 | 73% | 6 | 140,808 | 55% | 8 | 187,744 | 73% |
| 50 | 35,373 | 12 - 13 | 94% | 442,163 | 9 | 318,357 | 72% | 6 | 212,238 | 48% | 9 | 318,357 | 72% |
| 50 | 11,448 | 14 | 95% | 160,272 | 10 | 114,480 | 71% | 6 | 68,688 | 43% | 10 | 114,480 | 71% |
| 50 | 9,207 | 15 | 95% | 138,105 | 11 | 101,277 | 73% | 6 | 55,242 | 40% | 11 | 101,277 | 73% |
| 50 | 13,668 | 16 - 17 | 97% | 225,522 | 12 | 164,016 | 73% | 6 | 82,008 | 36% | 12 | 164,016 | 73% |
| 50 | 5,250 | 18 | 97% | 94,500 | 13 | 68,250 | 72% | 6 | 31,500 | 33% | 12 | 63,000 | 67% |
| 50 | 4,404 | 19 | 98% | 83,676 | 14 | 61,656 | 74% | 6 | 26,424 | 32% | 12 | 52,848 | 63% |
| 50 | 6,929 | 20 - 21 | 98% | 142,045 | 15 | 103,935 | 73% | 6 | 41,574 | 29% | 12 | 83,148 | 59% |
| 50 | 2,850 | 22 | 98% | 62,700 | 16 | 45,600 | 73% | 6 | 17,100 | 27% | 12 | 34,200 | 55% |
| 50 | 2,480 | 23 | 99% | 57,040 | 17 | 42,160 | 74% | 6 | 14,880 | 26% | 12 | 29,760 | 52% |
| 50 | 3,910 | 24 - 25 | 99% | 95,795 | 18 | 70,380 | 73% | 6 | 23,460 | 24% | 12 | 46,920 | 49% |
| 50 | 1,576 | 26 | 99% | 40,976 | 19 | 29,944 | 73% | 6 | 9,456 | 23% | 12 | 18,912 | 46% |
| 50 | 1,298 | 27 | 99% | 35,046 | 20 | 25,960 | 74% | 6 | 7,788 | 22% | 12 | 15,576 | 44% |
| 50 | 2,221 | 28 - 29 | 99% | 63,299 | 21 | 46,641 | 74% | 6 | 13,326 | 21% | 12 | 26,652 | 42% |
| 50 | 883 | 30 | 99% | 26,490 | 22 | 19,426 | 73% | 6 | 5,298 | 20% | 12 | 10,596 | 40% |

**Exhibit J**
**Distribution of Former Members, Available Massage Reinstatements and Expected Massage Reinstatement Utilization**

| Length of Reinstated Massage (Minutes) | Number of Former Members | Massages Forfeited Per Former Member | Cumulative Percent of Former Members | Total Massages Forfeited | Massages Reinstated per Former Member | Available Reinstated Massages | Available Percent Reinstated | Max 6 Massages Utilized | | | Max 12 Massages Utilized | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Expected Massages Reinstated per Former Member | Expected Massages Reinstated | Expected Percent Reinstated | Expected Massages Reinstated per Former Member | Expected Massages Reinstated | Expected Percent Reinstated |
| 50 | 754 | 31 | 100% | 23,374 | 23 | 17,342 | 74% | 6 | 4,524 | 19% | 12 | 9,048 | 39% |
| 50 | 1,282 | 32 - 33 | 100% | 41,665 | 24 | 30,768 | 74% | 6 | 7,692 | 18% | 12 | 15,384 | 37% |
| 50 | 534 | 34 | 100% | 18,156 | 25 | 13,350 | 74% | 6 | 3,204 | 18% | 12 | 6,408 | 35% |
| 50 | 457 | 35 | 100% | 15,995 | 26 | 11,882 | 74% | 6 | 2,742 | 17% | 12 | 5,484 | 34% |
| 50 | 757 | 36 - 37 | 100% | 27,631 | 27 | 20,439 | 74% | 6 | 4,542 | 16% | 12 | 9,084 | 33% |
| 50 | 291 | 38 | 100% | 11,058 | 28 | 8,148 | 74% | 6 | 1,746 | 16% | 12 | 3,492 | 32% |
| 50 | 290 | 39 | 100% | 11,310 | 29 | 8,410 | 74% | 6 | 1,740 | 15% | 12 | 3,480 | 31% |
| 50 | 466 | 40 - 41 | 100% | 18,873 | 30 | 13,980 | 74% | 6 | 2,796 | 15% | 12 | 5,592 | 30% |
| 50 | 179 | 42 | 100% | 7,518 | 31 | 5,549 | 74% | 6 | 1,074 | 14% | 12 | 2,148 | 29% |
| 50 | 161 | 43 | 100% | 6,923 | 32 | 5,152 | 74% | 6 | 966 | 14% | 12 | 1,932 | 28% |
| 50 | 273 | 44 - 45 | 100% | 12,149 | 33 | 9,009 | 74% | 6 | 1,638 | 13% | 12 | 3,276 | 27% |
| 50 | 116 | 46 | 100% | 5,336 | 34 | 3,944 | 74% | 6 | 696 | 13% | 12 | 1,392 | 26% |
| 50 | 102 | 47 | 100% | 4,794 | 35 | 3,570 | 74% | 6 | 612 | 13% | 12 | 1,224 | 26% |
| 50 | 151 | 48 - 49 | 100% | 7,324 | 36 | 5,436 | 74% | 6 | 906 | 12% | 12 | 1,812 | 25% |
| 50 | 65 | 50 | 100% | 3,250 | 37 | 2,405 | 74% | 6 | 390 | 12% | 12 | 780 | 24% |
| 50 | 57 | 51 | 100% | 2,907 | 38 | 2,166 | 75% | 6 | 342 | 12% | 12 | 684 | 24% |
| 50 | 99 | 52 - 53 | 100% | 5,198 | 39 | 3,861 | 74% | 6 | 594 | 11% | 12 | 1,188 | 23% |
| 50 | 35 | 54 | 100% | 1,890 | 40 | 1,400 | 74% | 6 | 210 | 11% | 12 | 420 | 22% |
| 50 | 31 | 55 | 100% | 1,705 | 41 | 1,271 | 75% | 6 | 186 | 11% | 12 | 372 | 22% |
| 50 | 41 | 56 - 57 | 100% | 2,317 | 42 | 1,722 | 74% | 6 | 246 | 11% | 12 | 492 | 21% |
| 50 | 14 | 58 | 100% | 812 | 43 | 602 | 74% | 6 | 84 | 10% | 12 | 168 | 21% |
| 50 | 14 | 59 | 100% | 826 | 44 | 616 | 75% | 6 | 84 | 10% | 12 | 168 | 20% |
| 50 | 20 | 60 - 61 | 100% | 1,210 | 45 | 900 | 74% | 6 | 120 | 10% | 12 | 240 | 20% |

| Length of Reinstated Massage (Minutes) | Number of Former Members | Massages Forfeited Per Former Member | Cumulative Percent of Former Members | Total Massages Forfeited | Massages Reinstated per Former Member | Available Reinstated Massages | Available Percent Reinstated | Max 6 Massages Utilized | | | Max 12 Massages Utilized | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Expected Massages Reinstated per Former Member | Expected Massages Reinstated | Expected Percent Reinstated | Expected Massages Reinstated per Former Member | Expected Massages Reinstated | Expected Percent Reinstated |
| 50 | 9 | 62 | 100% | 558 | 46 | 414 | 74% | 6 | 54 | 10% | 12 | 108 | 19% |
| 50 | 8 | 63 | 100% | 504 | 47 | 376 | 75% | 6 | 48 | 10% | 12 | 96 | 19% |
| 50 | 15 | 64 - 65 | 100% | 968 | 48 | 720 | 74% | 6 | 90 | 9% | 12 | 180 | 19% |
| 50 | 4 | 66 | 100% | 264 | 49 | 196 | 74% | 6 | 24 | 9% | 12 | 48 | 18% |
| 50 | 5 | 67 | 100% | 335 | 50 | 250 | 75% | 6 | 30 | 9% | 12 | 60 | 18% |
| 50 | 9 | 68 - 69 | 100% | 617 | 51 | 459 | 74% | 6 | 54 | 9% | 12 | 108 | 18% |
| 50 | 1 | 70 | 100% | 70 | 52 | 52 | 74% | 6 | 6 | 9% | 12 | 12 | 17% |
| 50 | 4 | 72 - 73 | 100% | 290 | 54 | 216 | 74% | 6 | 24 | 8% | 12 | 48 | 17% |
| 50 | 1 | 74 | 100% | 74 | 55 | 55 | 74% | 6 | 6 | 8% | 12 | 12 | 16% |
| 50 | 1 | 79 | 100% | 79 | 59 | 59 | 75% | 6 | 6 | 8% | 12 | 12 | 15% |
| 50 | 1 | 84 - 85 | 100% | 85 | 63 | 63 | 74% | 6 | 6 | 7% | 12 | 12 | 14% |
| 50 | 1 | 104 - 105 | 100% | 105 | 78 | 78 | 74% | 6 | 6 | 6% | 12 | 12 | 11% |
| 50 | 1 | 122 | 100% | 122 | 91 | 91 | 75% | 6 | 6 | 5% | 12 | 12 | 10% |

**Distribution of Former Members, Available Massage Reinstatements and Expected Massage Reinstatement Utilization**

| Length of Reinstated Massage (Minutes) | Number of Former Members | Massages Forfeited Per Former Member | Cumulative Percent of Former Members | Total Massages Forfeited | Massages Reinstated per Former Member | Available Reinstated Massages | Available Percent Reinstated | Max 6 Massages Utilized | | | Max 12 Massages Utilized | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Expected Massages Reinstated per Former Member | Expected Massages Reinstated | Expected Percent Reinstated | Expected Massages Reinstated per Former Member | Expected Massages Reinstated | Expected Percent Reinstated |
| **Unadjusted Totals** | | | | | | | | | | | | | |
| 90-min | 205,538 | | | 411,076 | 1.0 | 205,538 | 50% | 1.0 | 205,538 | 50% | 1.0 | 205,538 | 50% |
| 50-min | 937,186 | | | 5,054,669 | 4.0 | 3,713,704 | 73% | 3.1 | 2,898,717 | 57% | 3.7 | 3,481,401 | 69% |
| Total | 1,142,724 | | | 5,465,745 | 3.4 | 3,919,242 | 72% | 2.7 | 3,104,255 | 57% | 3.2 | 3,686,939 | 67% |
| **Totals Adjusted for 1 (90-minute massage) = 1.5 (50-minute massage)** | | | | | | | | | | | | | |
| 90-min | 205,538 | 2.0 | | 411,076 | 1.5 | 308,307 | 75% | 1.5 | 308,307 | 75% | 1.5 | 308,307 | 75% |
| 50-min | 937,186 | 5.4 | | 5,054,669 | 4.0 | 3,713,704 | 73% | 3.1 | 2,898,717 | 57% | 3.7 | 3,481,401 | 69% |
| Total | 1,142,724 | 4.8 | | 5,465,745 | 3.5 | 4,022,011 | 74% | 2.8 | 3,207,024 | 59% | 3.3 | 3,789,708 | 69% |

Source: *ENV - Reinstated Massages Breakdown by Qty.xlsx*



**Exhibit K**
**Distribution of Former Members and Massages Forfeited**

**Exhibit L**

**Summary of Distribution of Former Members and Available Massage Reinstatements[1]**

| Length of Reinstated Massage (Minutes) | Number of Former Members | Average Massages Forfeited Per Former Member | Percent of Former Members Forfeited | Total Massages Forfeited | Average Massages Available for Reinstatement per Former Member | Total Massages Available for Reinstatement | Percent of Forfeited Massages Available for Reinstatement[2] | Max 6 Massages Utilized | | | Max 12 Massages Utilized | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Average Expected Reinstated Massages Utilized per Former Member | Expected Total Reinstated Massages Utilized | Expected Percent of Forfeited Massages Utilized[2] | Average Expected Reinstated Massages Utilized per Former Member | Expected Total Reinstated Massages Utilized | Expected Percent of Forfeited Massages Utilized[2] |
| 90-min | 205,538 | 2.00 | 18% | 411,076 | 1.00 | 205,538 | 75% | 1.00 | 205,538 | 75% | 1.00 | 205,538 | 75% |
| 50-min | 937,186 | 5.39 | 82% | 5,054,669 | 3.96 | 3,713,704 | 73% | 3.09 | 2,898,717 | 57% | 3.71 | 3,481,401 | 69% |
| Total | 1,142,724 | 4.78 | 100% | 5,465,745 | 3.43 | 3,919,242 | 74% | 2.72 | 3,104,255 | 59% | 3.23 | 3,686,939 | 69% |

[1]Source: Exhibit J.

[2]Each 90-minute massage reinstated is counted as 1.5 50-minute massages.



**Exhibit M**
**Massage Envy**
**Distribution of Average Number of Days Between Massages**

Source: MEF-Hahn002069.

**Exhibit N**
**Value of Reinstatement of Former Class Members' Unutilized Massages**

**Maximum of 6 Reinstated Massages Utilized Per Former Member**

| Length of Reinstated Massage (Minutes) | Number of Former Members | Number of Reinstated Massages Utilized | Value per Utilized Massage | Total Value of Reinstated Massages Utilized |
|---|---|---|---|---|
| 90-minute | 205,538 | 205,538 | $82.00 | $16,854,000 |
| 50-minute | 937,186 | 2,898,717 | $56.00 | $162,328,000 |
| Total | 1,142,724 | 3,104,255 | | $179,182,000 |
| **Rounded** | | | | **$179,000,000** |

**Maximum of 12 Reinstated Massages Utilized Per Former Member**

| Length of Reinstated Massage (Minutes) | Number of Former Members | Number of Reinstated Massages Utilized | Value per Utilized Massage | Total Value of Reinstated Massages Utilized |
|---|---|---|---|---|
| 90-minute | 205,538 | 205,538 | $82.00 | $16,854,000 |
| 50-minute | 937,186 | 3,481,401 | $56.00 | $194,958,000 |
| Total | 1,142,724 | 3,686,939 | | $211,812,000 |
| **Rounded** | | | | **$212,000,000** |

## Exhibit N
## Value of Reinstatement of Former Class Members' Unutilized Massages

**Available**

| Length of Reinstated Massage (Minutes) | Number of Former Members | Number of Reinstated Massages Utilized | Value per Utilized Massage | Total Value of Reinstated Massages Utilized |
|---|---|---|---|---|
| 90-minute | 205,538 | 205,538 | $82.00 | $16,854,000 |
| 50-minute | 937,186 | 3,713,704 | $56.00 | $207,967,000 |
| Total | 1,142,724 | 3,919,242 | | $224,821,000 |
| **Rounded** | | | | **$225,000,000** |

# Exhibit O
## Value of One-Month Extended Redemption Period in Upcoming Two Years

| | | | |
|---|---|---|---|
| A | Monthly cancellations as of December 2011 | 38,000 | MEF-Hahn036789 |
| B | Total current membership as of December 2011 | 1,100,000 | MEF-Hahn036789 |
| C | Annual attrition percent | 41.5% | $C = B \div A \times 12$ |
| D | Total current membership as of December 2014 | 1,601,821 | 3/15/2015 e-mail re: Hahn - class data |
| E | 2011 - 2014 compound annual membership growth | 13.3% | $E = (D \div B)^{(1/3)} - 1$ |
| F | Expected cancellations in 2015 | 709,000 | $F = E \times (D + (1 + E) \times D) \div 2$ |
| G | Expected cancellations in 2016 | 803,000 | $G = (1 + E) \times F$ |
| H | Total expected cancellations in upcoming two years | 1,512,000 | $H = F + G$ |
| I | Percent of members who forfeit massages at cancellation | 46.42% | 2014-07-02 Declaration of Mathew Michuta, 2:11-15 |
| J | Expected cancellations in upcoming two years with forfeited massages | 702,000 | $L = J \times K$ |
| L | Median days between massage | 33 | MEF-Hahn002069 |
| M | Expected number of massages per month | 0.922 | $M = 365 \div L \div 12$ |
| N | Expected number of redeemed massages in the upcoming two years | 647,000 | $N = I \times M$ |
| O | Value per redeemed massage | $56.00 | Exhibit G |
| P | Value of one-month extended redemption period in upcoming two years | $36,232,000 | $P = N \times O$ |
| Q | **Value (rounded)** | **$36,000,000** | |