**FILED**

JUN 2 9 2015

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY     TH          DEPUTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

GAIL HAHN, CHAILLE DUNCAN, and :    Case No. 3:12-cv-00153-DMS-BGS
ALEXIS HERNANDEZ, individually and :
on behalf of all other similarly situated :
California residents, :
                        :
         Plaintiffs, :
                        :
    v.                     :
                        :
MASSAGE ENVY FRANCHISING, :    **JUDGE:   HON. DANA M. SABRAW**
LLC, a Delaware Limited Liability :    **DATE:     AUGUST 14, 2015**
Company, :    **TIME:     1:30 PM**
                        :    **CTRM:    13A**
         Defendant. :
                        :

---

## OBJECTION OF GLENN MANOCHI TO CLASS ACTION SETTLEMENT

---

Glenn A. Manochi, Esquire
1520 Locust Street, 12th Floor
Philadelphia, PA 19102
(215) 545-3000
(215) 545-3001 Fax

Objector

# Table of Contents

Table of Contents ............................................................................................... i

Table of Authorities ......................................................................................... iii

Constitutions, Statutes and Rules..................................................................... v

Other Authorities ............................................................................................. vi

I.        INTRODUCTION AND SUMMARY OF THE OBJECTIONS ............................1

II.      THE CLASS ACTION SETTLEMENT AGREEMENT........................................2

III.     OBJECTOR IS A CLASS MEMBER. ..................................................................5

IV.     THE COURT HAS A FIDUCIARY DUTY TO THE ABSENT CLASS
           MEMBERS. .........................................................................................................5

V.      THE NATIONWIDE CLASS CANNOT BE CERTIFIED. ...................................8

       A.       PLAINTIFFS HAVE NO STANDING TO REPRESENT
                   CURRENT MEMBERS FOR THEIR INJUNCTIVE RELIEF
                   REQUEST.......................................................................................8

       B.       PREDOMINANCE IS ABSENT.....................................................10

VI.     THE SETTLEMENT AGREEMENT IS A "COUPON SETTLEMENT"
           AND IS GOVERNED BY THE CLASS ACTION FAIRNESS ACT..................11

VII.     THE PURPORTED $321 MILLION SETTLEMENT VALUE HAS NO
           BASIS IN FACT, LAW OR REALITY AND CLASS COUNSEL
           CANNOT SHOW THEIR ATTORNEYS' FEE REQUEST IS
           REASONABLE. ..................................................................................................16

       A.       THE $215 MILLION CURRENT AND FORMER MEMBER
                   VALUES STATED IN THE NECHES REPORT ARE
                   INAPPLICABLE IN THIS ACTION.......................................................18

       B.       THE NECHES REPORT VALUES ASCRIBED TO MASSAGES
                   HAVE NO BASIS IN LAW, FACT OR REALITY. ...............................19

       C.       THE INJUNCTION RELIEF IN THE SETTLEMENT
                   AGREEMENT HAS LITTLE OR NO VALUE TO CLASS
                   MEMBERS. .........................................................................................21

i

|  | D. | CLASS COUNSEL'S ATTORNEYS' FEE REQUEST IS UNREASONABLE. | 22 |

VIII.   THE SETTLEMENT AGREEMENT IS NEITHER FAIR NOR REASONABLE AND ITS APPROVAL MUST BE DENIED. ........................... 26

IX.   THE "CLEAR SAILING" PROVISIONS SHOW A CONFLICT OF INTEREST BY CLASS COUNSEL THAT PRECLUDES SETTLEMENT APPROVAL. ............................................................. 27

X.   CONCLUSION ................................................................... 30

CERTIFICATE OF SERVICE ................................................... 31

# Table of Authorities

## Cases

Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 623 (1997) .................................................. 10, 11

American Express Co. v. Italian Colors Restaurant, 133 S. Ct. 2304 (2013) .................................. 8

Boeing v. Van Gemert, 444 U.S. 572, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980) ........ 23, 24, 27, 28

Churchill Vill., L.L.C. v. Gen. Electric Co., 361 F.3d 566, 575 (9th Cir. 2004) ..................... 8, 26

Dennis v. Kellogg Co., 697 F.3d 858, 864 (9th Cir. 2012) ............................................................ 7

Eubank v. Pella Corp., 753 F.3d 718, 723 (7th Cir. 2014) ......................................................... 28

Ferrington v. McAfee, Inc.,
    2012 U.S. Dist. LEXIS 49160, at *36-*37 (N.D. Cal. Apr. 6, 2012) ...................................... 25

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998) ................................................... 5

Hodgers–Durgin v. de la Vina, 199 F.3d 1037, 1045 (9th Cir. 1999) ........................................... 9

In re Apple iPhone 4 Prods. Liab. Litig.
    2012 WL 3283432, at *1 (N.D. Cal. Aug. 10, 2012) ............................................................. 18

In re Baby Products, 708 F.3d 163 (3d Cir. 2013) ....................................................... 6, 8, 24, 28

In re Bluetooth Headset Products Liability Litigation,
    654 F.3d 935, 948 (9th Cir. 2011) .......................................................................... 7, 8, 28, 29

In Re Bridgestone/Firestone, Inc., 288 F.3d 1012, 1018 (7th Cir. 2002) ...................................... 10

In re Citigroup Sec. Litig., 965 F. Supp. 2d 369 (S.D.N.Y. 2013) .............................................. 29

In re Dry Max Pampers Litigation., 724 F.3d 713 (6th Cir. 2013) ............................... 5, 6, 7, 8, 25

In re General Motors Corp. Pick-up Truck Fuel Tank Products Liability Litigation,
    55 F.3d 768, 786-800 (3d Cir. 1995) ...................................................................................... 8

In re Mexico Money Transfer Litig., 267 F.3d 743, 748 (7th Cir. 2001) ...................................... 23

In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 951 (9th Cir. 2015) ....................... 14, 25

In Re: HP Inkjet Printer Litigation, 716 F.3d 1173, 1178 (9th Cir. 2013) ................ 11, 12, 18, 21

Kaufman v. American Express Travel Related Services, 283 F.R.D. 404, 407 (N.D. Ill. 2012) . 24

Lee v. Enterprise Leasing Co.- West,
    2015 U.S. Dist. LEXIS 64027, *30 (D. Nev. May 15, 2015) .................................................... 25

Lobatz v. U.S. West Cellular of Cal., Inc., 222 F.3d 1142, 1147 (9th Cir. 2000) ........................ 29

Lusardi v. Xerox Corp., 975 F.2d 964, 974 (3d Cir. 1992) ............................................................ 9

Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1078 (2d Cir. 1995) ......................... 6

McNair v. Synapse Group Inc., 672 F.3d 213, 227 (3d Cir. 2012) ......................................... 9, 10

Mirfasihi v. Fleet Mortgage Corp., 356 F.3d 781, 785 (7th Cir. 2004) .......................................... 6

O'Shea v. Littleton, 414 U.S. 488, 494, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974) ...................... 9, 10

Palamara v. Kings Family Rests., 2008 WL1818453, at *2 (W.D. Pa. Apr. 22, 2008) ............... 18

Pearson v. NBTY, Inc., 772 F. 3d 778, 784-85 (7th Cir. 2014) ......................................... 21, 24, 29

Redman v. RadioShack Corp., 768 F.3d 622 (7th Cir. 2014) ........................... 8, 14, 15, 16, 23, 24

Reynolds v. Beneficial Nat'l Bank, 288 F.3d 277, 280 (7th Cir. 2002) .......................................... 6

Rutstein v. Avis Rent-a-Car Sys. Inc., 211 F.3d 1228, 1233 (11th Cir. 2000) ............................. 10

Schindler Elevator Corp. v. United States ex rel. Kirk,
    131 S. Ct. 1885, 1891, 179 L. Ed. 2d 825 (2011) ...................................................................... 12

Staton v. Boeing Co., 327 F.3d 938, 964 (9th Cir. 2003) .................................................. 6, 25, 29

Steering Comm. v. Exxon Mobil Corp., 461 F.3d 598, 601 (5th Cir. 2006) ................................. 10

Stirman v. Exxon Corp., 280 F.3d 554, 564 (5th Cir. 2002) ......................................................... 10

Strong v. BellSouth Telecommunications, Inc.,
    173 F.R.D. 167, 172 (W.D. La. 1997), aff'd, 137 F.3d 844 (5th Cir. 1998) ............................ 25

Sullivan v. DB Invs., Inc., 667 F.3d 273, 319 (3d Cir. 2011) ......................................................... 6

Summers v. Earth Island Inst., 555 U.S. 488, 493, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009) ........ 9

Synfuel Techs., Inc. v. DHL Express (USA), Inc.,
    463 F.3d 646, 653 (7th Cir. 2006) ........................................................... 11, 15, 20, 21

Tarlecki v. Bebe Stores, Inc., No. C 05-1777 MHP,
    2009 U.S. Dist. LEXIS 102531, at *12 (N.D. Cal. Nov. 3, 2009)............................. 23

Trombley v. Bank of America Corp., No. 08-cv-456-JD,
    2012 U.S. Dist. LEXIS 63072, at *8 (D. R.I. May 3, 2012).................................... 24

True v. Am. Honda Motor Co., 749 F. Supp. 2d 1052, 1069 (C.D. Cal. 2010) .......................... 12

Vought v. Bank of America, N.A., 901 F. Supp. 2d 1071, 1092 (C.D. Ill. 2012) ........................ 24

Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 525 (1st Cir. 1991) ................................ 28

Wise v. Popoff, 835 F. Supp. 977, 982 (E.D. Mich. 1993)............................................................ 23

Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180 (9th Cir. 2001)........................................ 10

**Constitutions, Statutes and Rules**

<u>Federal</u>

U.S. Constitution Article 3.......................................................................................................... 9

Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1712 ...................................... 11-13, 15, 18, 22
28 U.S.C. § 1712(a) .............................................................................................. 12, 15, 18
28 U.S.C. § 1712(b) ......................................................................................................... 12
28 U.S.C. § 1712(c) .................................................................................................... 12, 16

Senate Report 109-14.................................................................................................. 12, 13, 14

F.R.C.P. 23(b)(2) ........................................................................................................................ 9
F.R.C.P. 23(b)(3) ...................................................................................................................... 10
F.R.C.P. 23(b)(3)(D)................................................................................................................. 11
F.R.C.P. 23(h)........................................................................................................................... 23

<u>State Laws</u>

California Unfair Competition Law ............................................................................................ 19

## Other Authorities

Am. Law Institute
Principles of the Law of Aggregate Litigation §3.05(c) (2010) ................................................... 7

Cambridge American English Dictionary
http://dictionary.cambridge.org/us/dictionary/american-english/coupon ................................. 13

GEO. J. LEGAL ETHICS 1395, 1396-97 (2005) ........................................................................ 14

Federal Judicial Center, Manual for Complex Litigation § 21.71 (4th ed. 2004) .................... 8, 25

Isaacharoff, Samuel
The Governance Problem in Aggregate Litigation,
81 FORDHAM L. REV. 3165, 3171-72 (2013) ......................................................................... 23

Leslie, Christopher R.
"The Need To Study Coupon Settlements in Class Action Litigation," ............................. 14, 18

Merriam Webster Dictionary
http://www.merriam-webster.com/dictionary/coupon ............................................................. 13

Reece, Thom, "How to Use Coupons to Promote Your Business,"
www.businessknowhow.com/marketing/couponing.htm ......................................................... 14

Scalia, Antonin & Bryan A. Garner,
Reading Law: The Interpretation of Legal Texts 69 (2012) ..................................................... 12

## I.     INTRODUCTION AND SUMMARY OF THE OBJECTIONS

This coupon settlement is bad for the class members. The settlement provides no monetary benefit to the class members. Former Massage Envy customers are entitled to receive additional massages, for a 6 month period, at a rate which, depending on the number of forfeited massages, is approximately ¾ of the number of massages the former member actually purchased. Current customers do not do much better. Massage Envy has "generously" agreed to extend the time in which a current customer can redeem a forfeited massage from 30 to 60 days. Despite the fact no class member sees a single nickel from the settlement, class counsel have negotiated a "clear sailing" provision by which they will be paid up to $7.8 million. The settlement also contains a "kicker" which prohibits class members from receiving any of the $7.8 million should the court determine Class Counsel's $7.8 million fee request is unreasonable. Instead, any excess cash reverts to defendant.

The Court must reject the settlement and class counsel's request for attorneys' fees. First, named plaintiffs have no standing to pursue their nationwide class injunctive relief request.

Second, the settlement is a coupon settlement and is governed by the Class Action Fairness Act. Class counsel, however, has failed to submit its attorneys' fee motion in a form which allows the Court to determine the fees attributable to the coupon settlement portion of the settlement and those attributable to the injunctive relief request. Accordingly, the attorneys' fee motion must be rejected.

Third, Class Counsel trumpets the settlement as having a value of $321 million. As the class members receive no money, this number can only be derived from expert reports. The reports submitted in support of approval contain numerous flaws and must be rejected. The actual settlement value to the class is so small it renders as unreasonable class counsels' attorney

fee request.

Fourth, the facts here show class counsel should have done more to provide a settlement fund which provided actual cash payments to class members. Because they did not do so the settlement must be rejected as not being fair or reasonable.

Fifth, the settlement's clear sailing provisions combined with class counsel's unreasonable fee request puts class counsel in a conflict of interest position with the class.

For these reasons, and others set forth below, the settlement cannot be approved.

## II.    THE CLASS ACTION SETTLEMENT AGREEMENT.

Class representatives propose settling all claims asserted against defendant Massage Envy Franchising, LLC ("MEF"). The Stipulation of Class Action Settlement Agreement and Release (the "Settlement Agreement") divides class members into two (2) groups - Current Members and Former Members. See Settlement Agreement, attached as Exhibit "A" to the Declaration of William R. Restis in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement and Motion for Leave to File Second Amended Complaint (Doc. No. 294) ("Restis Dec.").

Current Members mean "All members of a clinic or spa owned or operated by a MEF Franchisee within the United States whose Membership is current as of [March 6, 2015]" Settlement Agreement, p. 4. Former Members means "all members of a clinic or spa owned and operated by a MEF Franchisee within the United States between December 7, 2007, and [March 6, 2015] who had one or more Unutilized Massages when (i) he/she cancelled his or her Membership; (ii) he/she elected not to renew his/her Membership; or (iii) his/her Membership was terminated for non-payment, but excluding anyone whose Membership was terminated for inappropriate or illegal conduct." Settlement Agreement, p. 5.

The settlement provides no monetary relief at all to any class member. Instead, plaintiffs assert, after a Current Member's membership ends, the amount of time he or she will have to get a massage (for which the monthly membership dues have already been paid) increases from thirty (30) to sixty (60) days. Long Form Notice, p. 3.[1] Defendant has also agreed to provide its franchisees, for a two (2) year period after the settlement becomes effective, with template membership agreements, sales scripts and cancellation forms which explain a Massage Envy member has 60 days, instead of 30 days, to get the already paid for massage. Restis Dec., ¶¶ 14-15, Settlement Agreement, pp. 14-15.

This relief is very limited. As an initial matter, a Current Member will be required to do business with MEF after he or she has ended the business relationship with Massage Envy. MEF pays no money to the Current Members. The Current Member cannot transfer or assign this benefit to anyone else. The only product a Current Member obtains is a massage; no other Massage Envy goods or services, or any other goods and services from anyone else, can be purchased.

Former Members will be allowed to reinstate massages for which they have already paid but did not receive (so-called "Unutilized Massages"). The number of reinstated massages to be provided to a Former Member correlates to the number of Unutilized Massages. The reinstated massages range from one reinstated 50 minute massage for one Unutilized Massage to seven reinstated 50 minute massages for ten Unutilized Massages. For eleven or more Unutilized

---

[1] There is no language, however, in the Settlement Agreement by which MEF actually agrees Current Members will automatically receive the extra thirty (30) days to redeem massages. See generally Settlement Agreement, particularly pp. 14-18. MEF has not filed any documents in support of the approval of the Settlement Agreement which confirms Plaintiffs assertions. Thus, it appears plaintiffs are overstating the relief which is being provided in the Settlement Agreement.

Massages, a Former Member would receive reinstated massages equal to ¾ of the number of the Former Member's Unutilized Massages.   Settlement Agreement, pp. 15-16 and Long Form Notice, pp. 3-4.

This benefit is extremely limited. As with the relief being provided to Current Members, a Former Member will be required to do business with Massage Envy after he or she had already decided not to do so. A Former Member will have to pay for the benefit in the form of a tip to the Massage Envy therapist ranging from $15 to $38 a massage. Declaration of Objector Glenn A. Manochi ("Objector") ("Manochi Dec."), ¶ 9. Former Members receives no money. They must, within a sixty (60) day period ending June 29, 2015, submit a reinstatement request. If approved by the Settlement Administrator, the Former Member must get the reinstated massages within 6 months after the Settlement Agreement's final approval; otherwise the benefit disappears. The benefit is not transferrable to anyone else. It cannot be used to purchase any other service or any goods from Massage Envy or from any third party. It can only be redeemed at the Massage Envy location where the Former Member entered into the agreement (the so-called "Home Clinic"), unless the Former Member has moved more than 25 miles from the Home Clinic.[2]

In exchange for this relief, both Current and Former Members are required to release any and all claims and liabilities which arise under any federal, state or local "law, statute, ordinance, regulation, the Constitution, contract, common law, or any other source" and relate to the Membership Agreement and it provisions "concerning the cancellation, renewal, termination,

_____

[2]   Former Members must make a re-instatement request to designate a new clinic where the Former Member can redeem the reinstated massages. Here, MEF requires written proof of the new address so the Settlement Administrator can, among other things, determine the distance of the move. Long Form Notice, p. 5.

and/or expiration of or ability to use any Unutilized Massages . . . ." Settlement Agreement, p. 38, ¶ 62 & p. 8, ¶ 1.AA.

Although providing no monetary relief to the class members, MEF has agreed to pay class counsel for their legal fees and costs in an amount not to exceed $7,800,000.00. Settlement Agreement, pp. 36, ¶ 54. The Settlement Agreement contains a "clear sailing" provision in that MEF will not object to class counsel's fee petition, provided the request does not exceed $7,800,000.00. Id., ¶ 54. The settlement being proposed also involves a "kicker" arrangement in that all amounts representing the difference between $7,800,000.00 and the amount the Court awards to class counsel for its fees and costs reverts to MEF and does not benefit class members in any way. See generally Settlement Agreement, pp.36-37; ¶¶ 55-56.

### III.    OBJECTOR IS A CLASS MEMBER.

As the Manochi Dec. and exhibits (which are incorporated into this objection) show, Objector is a member of the class in that he became a Massage Envy Spa member on March 29, 2014 and is currently a member. Manochi Dec., ¶¶ 4-6.

### IV.    THE COURT HAS A FIDUCIARY DUTY
### TO THE ABSENT CLASS MEMBERS.

"Settlement class actions present unique due process concerns for absent class members," Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). "The parties to an ordinary settlement bargain away only their own rights—which is why ordinary settlements do not require court approval. In contrast, class-action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of unnamed class members who by definition are not present during the negotiations. Thus, there is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own." In re Dry Max Pampers Litigation., 724 F.3d 713, 715 (6th Cir. 2013) ("Pampers"),

5

Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." Mirfasihi v. Fleet Mortgage Corp., 356 F.3d 781, 785 (7th Cir. 2004); In Re Baby Products Antitrust Litig., 708 F.3d 163, 175 (3d Cir. 2013) ("Baby Products") (same). See Sullivan v. DB Invs., Inc., 667 F.3d 273, 319 (3d Cir. 2011) (stating that "trial judges bear the important responsibility of protecting absent class members, and must be assur[ed] that the settlement represents adequate compensation for the release of the class claims" (internal quotation marks omitted)); Reynolds v. Beneficial Nat'l Bank, 288 F.3d 277, 280 (7th Cir. 2002) (at the settlement phase, the district judge is "a fiduciary of the class," subject "to the high duty of care that the law requires of fiduciaries"); Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1078 (2d Cir. 1995) (noting that "the district court has a fiduciary responsibility to ensure that the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately" (internal quotation marks omitted)). See also Staton v. Boeing Co., 327 F.3d 938, 972 n.22 (9th Cir. 2003) (it is the district court's duty to police "the inherent tensions among class representation, defendant's interests in minimizing the cost of the total settlement package, and class counsel's interest in fees.").

The Court's oversight role does not end at making sure that the settling parties engaged in properly adversarial arm's length settlement negotiations. "In class-action settlements, the adversarial process—or what the parties here refer to as their 'hard-fought' negotiations—extends only to the amount the defendant will pay, not the manner in which that amount is allocated between the class representatives, class counsel, and unnamed class members. For the economic reality [is] that a settling defendant is concerned only with its total liability, and thus a

settlement's allocation between the class payment and the attorneys' fees is of little or no interest to the defense... And that means the courts must carefully scrutinize whether [class counsel's and the named representatives'] fiduciary obligations have been met." Pampers, 724 F.3d at 717-18 (internal quotations omitted).

While it is necessary that a settlement is at "arm's length" without express collusion between the settling parties, it is not sufficient. "While the Rule 23(a) adequacy of representation inquiry is designed to foreclose class certification in the face of 'actual fraud, overreaching or collusion,' the Rule 23(e) reasonableness inquiry is designed precisely to capture instances of unfairness not apparent on the face of the negotiations." In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 948 (9th Cir. 2011) ("Bluetooth") (internal quotation omitted). Due to the defendant's indifference as to the allocation of funds between the class, the named representatives and class, it is enough that the settlement evinces "subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations." Pampers, 724 F.3d at 718 (quoting Dennis v. Kellogg Co., 697 F.3d 858, 864 (9th Cir. 2012)).

"In reviewing a proposed settlement, a court should not apply any presumption that the settlement is fair and reasonable." Am. Law Institute, Principles of the Law of Aggregate Litigation §3.05(c) (2010) ("ALI Principles"). "The burden of proving the fairness of the settlement is on the proponents." Pampers, 724 F.3d at 718 (compiling cases and authorities). The settling parties' claim that they are entitled to a presumption of fairness is simply legally incorrect. They have the burden, a burden here which they have failed to meet.

This is especially true in this case, because the settlement has been proposed before the nationwide Former and Current Member class certification. Delaying certification until

settlement poses various problems, see In re General Motors Corp. Pick-up Truck Fuel Tank Products Liability Litigation, 55 F.3d 768, 786-800 (3d Cir. 1995), and calls for heightened judicial scrutiny of the certification and the accompanying settlement. Id. at 807; Pampers, 724 F.3d at 721; Bluetooth, 654 F.3d at 946-47 (9th Cir. 2011) (citing cases from the Second, Third, Seventh and Ninth Circuits); Federal Judicial Center, Manual for Complex Litigation § 21.612 (4th ed. 2004).

In their approval papers due to be filed on July 24, 2015 class counsel, no doubt, will focus on the multi-factor Churchill test for settlement fairness. Churchill Vill., L.L.C. v. Gen. Electric Co., 361 F.3d 566, 575 (9th Cir. 2004). It cannot be overemphasized that—like the factor test of other circuits—the Churchill test is not exhaustive. See e.g., Redman v. RadioShack Corp., 768 F.3d 622 (7th Cir. 2014) ("RadioShack") (reversing district court settlement approval for reasons outside of balancing test); Baby Products, 708 F.3d 163 (3d Cir. 2013) (same).

## V.  THE NATIONWIDE CLASS CANNOT BE CERTIFIED.

Plaintiffs seek to expand the current class of Former Members of MEF Franchisees who reside in California to include all Current and Former Members of MEF Franchisees on a nationwide basis. Rule 23 "imposes stringent requirements for certification that in practice exclude most claims." American Express Co. v. Italian Colors Restaurant, 133 S. Ct. 2304 (2013). The settlement classes do not meet these stringent requirements.

### A.  Plaintiffs Have No Standing to Represent Current Members for Their Injunctive Relief Request

In the Second Amended Complaint (Restis Dec. (Doc. No. 294), Exhibit 5) (the "SAC"), plaintiffs seek to represent all Current Members nationwide and seek injunctive relief. SAC, ¶ 33 and Wherefore Clause. Named plaintiffs are each Former Members of MEF Franchisees. Hahn

canceled her membership in March 2009, Hernandez in March 2013, and Duncan in February 2011. SAC ¶¶ 10, 12-13. As a result of SAC allegations, MEF entered into the Settlement Agreement which provides Current Members with the injunctive relief of providing them an extra thirty (30) days to use already purchased massages.

The U. S. Constitution limits the judicial power of Article III courts to matters that present actual cases or controversies. U.S. Constitution Art. III § 2, cl. 1. This limitation means a plaintiff who brings suit in federal court must have standing to pursue the asserted claims. "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." O'Shea v. Littleton, 414 U.S. 488, 494, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." Id., 419 U.S. at 495-96; Summers v. Earth Island Inst., 555 U.S. 488, 493, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009) ("[t]o seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact'"). Accordingly, "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." Hodgers–Durgin v. de la Vina, 199 F.3d 1037, 1045 (9th Cir. 1999).

Here, the named plaintiffs have not had any business relationship with any MEF Franchisee for more than two (2) years. See SAC, ¶¶ 10, 12-13. None has alleged in any pleading she is currently being harmed by any MEF Franchisee business practice. See generally SAC. As there is no case or controversy before it, the Court cannot certify the Current Member class. McNair v. Synapse Group Inc., 672 F.3d 213, 227 (3d Cir. 2012) (denying class certification under Rule 23(b)(2) where named class members sought injunctive relief were no longer

9

customers of magazine clearinghouse). Further, Objector submits the Court does not have the power to hear the claim. See Lusardi v. Xerox Corp., 975 F.2d 964, 974 (3d Cir. 1992) (and cases cited therein).

However, the named plaintiffs here would have standing if the parties were to agree Current Members are entitled to receive monetary compensation. See McNair, 672 F.3d at 225. Objector therefore urges the parties to reconsider the injunctive relief being provided to Current Members in the Settlement Agreement.

### B. Predominance is Absent.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 623 (1997) ("Amchem"). To establish predominance, the proponent of class certification must show "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." Rutstein v. Avis Rent-a-Car Sys. Inc., 211 F.3d 1228, 1233 (11th Cir. 2000). "The predominance inquiry requires that questions of law or fact common to members of the class predominate over any questions affecting only individual members." Steering Comm. v. Exxon Mobil Corp., 461 F.3d 598, 601 (5th Cir. 2006). "No class action is proper unless all litigants are governed by the same legal rules . . . [where] claims must be adjudicated under the law of many jurisdictions, a single nationwide class is not manageable." In Re Bridgestone/Firestone, Inc., 288 F.3d 1012, 1018 (7th Cir. 2002) (reversing the district court's certification of two nationwide classes based on warranty and consumer fraud claims). See Stirman v. Exxon Corp., 280 F.3d 554, 564 (5th Cir. 2002) (holding "predominance" standard not met where claim based on implied covenant to market natural gas and no showing made that

the state laws governing the claims were consistent regarding this covenant); Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180 (9th Cir. 2001) (reasoning "predominance" not shown because state laws on claims of negligence, products liability and medical monitoring varied).

On April 22, 2015, Class Counsel filed a motion for an Award of Attorneys' Fees, Expenses and Service Awards (the "Attorneys' Fees Motion") (Doc. Nos. 308-13). In support of the Attorneys' Fee Motion, Mark L. Knutson, Esquire filed a declaration (Doc. No. 308-2) (the "Knutson Dec."). In it, Mr. Knutson discussed numerous, numerous problems and issues which arise from attempting to proceed with a nationwide class action for Former and Current Members. Knutson Dec. ¶¶ 20-23. His statements there speak volumes about how the laws and lack of laws predominant over the issues in the class action. Here, plaintiffs should not be heard to argue Amchem applies because the class is being certified for settlement purposes and therefore the manageability analysis of Rule 23(b)(3)(D) does not apply. Amchem, 521 U.S. at 621. Objector submits Rule 23(b)(3)(D) requires at least some basis to conclude a nationwide class action could be brought before an analysis can occur as to its management difficulties. Here, Class Counsel has concluded there was no basis. See generally Knutson Dec.

## VI.  THE SETTLEMENT AGREEMENT IS A "COUPON SETTLEMENT" AND IS GOVERNED BY THE CLASS ACTION FAIRNESS ACT.

Congress passed the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1712, having found "[c]lass members often receive little or no benefit from class actions, and are sometimes harmed, such as where . . . counsel are awarded large fees while leaving class members with coupons or other awards of little or no value . . . ." Pub. L. 109-2 § 2(a)(3)(A), 118 Stat. 4.

> "Congress was rightfully concerned with such settlements: by decoupling the interests of the class and its counsel, coupon settlements may incentivize lawyers to 'negotiate settlements

11

under which class members receive nothing but essentially valueless coupons, while the class counsel receive substantial attorney's fees. S. Rep. 109-14, at 29-30 (2005).'"

In Re: HP Inkjet Printer Litigation, 716 F.3d 1173, 1178 (9th Cir. 2013) ("Inkjet"). The Congressional effort to regulate coupon settlements took on two forms.

> "The first invites increased judicial scrutiny of coupon settlements generally. § 1712(e); see also Synfuel Techs., Inc. v. DHL Express (USA), Inc., 463 F.3d 646, 653-54 (7th Cir. 2006); True v. Am. Honda Motor Co., 749 F. Supp. 2d 1052, 1069 (C.D. Cal. 2010); S. Rep. No. 109-14, at 27 (stating that CAFA "requires greater scrutiny of coupon settlements"). The second involves a series of specific rules that govern the award of attorneys' fees in coupon class actions. § 1712(a)--(d) . . . ."

Inkjet, 716 F.3d at 1178.

Section 1712(a) states where a proposed class action settlement "provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed." 28 U.S.C. § 1712(a). Section 1712(c) provides for the method of calculating the award of class counsel attorneys' fees where a class action settlement "provides for an award of coupons to class members and also provides for equitable relief, including injunctive relief . . . ." Id. As the Ninth Circuit has held, the "practical effect" of this section

> "is that the district court must perform two separate calculations to fully compensate class counsel. First, under subsection (a), the court must determine a reasonable contingency fee based on the actual redemption value of the coupons awarded. Second, under subsection (b), the court must determine a reasonable lodestar amount to compensate class counsel for any non-coupon relief obtained. This lodestar amount can be further adjusted upwards or downwards using an appropriate multiplier. § 1712(b)(2). In the end, the total amount of fees awarded under subsection (c) will be the sum of the amounts calculated under subsections (a) and (b)."

Inkjet, 716 F.3d at 1178.

The word "coupon" is not defined in CAFA. "Where a statute does not define a key term, [the Court looks] to the word's ordinary meaning." Inkjet, 716 F.3d at 1181 (citing Schindler Elevator Corp. v. United States ex rel. Kirk, 131 S. Ct. 1885, 1891, 179 L. Ed. 2d 825 (2011) (citations omitted); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 69 (2012) ("The ordinary-meaning rule is the most fundamental semantic rule of interpretation.").

The Merriam Webster Dictionary defines "coupon" as a "piece of printed paper that lets you get a service or product for free or at a lower price." http://www.merriam-webster.com/dictionary/coupon. The Cambridge American English Dictionary concurs a coupon may be used to obtain a product or service for free or at a reduced price. http://dictionary.cambridge.org/us/dictionary/american-english/coupon (a piece of paper that you can use to buy a product or service at a reduced price or to get it free . . . .").

When it passed CAFA, Congress clearly contemplated a definition of "coupon" where a person receives goods or services without having to pay for them. The Senate Report cites numerous examples of class action abuses where a settling class action defendant provided only its own goods or services to class members yet paid cash to class counsel for counsel's attorneys' fees and costs. S. Rep. 109-14, at 17 (Poland Spring settlement provided free water to class members, a $2.75 million cy pres payment to charities and payment of $1.35 million to class counsel); at 18 (Pinnacle settlement provided free golf gloves and then "a set of three free golf balls;" class counsel received $100,000.00 for fees); at 19 (computer manufacturer settles multiple class actions by offering free replacement of flawed chip and doing "what it was already doing:" maintaining service centers, operating already established toll-free phone numbers and providing diagnostic computer programs; counsel receives $4.27 million in fees); at 20 (Packard

Bell settles product defect class action by offering a six month extended service contract solely if class member paid $25; [o]nly the lawyers got cash").

The benefits provided to Current and Former Members in the Settlement Agreement are plainly coupon benefits. No monetary relief will be provided to any class member whatsoever. Services solely in the form of massages from Massage Envy constitute the entire universe of relief being afforded to class members. Only Class Counsel will receive any cash. The Settlement Agreement is exactly a type of settlement Congress highlighted in passing CAFA. See Senate Report 109-14 and class action settlement cases highlighted above.

Further even considering the definition of "coupon" which includes the purchase of a good or service for a reduced price, the benefits being provided constitute coupons. Here, for Former Members to recoup their forfeited massages, they will have to pay the Massage Envy therapist a tip ranging from $15 to $38. Manochi Dec., ¶ 9 & Exhibit D. Thus, for all practical purposes, a Former Member is repurchasing the forfeited massage at a reduced price.

The terms applicable to the relief provided in the Settlement Agreement share the attributes found in other coupon settlement class action cases. The Settlement Agreement forces class members to do future business with Massage Envy. See Synfuel Techs., Inc. v. DHL Express (USA), Inc., 463 F.3d 646, 653 (7th Cir. 2006) (quoting Christopher R. Leslie, "The Need To Study Coupon Settlements in Class Action Litigation," 18 GEO. J. LEGAL ETHICS 1395, 1396-97 (2005)). At least one objector has expressed this concern. See Objection of Daniel Albing (Doc. No. 317) ("I don't want to get a massage at a clinic where they are only providing the service because of a lawsuit').

The benefits class members receive can only be exchanged for a single service. In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 951 (9th Cir. 2015) ("Online DVD") (holding

14

attribute of coupon is exchange for only "select products or services"). Class members exercising the benefit will increase MEF Franchisee store traffic. See Radioshack, 768 F.3d at 631 (quoting Thom Reece, "How to Use Coupons to Promote Your Business," business know-how, www.businessknowhow.com/marketing/couponing.htm). MEF will incur a wholesale cost for proving a retail benefit. Id. Redeeming forfeited massages will not disgorge MEF of its "ill-gotten gains." See Synfuel, 463 F.3d at 653 (quoting Leslie article). The benefits provided to Former Members expire within a relatively short six (6) months. RadioShack, 768 F.3d at 631. See Inkjet, 716 F.3d at 1176 (coupons expired six (6) months after issuance). None of the benefits provided to any class member is transferrable. Id.

In other respects, the settlement terms are worse than those in other class action coupon settlement cases. For instance, class members cannot obtain any goods from a MEF Franchisee at the Home Clinic (unless he or she has moved more than 25 miles from the Home Clinic) and can only use their benefits to obtain Unutilized Massages. See RadioShack, 768 F.3d at 636 (coupon useable to purchase any of 20,000 or so RadioShack products); Inkjet, 716 F.3d at 1176 (coupons redeemable for any HP printers or ink supplies on its website).

On April 22, 2015, Class Counsel filed a motion for an Award of Attorneys' Fees, Expenses and Service Awards (the "Attorneys' Fees Motion") (Doc. No. 308-13). Not surprisingly, they request payment of the entire $7,800,000.00 attorneys' fee and expenses amount MEF agreed to contribute. They seek $7,438,737.86 in fees and $361,262.14 in costs. Class Counsel assert the requested attorneys' fees amount is reasonable based upon "common fund" and "lodestar multiplier" analyses adopted by the Ninth Circuit. Using expert reports, they calculate the total benefits made available to class members is $321 million and urge the Court to use this number in determining the attorneys' fees they will receive. See generally Class

Counsel's Memorandum in Support of Attorneys' Fee Motion (Doc. No. 308-1) ("Attorneys' Fee Memo"), pp. 18-29.

Class Counsel did not address how the CAFA coupon settlement provisions affect their request for an award of attorneys' fees and expenses. As is required under 28 U.S.C. Section 1712(a), they provided no data which showed the actual or estimated Former Member's redemption rate for forfeited massages. As is required under 28 U.S.C. 1712(c), they failed separate their legal fees and costs to show the Court the amount of attorneys' time devoted to obtaining the so-called "injunctive relief" (namely the additional 30 day period Current Members have to utilize forfeited massages). See Knutson Dec. (Doc. No. 308-2) and exhibits thereto. Further, the Court specifically requested Class Counsel include in their Attorneys' Fee Motion their billing records. Preliminary Approval Order (Doc. No. 303), p. 18. Class Counsel has neglected to do so.

Class Counsel's actions and inactions plainly violate Rule 23(h). Here, the objectors do not have before them all the information necessary to justify their objections or the rationale being offered by Class Counsel for the fee request. RadioShack, 768 F.3d at 637-38. Objector submits because they seek an award based upon law which has no applicability in this action, the Attorneys' Fee Motion must be denied in its entirety. At a minimum, the fairness hearing cannot proceed until Class Counsel has provided information in a manner which allows the Court and all interested parties to analyze the fee request as a coupon settlement.

## VII. THE PURPORTED $321 MILLION SETTLEMENT VALUE HAS NO BASIS IN FACT, LAW OR REALITY AND CLASS COUNSEL CANNOT SHOW THEIR ATTORNEYS' FEE REQUEST IS REASONABLE.

Class Counsel claims it has created a $321 million in value from their efforts. As no class member will receive any monetary value, the only way for Class Counsel to support their

claim is to submit expert reports. In this case, they have submitted reports from accountant Thomas Neches (Doc. No. 313) (the "Neches Report") and behavioral economist Leigh Caldwell (Doc. No. 312) (the "Caldwell Report").

The $321 million number is divided into three (3) categories. The first, $225 million, is the redemption value of the forfeited massages made available to Former Members (the "Former Member Value"). Attorneys' Fee Memo, p. 12; Neches Report, pp. 4-5. Here, Class Counsel, overstate the value Mr. Neches reaches in his Report by some $46 million. Mr. Neches plainly concludes this value is $179 million based on a 100% participation rate by Former Members and his estimate that no more than 6 massages would be used during the six month redemption period. Neches Report, p. 2, Summary & fn. (a). The 6 massage number is based on his review of MEF statistical information which showed the typical member averaged .922 massages a month. Id., p. 5. The $225 million number Class Counsel touts required a 100% Former Member participation rate and an assumption Formers Members redeemed all of their respective forfeited massages during the six month redemption period. Id., p. 6 & Exhibit N thereto. Mr. Neches though set forth no basis in his report to conclude the "all redemption" assumption is reasonable. See generally Neches Report. Class Counsel, however, continue to hype this additional $46 million number, contradicting their own expert's conclusions and in the absence of any evidence anywhere which even remotely supports it. See generally Attorneys' Fee Motion and supporting papers.

The second value category, $36 million, consists of the increased number of Unutilized Massages Current Members will receive from the extra 30 day redemption period (the "Current Member Value"). Attorneys' Fee Memo, p. 12; Neches Report, pp. 15-16. To reach this conclusion, Mr. Neches estimates that all of the 46.4% of the members who terminate their

17

membership and lost a service upon termination would benefit from the additional 30 day redemption period. Id., p. 7 & Exhibit G.

The third, $60 million, Class Counsel claim arises from the additional disclosure MEF will provide for the next two (2) years ("Disclosure Value"). Attorneys' Fee Memo, pp. 17-18; Caldwell Report, pp. 9-10. Here, Class Counsel's analysis of the Caldwell Report is far from clear. The Caldwell Report nowhere specifically states the Disclosure Value is $60 million. See generally id. Class Counsel instead alludes to a first Disclosure Value of $33 million and a second Disclosure Value of $27 million and cites the Caldwell Report. Attorneys' Fee Memo, pp. 17-18. However, the Caldwell Report citations do not correspond with the facts Class Counsel asserts in the Memo. Compare Caldwell Report pp. 5-8 & 12 with Attorneys' Fee Memo, pp. 17-18.

## A.     The $215 Million Current and Former Member Values Stated in the Neches Report Are Inapplicable in this Action.

In his report, Mr. Neches estimates the value of the settlement to Former Members is $179 million and the value Current Members obtain from an additional 30 days to redeem forfeited massages is $36 million, or a total of $215 million. Neches Report, pp. 4-7. For the reasons set forth in Section V above, the settlement is a coupon settlement. Pursuant to CAFA Section 1712(a), Class Counsels' fee award must be based on "the value to class members of the coupons that are redeemed." 28 U.S.C. § 1712(a). Mr. Neches' values, however, are based on a 100% participation rate for Former Members and a 100% participation rate for all Current Members who, at the time their membership is canceled, have forfeited a massage. See Neches Report, p. 2, Summary & fn. (a); p. 7 & Exhibit G. As consumer class actions historically have extremely low participation levels, Objector submits the class member participation rate in the instant case will also be a very small fraction of the 100% rates contained in the Neches Report.

See, e.g., Inkjet, 716 F.3d at 1176 (of "the millions of class members who received notice," 122,000 filed claims); In re Apple iPhone 4 Prods. Liab. Litig., 2012 WL 3283432, at *1 (N.D. Cal. Aug. 10, 2012) ("number of claims represents somewhere between 0.16% and 0.28% of total class"); Palamara v. Kings Family Rests., 2008 WL1818453, at *2 (W.D. Pa. Apr. 22, 2008) ("approximately 165 class members" out of 291,000, fewer than 0.06% of the class, obtained voucher for restaurant food). Objector further submits, to the extent the Court needs to determine the participation rate of Current Members for the valuing the Settlement Agreement value, the Court should use Former Member participation rate as being the most reliable rate.

**B.      The Neches Report Values Ascribed to Massages Have No Basis in Law, Fact or Reality.**

As the stepping off point for the calculations in the both the Neches and Caldwell Reports, Mr. Neches values a 50 minute massage at $56 and a 75 minute massage at $82. Neches Report, pp. 2-4 and Exhibits cited therein. These conclusions are wrong for at least three reasons.

First, named plaintiffs' theory of the case is and has always been MEF violated California's Unfair Competition Law ("UCL"). The UCL, however, in the instant matter would only provide a restitution remedy and no damages. Therefore, Class Counsel determined a successful resolution for the matter was "one where Former Members get their massages reinstated, and provide[d] injunctive relief that addresses the loss of prepaid massages going forward." Knutson Dec., ¶ 19. Given the UCL, however, the restitution recovery value for a reinstated 50 or 75 minute massage can be no greater than the price the Former or Current Member paid for it.

The current value of a 50 minute massage at a MEF Franchisee is $49.99 and the current value of a 75 minute massage is $74.99 (respectively, $50.00 and $75.00 for rounding purposes).

19

See Manochi Dec., ¶ 8 & Exhibit C.  As the total damages any class member would receive if he or her claim was successfully prosecuted can be no greater than the amount the class member paid, the massage value can be no greater than the amount paid by the class member.  The $56.00 and $82.00 massage value conclusions reached in the Neches Report are therefore wrong and must be reduced to current retail levels.

Second, the stated $50.00 and $75.00 retail massage value must be further reduced. "[C]ompensation in kind is worth less than cash of the same nominal value." In re Mexico Money Transfer Litig., 267 F.3d 743, 748 (7th Cir. 2001) (reducing class counsel estimated coupon value of $400 million to $40 to $60 million).  See Synfuel Techs., Inc., 463 F.3d at 654 (quoting Mexico Money).  The coupon settlement being proposed here plainly provides in kind compensation in the form of redemption of forfeited massages.  Given the numerous restrictions placed on a class member (see Sections II and VI above), it would not be unreasonable to reduce the massage values for evaluating the Settlement Agreement by 50% yielding a $25.00 value for the 50 minute massage and a $38.00 value for the 75 minute massage. See Mexico Money, 267 F.3d at 748 (reducing class counsel asserted $400 million coupon value by 85% to 90%).

Third, the $25.00 and $38.00 massages values must also be reduced by the costs a class member will incur to get the forfeited massage from a MEF Franchisee.  This cost comes in the form of a tip.  Massage Envy strongly recommends customers tip their therapists and prominently displays the policy.  The tip recommendation ranges from 15-25% of the non-member massage cost ($100.00 for a 50 minute massage; $150.00 for a 75 minute massage). Manochi Dec. ¶¶ 8-10 & Exhibits C & D thereto.  Accordingly, each time a class member wishes to use a forfeited benefit the Settlement Agreement provides, he or she must pay between $15.00 and $38.00 for the "privilege" of doing so.  This cost is another attribute of the settlement which makes

it a coupon settlement. See Sections II and VI, above. As importantly, though, the non-cash $25.00 and $38.00 massage values must be further reduced. Objector submits a reasonable reduction would be the mid-range point for each of the 50 and 75 minute tipping ranges, $20.00 for a 50 minute massage and $30.00 for a 75 minute massage. See Manochi Dec., Exhibits C & D.

Accordingly, to the extent the Court needs to value the massages in this action for the purposes of evaluating the settlement or the attorneys' fee award, Objector respectfully submits the value of the massages can be no greater than $5.00 for a 50 minute massage and no greater than $8.00 for a 75 minute massage.

### C. The Injunction Relief in the Settlement Agreement Has Little or No Value to Class Members.

Class counsel states the injunction relief they have negotiated in the form of increased membership agreement disclosure has a value of $60 million. Attorneys' Fees Memo, pp. 17-18. An analysis of their claims shows they are entirely wrong for several reasons.

First, for the reasons set forth in Section V.A. above, a nationwide class for the purposes of providing injunctive relief cannot be certified by this Court. As a result, no value can be attributed to the injunctive relief contained in the Settlement Agreement.

Second, even if the injunctive relief sought is properly before this Court, the basis for the $60 million value has not been adequately explained by Class Counsel. See pp. 17-18, above.

Third, even if there is an adequate explanation for the $60 million value, the value must be significantly discounted. So called "enhanced" disclosures such as those in the Settlement Agreement to a very large degree benefit only future members of Massage Envy Franchisees. Pearson v. NBTY, Inc., 772 F. 3d 778, 784-85 (7th Cir. 2014) (class counsel asserts re-labeling of glucosamine pills bottle provided $46.2 million in value; appeals court upholds district court finding of zero injunction value, holding benefits, if any, flowed to future purchasers); Synfuels,

463 F.3d at 654 (discounting class counsels' claim agreed upon DHL operational changes will provide $30 million in savings to class members; court finding "future customers who are not plaintiffs in this suit who will reap most of the benefit from these changes").

The Caldwell Report makes two findings as to the value of the disclosures. It estimates the Current Member value of additional massages they will use during their membership term at $1.1 million. It also estimates at $28 million the Current and "Future Member"[3] value of additional massages they will use during the sixty day window after their membership. Caldwell Report, pp. 3 & 6-9. The Caldwell Report, however, makes no effort to break out the $28 million amount between Current Members and future Massage Envy members. Id., at pp. at 7-9.

The Caldwell Report $29.1 million total must significantly discounted. First, future Massage Envy customers are not class members. Massage Envy class members obtain no benefit whatsoever from operational changes which affect only future Massage Envy clients. Thus, to the extent any portion of the $28 million valuation portion flows to future customers, it must be eliminated from any valuation. Further, as the Report does not break out this valuation, the Court should not consider the Report. Second, in arriving at its figures, the Caldwell Report uses the $56.00 massage value Mr. Neches determined in his Report. Caldwell Report, pp. 6 & 9. For the reasons set forth in Section VII. B. above, this number is vastly inflated. Accordingly, Objector submits if the Court decides to determine the Disclosure Value, each massage cannot have a value greater than $5.00.

### D. Class Counsel's Attorneys' Fee Request Is Unreasonable.

CAFA dictates the settlement in this action be analyzed as a coupon settlement and

---

[3] The Caldwell Report defines "Future Members" as "[a]ll new customers entering into a membership agreement with Massage Envy." Id., at p. 2.

attorneys' fees granted accordingly. Objector submits, once the Court multiplies the real value of the coupon massages by the actual number of Former Member redemption claims submitted by the deadline, the settlement value will be far less than the $225 million Class Counsel claims. Objector further submits when the coupon value of the massages is applied to Former Member redemption rate, the Current Member settlement value will be far less than Class Counsel's $36 million assertion. Accordingly, Class Counsel's attorneys' fee and expenses request will be unreasonable.

To the extent the Court declines to analyze the settlement as a coupon settlement, Objector submits the Court should analyze the attorneys' fees request based on the actual value of the claims made by the class members. RadioShack, 768 F.3d at 630. No doubt, Class Counsel will submit additional papers in which they argue the settlement value should be based on the total recovery amount made available to class members. Objector readily admits some courts, including those in the Ninth Circuit, which award fees on a percentage-of-recovery basis make this calculation based on the entire fund, not just the fund amount claimed by the class. See, e.g., Boeing v. Van Gemert, 444 U.S. 572, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980).[4]

Nonetheless, this Court should find Boeing inapplicable for at least two reasons. First, Boeing and it progeny have been superseded by the 2003 amendments to Federal Rule of Civil Procedure 23, which created Rule 23(h) and by the passage of CAFA. See Samuel Isaacharoff,

---

[4] As a threshold matter, even if Boeing retains vitality, it would not render as irrelevant the claims data that will be submitted prior to the fairness hearing. For example, a court may choose to depart downward from the 25% benchmark, due to the class' apathetic reaction that is demonstrated by the absence of claims. Tarlecki v. Bebe Stores, Inc., No. C 05-1777 MHP, 2009 U.S. Dist. LEXIS 102531, at *12 (N.D. Cal. Nov. 3, 2009). Or alternatively, a trial court can in its discretion determine that "a more reasonable fee results from calculating a percentage of the actual recovery." Wise v. Popoff, 835 F. Supp. 977, 982 (E.D. Mich. 1993).

*The Governance Problem in Aggregate Litigation*, 81 FORDHAM L. REV. 3165, 3171-72 (2013) (describing *Boeing* as marking an "older line of cases" that eventually "prompted legislative rejection of compensating lawyers on the face value of the settlement, regardless of the take-up rate of the benefits by class members").

Second, Boeing and similar cases are not applicable to the settlement fund Class Counsel has created in this action. In *Boeing* class counsel actually obtained a judgment and created a fund in which each member of the class had "an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Boeing*, 472 U.S. at 479. See *Pearson, v. NBTY*, Inc., 772 F.3d at 782 (distinguishing *Boeing*). This readily determinable value is far different from the valuation in this action which can only be determined based on extensive, yet flawed, reports submitted by two different experts. Further, unlike here, the Boeing Court was not faced with a clear sailing or kicker provision which returns funds related to the settlement to the defendant. *Boeing*, 472 U.S. at 481, fn. 5. In fact, as the *Baby Products* Court has held, *Boeing* did decided one way or the other the permissibility of a fee based only on amounts actually distributed to the class. *Baby Products*, 708 F. 3d at 177.

Increasingly, courts all over the land are determining class counsel attorneys' fee awards base upon the amount actually claimed by class members. *Radio Shack*, 768 F.3d at 630; *In re Baby Products*, 708 F.3d at 179 n.13 ("[T]he actual benefit provided to the class is an important consideration when determining attorneys' fees"); *Vought v. Bank of America, N.A.*, 901 F. Supp. 2d 1071, 1092 (C.D. Ill. 2012) (emphasizing the "scant" 4.5% claims rate and result that $38,000 of $500,000 available would be paid out, ultimately denying approval of settlement); *Kaufman v. American Express Travel Related Services*, 283 F.R.D. 404, 407 (N.D. Ill. 2012) (finding a vast disparity between attorneys' fees and class claims' values to be "troubling and

ultimately unacceptable"); Trombley v. Bank of America Corp., No. 08-cv-456-JD, 2012 U.S. Dist. LEXIS 63072, at *8 (D. R.I. May 3, 2012) (finding an attorney award that consumed 66% of the settlement to be "excessive" and grounds for denying final approval); Ferrington v. McAfee, Inc., 2012 U.S. Dist. LEXIS 49160, at *36-*37 (N.D. Cal. Apr. 6, 2012) (finding an attorney award that constituted 83% of the settlement amount was disproportionate and grounds for denying final approval); Strong v. BellSouth Telecommunications, Inc., 173 F.R.D. 167, 172 (W.D. La. 1997), aff'd, 137 F.3d 844 (5th Cir. 1998) ("A request for $6 million in attorneys' fees where counsel has provided no more than $2 million in benefits to the class is astonishing. It is a sad day when lawyers transmogrify from counselors into grifters."). See Federal Judicial Center, Manual for Complex Litigation § 21.71 (4th ed. 2004) ("In cases involving a claims procedure . . ., the court should not base the attorney fee award on the amount of money set aside to satisfy potential claims. Rather the fee should be based only on the benefits actually delivered."); Pampers, 724 F.3d at 721 (rejecting settlement value "assumptions... premised upon a fictive world").

Analyzing an attorneys' fee request by this method ensures class counsel acts within the fiduciary duties they owe to class members because it better aligns their compensation with the benefit each of their fiduciaries receive. Objector submits the Court should join this growing trend. In any event, the Ninth Circuit, since its decision in Online DVD, now requires district courts to perform a common fund recovery cross check based upon the total amount actually received by the class members. Online DVD, 779 F.3d at 953 ("the choice of whether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the end result is reasonable") (quoting Staton, 327 F.3d at 974). See Lee v. Enterprise Leasing Co.-West, 2015 U.S. Dist. LEXIS 64027, *30 (D. Nev. May 15, 2015) (performing fund cross check

based on amount actually recovered by the class).

For all the above reasons, Objector submits Class Counsel's attorneys' fees request is unreasonable and therefore their Attorneys' Fee Motion and Settlement approval motion must be denied.

## VIII. THE SETTLEMENT AGREEMENT IS NEITHER FAIR NOR REASONABLE AND ITS APPROVAL MUST BE DENIED.

Two Churchill factors the Court must consider to approve the settlement are, "the strength of plaintiff's case and "the amount offered in settlement." Churchill Village, 361 F.3d at 575. Mr. Neches in this Report states that Former Members have lost a total of 3,919,242 massages consisting of 205,538 ninety (actual 75) minute massages and 3,713,704 sixty (actual 50) minute massages. See Neches Report, p. 5 Table and Exhibit J. He further estimates Current Members have lost 647,000 massages. Id., p. 7. At current rates ($50.00 for the 50 minute massage and $75.00 for the 75 minute massages), Massage Envy class members have actually paid for and forfeited over $233 million ((205,538 x $75.00) + (3,713,704 x $50.00) + (647,000 x 50.00) = $233,450,550).

On September 24, 2014, the Court granted plaintiffs' motion for summary judgment against MEF. In its Order, the Court ruled the California class members were entitled to restitution for forfeited massages. Doc. No. 271, p. 31. As set forth above, the actual value of the settlement will be far less than the $321 million Class Counsel claims or even the $233 million in real dollars the class members have actually lost. Thus, plaintiffs' claims, already having obtained liability summary judgment against MEF, are very strong. Objector submits the Court will determine the settlement amount value is very low. Analysis of these two factors requires the Court to reject the settlement.

Class Counsel claims it had no choice but to settle and cites a variety of factors. Knutson

26

Dec. ¶¶ 11-27. The fact, however, is plaintiffs obtained summary judgment against MEF for their California restitution claims. The fact is there are 186 massage Envy Spas in the State of California. See Manochi Dec. ¶ 11 & Exhibit E. Objector submits, prior to moving for summary judgment, Class Counsel should have moved to amend plaintiffs' complaint and added the owners of the 186 spas as additional defendants. Objector can think of no reason why, if the Court entered liability summary judgment against MEF, the Court would not have entered it against the 186 Massage Envy Spas which actually obtained the vast majority of the benefits from the forfeited massages. MEF's extensive records, no doubt, would have shown the number of forfeited massages at each California location and accurately allowed Class Counsel to determine a damages amount for each location.

Class Counsel states estimated California damages are $30 million. Knutson Dec. ¶ 17. Given the 186 California locations, damages average slightly more than $161,000.00 per location. Requiring each location to pay just one half this amount, $80,000.00, would have allowed the class members to recover just under $15 million, in cash. Instead, Class Counsel was left with one defendant, MEF, which claimed it could not pay the damages from which its franchisees benefitted. As a result, Class Counsel settled for a no cash, 100% in kind, class settlement in which Counsel stand to reap all the cash benefits. Objector submits Class Counsel did not work hard enough to generate a cash settlement fund in which both the class members and Counsel could benefit. Therefore, the Settlement is neither fair nor reasonable. It must be rejected.

IX.    **THE "CLEAR SAILING" PROVISIONS SHOW
A CONFLICT OF INTEREST BY CLASS COUNSEL
THAT PRECLUDES SETTLEMENT APPROVAL.**

The "clear sailing" clause in the Settlement Agreement prohibits MEF from challenging

any Class Counsel request for attorneys' fees and expenses which is more than $7,800,000.00. "Such a clause by its very nature deprives the court of the advantages of the adversary process." Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 525 (1st Cir. 1991). The clear sailing clause lays the groundwork for lawyers to "urge a class settlement … on a less-than-optimal basis in exchange for red-carpet treatment on fees." Id. at 524; accord Bluetooth, 654 F.3d at 947. The fee is placed in a segregated fund, so that any reduction of an excessive fee request benefits MEF, rather than class members, even though MEF is willing to pay the entire amount. Here, Class Counsel put its own fees ahead of the interests of class members by negotiating provisions that insulated those fees from challenge by MEF and class members. This is an abusive and "questionable" settlement structure. Eubank v. Pella Corp., 753 F.3d 718, 723 (7th Cir. 2014). The Court should require the parties to remove this provision, so that any reduction in the fee request would create a monetary fund in which class members would share. Id.

The reversion to defendant of excessive attorneys' fees from a clear sailing clause is known as a "kicker." This arrangement "amplifies the danger" is "already suggested by a clear sailing provision." Bluetooth, 654 F.3d at 949. "The clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees." Id. The kicker, like the disproportionate allocation and like the clear-sailing agreement, is a sign "that class counsel have allowed pursuit of their own self-interests … to infect the negotiations." Id. at 947. The Bluetooth warning signs create a special obligation for the district court "to assure itself that the fees awarded in the agreement were not unreasonably high … for if they were, 'the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could

28

otherwise have been obtained.'" Id. at 947. See Staton v. Boeing Co., 327 F.3d 938, 964 (9th Cir. 2003) (if "fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have been obtained").

If "class counsel agreed to accept excessive fees and costs to the detriment of class plaintiffs, then class counsel breached their fiduciary duty to the class." Lobatz v. U.S. West Cellular of Cal., Inc., 222 F.3d 1142, 1147 (9th Cir. 2000).

Normally, when attorneys demand excessive fees from a single common fund, a district court can correct any settlement unfairness problem by denying the Rule 23(h) request in part, and reallocating the excess to the class. See, e.g., Staton v. Boeing Co., 327 F.3d 938, 972 (9th Cir. 2003) ("after the court determines the reasonable amount of attorneys' fees, all the remaining value of the fund belongs to the class rather than reverting to the defendant."); In re Citigroup Sec. Litig., 965 F. Supp. 2d 369 (S.D.N.Y. 2013) (reducing excessive fee request by $26.7M for benefit of shareholders). However, a settlement cure to a disproportionate oversized fee request is impossible when clear-sailing fees are effectively placed in a segregated fund away from the class's reach—unless, as Eubank suggests, the court requires the parties to "delete" the "questionable" provision. "If the defendant is willing to pay a certain sum in attorneys' fees as part of the settlement package, but the full fee award would be unreasonable, there is no apparent reason the class should not benefit from the excess allotted for fees." Bluetooth, 654 F.3d at 949 (emphasis added). See Pearson, v. NBTY, Inc., 772 F.3d at 786 ("The simple and obvious way for the judge to correct an excessive attorney's fee for a class action lawyer is 'to increase the share of the settlement received by the class, at the expense of class counsel.'") (quoting

<u>RadioShack</u>, 768 F.3d at 630).

The Court should require the parties to correct these problems before approving the settlement. If the clear sailing and kicker provisions are not removed, the settlement must be rejected.

## X. <u>CONCLUSION</u>

For the foregoing reasons, the class cannot be certified and this settlement should be rejected as unfair and unreasonable.

Respectfully submitted,

Glenn A. Manochi, Esquire
1520 Locust Street, 12th Floor
Philadelphia, PA 19102
(215) 545-3000 Telephone
(215) 545-3001 Fax

Objector

DATED: June 26, 2015

E:/MASSAGE ENVY/DOCS/OBJECTIONS.DOC

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of June, 2015, I sent, by Federal Express, next business day delivery, the original Objections and supporting papers to filed with the Clerk of the Court for the United States District Court for the Southern District of California at the following address: U.S. District Court for the Southern District of California, 221 West Broadway, San Diego, CA 92101. I further certify on this same date a true and correct copy of the Objections and supporting papers has been sent by Federal Express, next business day delivery, and by first class U.S. mail to the persons set forth below at the following addresses:

Jeffrey Krinisk, Esquire
Mark Knutson, Esquire
Finkelstein & Krinsk
501 West Broadway, Suite 1250
San Diego, CA 92101

Luanne Sacks, Esquire
Sacks, Ricketts & Case LLP
177 Post Street, Suite 650
San Francisco, CA 94108

DATED: June 26, 2015

Glenn A. Manochi