# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

GAIL HAHN, CHAILLE DUNCAN, and ALEXIS HERNANDEZ, individually and on behalf of all other similarly situated California residents,

Plaintiffs,

v.

MASSAGE ENVY FRANCHISING, LLC,

Defendant.

Case No. 12cv153 DMS (BGS)

**ORDER (1) DENYING WITHOUT PREJUDICE MOTION FOR FINAL CLASS ACTION SETTLEMENT APPROVAL, (2) DENYING WITHOUT PREJUDICE MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS AND (3) GRANTING MOTION TO SUBSTITUTE CLASS REPRESENTATIVE**

Pending before the Court in this consumer class action are Class Representatives' Motion for Final Approval of Class Action Settlement ("Settlement Fairness Motion," doc. no. 344), Motion to Substitute Class Representative Robert P. Crawford, II as Personal Representative to Gail Hahn's Estate ("Substitution Motion," doc. no. 371), and Class Representatives' Motion and Supplemental Motion for Attorneys' Fees, Expenses and Service Awards (collectively "Fee Motion," doc. nos. 308 & 348). Although Defendant does not oppose any of the pending motions, several class members have filed objections ("Objectors") to the Settlement Fairness and Fee Motions. The motions came on for hearing at which time William Restis, Trenton Kashima, and Mark Knutson appeared in person and Jeffrey Krinsk appeared telephonically on behalf of Plaintiffs. Luanne Sacks, Cynthia

Ricketts and Kahn Skolnick appeared for Defendant Massage Envy Franchising, LLC ("Massage Envy"). Joshua Eggnatz appeared on behalf of Objectors David, Melianie and Charlie Eiglarsh, Fumiko Robinson, Alex Zennaro, Jennifer Walker, Scott Buck, Anthony and Charlene Panos, Jeanette Rawls, and Michelle Bandell. Brett Weaver appeared on behalf of Objectors Tiffany Hixon, Donna Zizian, Lorilee Leininger and Carolyn Lawman. Ross Hyslop appeared on behalf of Objector Amy Johnson, and Objector Glenn Manochi appeared on his own behalf. Having read and considered the pending motions, objections, and all related filings, including the Stipulation of Class Action Settlement and Release with exhibits ("Settlement Agreement"), and having heard and considered the arguments and representations of counsel, the Settlement Fairness and Fee Motions are denied without prejudice. The Substitution Motion is granted.

## I.    Introduction

Defendant Massage Envy is a membership-based massage franchise which allows its consumer members to receive one fifty-minute massage per month in exchange for a monthly membership fee of approximately $60. When members are unable to use their monthly massages on an ongoing basis, the unused massages – paid for with the prior months' membership fees – accrue and may be redeemed at a later time. However, as a condition to redeeming these unused, pre-paid massages, Massage Envy requires its members to continue to purchase additional monthly massages. Thus, when a member cancels or ceases membership payments, all unredeemed pre-paid massages are forfeited.

As a result of this practice, Plaintiffs initially alleged four claims against Massage Envy: (1) violation of the unlawful business practices provision of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. ("UCL"); (2) violation of the UCL's unfair business practices provision; (3) breach of the implied covenant of good faith and fair dealing; and (4) declaratory relief. Plaintiffs sought injunctive relief prohibiting the forfeiture of pre-paid massage services, reinstatement of the right to use any forfeited massages, and restitution. Plaintiffs contend that all Massage Envy franchises follow Defendant's prescribed procedures when soliciting new members. New members, according

to Plaintiffs, think they are purchasing massage services that accumulate and can be redeemed at a later time, when in fact the services are subject to forfeiture upon cancellation or termination of membership.

This action has been aggressively litigated from the outset. Initially, Defendant filed, and Plaintiffs opposed, a motion to dismiss on multiple grounds under Federal Rule of Civil Procedure 12(b).[1] After Plaintiffs prevailed, the parties engaged in discovery, and Plaintiffs filed a motion for class certification. The factual and legal issues of the case were thoroughly briefed and extensive evidence was filed in support of and in opposition to the motion.

On April 15, 2014, Plaintiffs' motion for certification was granted, and a class was certified pursuant to Rule 23(b)(3). (*See* Order (1) Granting Motion to Intervene; and (2) Granting in Part and Denying in Part Motion for Class Certification ("Class Certification Order," doc. no. 160).) The certified class included all California residents who were Massage Envy members from December 7, 2007, to March 6, 2015, and who forfeited pre-paid massages because they cancelled their membership (cancellation subclass), or fell into arrears by failing to make timely payments and keep their membership current (arrears subclass). The class was certified on the claims under the "unlawful" prong of the UCL and the related claim for declaratory relief. The class issues as to the cancellation and arrears subclasses focused on whether the membership agreements were unlawful under California Civil Code §§ 1670.5 (unconscionability) and 1442 (forfeiture provision strictly interpreted against benefitting party); and, with respect to the arrears subclass only, whether the membership agreements violated Civil Code § 1671(d) by providing for an unlawful penalty upon default. Notice of the class action was distributed in June 2014.

As the class notice was being distributed, the parties filed cross-motions for summary judgment. Defendant also filed a motion to decertify the class, and a *Daubert* motion to exclude opinions of Plaintiffs' damages expert. The motions were brought following

---

[1] All references are to the Federal Rules of Civil Procedure unless otherwise noted.

extensive discovery, and all issues were thoroughly briefed and argued. Ultimately, Plaintiffs' motion for summary judgment was granted on liability issues; the Court found Defendant liable under the unlawful prong of UCL requiring restitution of forfeited pre-paid massage services, and further held that such restitution was not limited to Defendant's royalties. The issues of injunctive relief and the amount of restitution were reserved for trial, as was Defendant's claim for offset against restitution. Defendant's motion was granted regarding Plaintiffs' request for treble damages and non-restitutionary disgorgement. Defendant's decertification and *Daubert* motions were denied. (*See* Order (1) Granting in Part and Denying in Part Plaintiffs' Motion for Summary Adjudication; (2) Granting in Part and Denying in Part Defendant's Motion for Summary Adjudication; (3) Denying Defendant's Motion to Exclude Expert Opinions of Thomas Neches; and (4) Denying Defendant's Motion to Decertify Class Action ("Summary Judgment Order," doc. no. 271).)

After the Court issued its Summary Judgment Order, and following three settlement conferences with the Magistrate Judge, the parties reached a settlement. Among other things, the settlement was conditioned on Plaintiffs securing leave to amend the complaint to add new claims for breach of contract and breach of the implied covenant of good faith and fair dealing on the theory that Massage Envy's practice of forfeiting unused pre-paid massages violated the membership agreement's refund provision.[2] Moreover, the contract claims were to be asserted on behalf of an exponentially larger class including not only the previously certified class of former Massage Envy members in California (approximately 130,000 members) but also *current and former* Massage Envy members *nationwide* – comprising some 2.68 million members.[3] The settlement also was entered on the condition that the new,

---

[2] The refund provision provides that, if membership services are paid in full, the member would be refunded the future unused portion of the membership dues for any unredeemed massages.

[3] *See* Class Certification Order at 5, doc.no. 160 (finding numerosity requirement met and stating, "It is undisputed that since 2007, more than 100,000 Massage Envy members in California lost unused prepaid massage services due to cancellation, and more than 30,000 members lost such services because their accounts were in arrears"); Settlement Fairness Motion at 25, doc.no. 344 ("Here, the Settlement Class contains approximately 2.68 million members and is therefore unquestionably numerous.")

larger class with respect to the new contract claims would be certified and the Summary Judgment Order would be set aside.

In accordance with the Settlement, Plaintiffs filed an unopposed motion for leave to file a second amended complaint, modification of the Class Certification Order, preliminary approval of class action settlement, change of the settlement administrator, and approval of a new notice to the class. The parties also jointly requested the Court to vacate the Summary Judgment Order. The Court granted the motions on a preliminary basis. (*See* Order on Class Representatives' Motion for Preliminary Approval, Motion for Leave to File Second Amended Complaint, and Joint Motion for Vacatur ("Preliminary Approval Order", doc. no. 303).) The parties disseminated a new notice of class action and settlement. In response to the notice, several class members filed objections to class certification, final settlement approval, and Plaintiffs' request for attorneys' fees, expenses, and class representative incentive payments.

## II.    **Discussion**

### A.    **Settlement Fairness Motion**

#### 1.    Class Notice

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(e)(1) requires reasonable notice to all class members who would be bound by the proposed settlement. Approximately 98% of the class members received direct summary notice either by email or first class mail. According to Massage Envy's records, there are approximately 2.68 million class members nationwide – 1,142,756 former and 1,538,645 current Massage Envy members. The settlement administrator, Garden City Group, LLC ("Settlement Administrator"), sent 1,837,930 email notices, of which approximately 20% could not be delivered. The Settlement Administrator also sent 1,007,693 postcard notices by first class mail, which included notices to members whose email notices were undelivered as well as to members who lacked valid email addresses. Ultimately, only approximately 2% of the class did not receive notice. (Decl. of Jennifer M.

Keough Regarding Notice Dissemination and Settlement Administration at 4-8 ("Keough Decl.," doc. no. 346).) The Court finds that the individual notice provided satisfies due process and the requirements of Rules 23(c)(2) and (e)(1).

While the Objectors do not object to the method of notice, some Objectors contend the notice was insufficient because it did not state that the class of former Massage Envy members in California had been previously certified, that Plaintiffs had secured favorable rulings on liability and certain monetary recovery issues as to that class, and that the Summary Judgment Order would be vacated with the preliminary settlement approval.

After Plaintiffs' motion to certify a class of former Massage Envy members in California had been granted, the parties distributed notice to the class as the class was defined at that time. With the current proposed settlement, the definition of the class, the legal claims asserted on behalf of the class, and the relief available to the class changed. The class increased significantly, expanding from a California to a nationwide class, and including current as well as former Massage Envy members. The class claims also were based on breach of contract rather than the previously asserted California statutory claims, and Plaintiffs dropped their claim for monetary relief.

Accordingly, the Preliminarily Approval Order sanctioned a new notice, which set forth the procedure for submitting claims, requests for exclusion and objections to the settlement, and a timeline for processing claims. A separate version of the notice was sent to the former Massage Envy members in California who had previously received notice of class certification. The new notice was designed to alert such class members that the status of the case and requested relief had changed, and provided another opportunity to opt out of the class. (*See* Keough Decl.) Six individuals who had opted out based on the initial notice (*see* Decl. of Eric Balzer Regarding Class Notice (doc. no. 263)), were given an opportunity to opt back in. (Keough Decl. at 4-5 & 7, Exs. D & G).

/ / /

In terms of content, a notice of class action settlement generally must explain in easily understood language the nature of the action, definition of the class, class claims, issues and

defenses, ability to appear through individual counsel, terms of the settlement, procedure to request exclusion, and the binding nature of a class judgment. Fed. R. Civ. P. 23(c)(2)(B). "Rule 23(e) requires notice that describes 'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *In re Online DVD Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015) (quoting *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012)).

The notice at issue provided the required information, and emphasized the fact that, unlike before the settlement, no monetary relief was sought on behalf of the class. Moreover, the notice directed any interested class member to obtain further information by contacting the Settlement Administrator by using a toll-free phone number, accessing the settlement website, calling class counsel, or reviewing documents filed on the Court's docket. Each of these resources provided direct access to the Preliminary Approval Order, which provided all the information the Objectors contend is missing from the notice, as well as other Court orders and filings that covered the same issues in more detail. That eighteen Objectors came forward following such notice underscores that the pertinent information was readily obtainable based on the information provided.

The objections to the notice are therefore overruled. The Court finds that the most recent notice distributed to the class satisfies due process as well as the requirements of Rules 23(c)(2) and (e)(1), was the best notice practicable under the circumstances, and provided sufficient notice to the class.

### 2. Class Membership and Representation

Pursuant to Rules 23(a) and (b)(3), the Court certified on a preliminary basis the following settlement class:

> "CURRENT MEMBERS" defined as "[A]ll members of a clinic or spa owned and operated by a MEF FRANCHISEE within the United States whose MEMBERSHIP is current as of the date of entry of PRELIMINARY APPROVAL;" and
>
> "FORMER MEMBERS" defined as "[A]ll members of a clinic or spa owned and operated by a MEF FRANCHISEE within the United States between December 7, 2007, and the date of entry of PRELIMINARY APPROVAL who had one or more UNUTILIZED MASSAGES when (a) he/she cancelled his/her

MEMBERSHIP; (b) he/she elected not to renew his/her MEMBERSHIP; or (c) when his/her MEMBERSHIP was terminated for non-payment, but excluding anyone whose MEMBERSHIP was terminated for inappropriate or illegal conduct."

The certification was based in part on the analysis and findings made in the Class Certification Order, and in part on new evidence, representations and argument presented in support of the motion for preliminary settlement approval.

The Objectors take issue with class certification on several grounds. First, Objectors argue former Massage Envy members lack standing to represent current members. Second, Objectors contend Plaintiffs do not meet Rule 23(a) requirements because as former members, Plaintiffs are not typical and cannot adequately represent current members. Finally, Objectors maintain Plaintiffs cannot meet Rule 23(b)(3) predominance requirements because differences in state laws preclude certification of a nationwide class. Each objection is addressed in turn.

Standing is a jurisdictional requirement under Article III of the United States Constitution. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1036 (9th Cir. 2010). To establish standing, the plaintiff must show three things:

"First, [he or she] must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . .. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Id*. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). In this regard, standing "is meant to ensure that the injury a plaintiff suffers defines the scope of controversy he or she is entitled to litigate." *Melendres v. Arpaio*, 784 F.3d 1254, 1261 (9th Cir. 2015), *cert. denied by Maricopa Cnty. v. Melendres*, ___ U.S. ___, 136 S.Ct. 799 (2016).

/ / /

Objectors argue that Plaintiffs as class representatives lack standing to litigate any claims for injunctive relief because each Plaintiff, as a former Massage Envy member, is

neither entitled to, nor would benefit from, injunctive relief. Plaintiffs do not dispute the assertion that they cannot seek injunctive relief for themselves. They counter, however, that they can seek injunctive relief on behalf of current Massage Envy members, and that is sufficient to confer subject matter jurisdiction. The Court agrees.

Objectors admit that Plaintiffs have standing to bring the asserted claims to the extent they initially pursued claims for monetary and other relief. (Objection of Glenn Manochi to Class Action Settlement at 10; doc. no. 337.) Once a plaintiff establishes standing to assert a claim, the court has jurisdiction to approve settlement of a claim arising from the same common nucleus of operative facts even if the court would not have had jurisdiction over the claim had it gone to trial. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287-88 (9th Cir. 1992). Article III standing therefore does not preclude approval of the proposed settlement on behalf of current Massage Envy members. The cases cited in the objections, *Summers v. Earth Island Ins.*, 555 U.S. 488, 493 (2009), and *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974), do not address the relevant issue – whether the Court has jurisdiction to approve settlement of, as opposed to adjudicate, a disputed claim.

Rather than Article III standing, the objection essentially speaks to the difference between the injuries suffered by former and current Massage Envy members. "Any issues regarding the relationship between the class representative and the passive class members – such as dissimilarity in injuries suffered – are relevant only to class certification, not to standing." *Melendres*, 784 F.3d at 1262 (internal quotation marks and citation omitted). The Court therefore turns to the objections to the proposed settlement.

"The class action is an 'exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). "A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013). Where, as here, class

certification is sought for purposes of settlement only,[4] it demands heightened attention. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). If the court is not fully satisfied that the requirements of Rules 23(a) and (b) are met, certification should be denied. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate. The Rule's four requirements – numerosity, commonality, typicality, and adequate representation – 'effectively limit the class claims to those fairly encompassed by the named plaintiff's claims.'" *Dukes*, 564 U.S. at 349 (internal quotation marks and citations omitted). "A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id*. at 2551. Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is grounded in constitutional due process concerns: "absent class members must be afforded adequate representation before entry of judgment which binds them." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). In reviewing this issue, courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id*.

Certification under Rule 23(b)(3) is proper when "the questions of law or fact common to class members predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. Proc. 23(b)(3).

Here, the class definition, although not explicitly stated in terms of two sub-classes, comprises two distinct groups – former and current Massage Envy members. At oral argument, counsel for Massage Envy acknowledged "there is a fundamental distinction

---

[4] Although a class action was certified prior to settlement, the proposed settlement is conditioned on certification of a different class and different claims.

between current members and former members."  (Reporter's Transcript of Proceedings, Final Approval Hearing/Motion Hearing ("Tr.") at 5.)  The proposed settlement provides additional time for all Massage Envy members with unused pre-paid monthly membership massages to use them after termination of their membership.  Former members receive approximately 75% reinstatement of their unused pre-paid monthly massages that were forfeited upon termination of membership and 180 days within which to use them.  Current members, on the other hand, must use their accumulated pre-paid massages within 60 days of membership termination (instead of 30 days as provided in their membership agreements). If the massages are not used within these time periods, they are forfeited without the possibility of a refund.

All class representatives are former members.  None are current members.  Objectors maintain that the interests of current and former members are not aligned, that former members cannot adequately represent the interests of current members, and that the settlement favors former members over current members.  The Court agrees.

Former members receive six times longer (180 days) than current members (30 days) to redeem unused pre-paid monthly massages.  Current members who are unable to use their accrued massages on an ongoing basis have two options: (1) continue paying monthly membership dues and hope they can catch up using their accrued massages before termination; or (2) terminate their membership and try and use all of their pre-paid accrued massages within 60 days of termination, which may require using the massages with a greater than monthly frequency.  The former option is unfavorable because it requires members to continue paying membership fees even when they are unable to use their pre-paid accrued massages on a going forward basis.[5]  The latter option – terminating membership and accelerating use of massages after termination – is likewise unfavorable. First, except under limited circumstances, this option is unavailable during the initial

_____

[5] The contract provision allowing members to transfer unused monthly massages to another person is of little, if any, assistance as it requires payment of a transfer fee and limits such transfers to "[t]wo guest visits over a six month period ...."  (Decl. of Melanie Hansen (doc. no. 83) Ex. U.)

11

membership term.[6]  Second, members who are unable to use their accrued massages are not likely to accelerate use of their massages and redeem all of them within 60 days of terminating their membership.  On average, members take 33 days between massages. (Report of Thomas Neches Valuing Settlement Benefits at 5 (doc. no. 313).)

Finally, even current members able to accelerate use of accumulated massages during the membership term, would encounter a potentially significant obstacle created by the settlement itself – they would have to compete with former members for available massage appointments.  In this regard, Massage Envy has not provided any assurance that sufficient resources will be available to accommodate the competing demands of former and current members.  The evidence regarding Defendant's ability to comply addresses efforts to ensure appointment availability for former members only, and leaves out any assurances that meeting the demands of former members would not negatively impact the demands of current members for timely appointments.  (*See* Decl. of Melanie Hansen in Supp. of Class Representatives' Brief in Supp. of Final Approval of Class Action Settlement at ¶¶ 29-35 ("Hansen Decl.," doc. no. 351).)  Moreover, in implementing the settlement agreement, Defendant contemplates an extension of time for former members to use their accrued unused massages, but no such flexibility is contemplated for the current members.  (*See id.*)

Accordingly, the interests of former and current members are not aligned.  Under the proposed settlement, at least for the first 180 days, former and current members would compete for limited resources, *i.e.,* available massage appointments.  Moreover, in negotiating the settlement, former members secured preferential treatment for themselves over current members.  As in *Amchem*, where the settlement class included members who were suffering from asbestos-related injuries as well as members who were exposed to

---

[6]  The membership agreement is set up for an initial term of three to thirteen months. The agreement limits cancellation during the initial term to cases of permanent relocation at least 25 miles from *any* Massage Envy clinic, or medical infirmity, either of which the member must substantiate with written proof.  This effectively forces a member to purchase at least one massage per month for the initial term whether or not the member is able to use it.  (Summary Judgment Order at 14).

asbestos but had yet to suffer any injury,[7] so here, "[t]he settling parties ... achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected."  521 U.S. at 627.

> "The class representatives may well have thought that the Settlement serves the aggregate interests of the entire class.  But the adversity among subgroups requires that the members of each subgroup cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups."

*Id.* (quoting *In re Joint E. and S. Dist. Asbestos Litig.*, 982 F.2d 721, 742-43 (2d Cir. 1992)).

Due to the fundamental differences between former and current members, former members cannot adequately represent the current members.  For the same reasons, counsel representing former members cannot adequately represent the current members.  Because the proposed settlement class does not meet the adequacy requirement of Rule 23(a)(4), the Court need not consider whether it meets the typicality requirements of Rule 23(a)(3).

Next, Objectors assert the proposed class does not meet the predominance requirement of Rule 23(b)(3).  This issue remains relevant because the parties could potentially request certification of a nationwide settlement class composed of former members only.

Rule 23(b)(3) "focuses on the 'relationship between the common and individual issues' and 'tests whether proposed class[es] are sufficiently cohesive to warrant adjudication by representation.'"  *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting *Hanlon*, 150 F.3d at 1022).  It requires "that common questions '*predominate* over any questions affecting only individual [class] members.'"  *Amgen, Inc. v. Conn. Retirement Plans and Trust Funds*, __ U.S. __, 133 S. St. 1184, 1196 (2013) (quoting Fed. R. Civ. P. 23(b)(3)).  Objectors contend that a nation-wide class does not meet

/ / /

---

[7]  Defendant describes the "fundamental distinction" between former and current members in the same terms: "Former members have already allegedly suffered their injury to the extent it was losing ... these pre-paid massages upon cancellation or termination.  That is a fundamentally different thing from current members who have not, quote, unquote, lost anything yet, but are merely facing this injury."  (Tr. at 5-6.)

the predominance requirement because consumer protection laws vary widely from state to state.

Class certification is not sought for any of the alleged consumer protection claims, but on the breach of contract and breach of the implied covenant claims only. The claims are based on the allegation that forfeiture of the unused pre-paid membership massages constitutes a breach of the refund provision in the form membership agreement, which is the same nationwide. (*See* Preliminary Approval Order at 3.) In their motion for attorneys' fees, Plaintiffs acknowledge that even when the class claims are limited to contract claims, they may present significant difficulties in managing the class action due to the differences in contract law of the fifty states. (*See* Decl. of Mark L. Knutson ¶¶ 20-23 (doc. no. 308-2).) If the case were to proceed to trial, the class action management problems potentially could be sufficiently severe to negate class certification. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189-90 (9th Cir. 2001). Class action manageability, however, is not considered when class certification is sought solely for settlement purposes. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."). Accordingly, the differences in state contract laws do not preclude certification of a settlement class. The objection is therefore overruled to the extent it is based on Rule 23(b)(3).

Final approval of conditional settlement certification is denied for failure to comply with Rule 23(a)(4)'s adequacy of representation requirement. This class action is decertified as to the class defined in the Preliminary Approval Order.

Because the settlement is conditional on, among other things, class certification, the foregoing finding is sufficient to deny final settlement approval. However, because it is possible that the parties may renegotiate the settlement, set out below are additional reasons for denying final approval.

/ / /

### 3.    Settlement Fairness

Final approval of the proposed settlement is denied on the additional ground that it does not meet the requirements of Rule 23(e)(2). A class action settlement may be approved "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e)(2). The primary concern of this procedure "is the protection of those class members ... whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982).

The approval "almost always" confronts the court with "a difficult balancing act." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015).

> On the one hand, ... "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." And it is the nature of a settlement, as a highly negotiated compromise ... that "[i]t may be unavoidable that some class members will always be happier with a given result than others." But on the other hand, "settlement class actions present unique due process concerns for absent class members," and the district court has a fiduciary duty to look after the interests of those absent class members.

*Id.* (internal citations omitted).

Although the "factors in a court's fairness assessment will naturally vary from case to case,"

> "courts generally must weigh: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement."

*In re Bluetooth Headset Prod. Liability Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citations omitted) ("*Churchill* factors").

> This is by no means an exhaustive list of relevant considerations, nor [does it necessarily] identify the most significant factors. The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case.

*Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 625 (9th Cir. 1982). In making the final settlement fairness determination, the court "'must show it has explored

comprehensively all factors, and must give a reasoned response to all non-frivolous objections.'" *Allen*, 787 F.3d at 1223-24 (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)).

This "procedural burden is more strict" when, as here, the settlement is negotiated before class certification. *Id.* at 1224. Under these circumstances,

> consideration of the *Churchill* factors alone is not enough ... . [¶] Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.

*Bluetooth*, 654 F.3d at 946; *see also Allen*, 787 F.3d at 1224. The court's role in the approval process "is to police the inherent tensions among class representation, defendant's interests in minimizing the cost of the total settlement package, and class counsel's interest in fees." *Staton v. Boeing Co.*, 327 F.3d 938, 972 n.22 (9th Cir. 2003). An order approving a class action settlement "must show not only that '[the court] has explored the *Churchill* factors comprehensively,' but also that the settlement is 'not [ ] the product of collusion among the negotiating parties.'" *Bluetooth*, 654 F.3d at 947 (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)). The settlement proponents ultimately bear the burden to show that the settlement warrants final approval. *Staton*, 327 F.3d at 959.

Several Objectors argue the proposed settlement is unfair because, as discussed above, it favors former Massage Envy members over current members. Both groups were represented in settlement negotiations only by the former members. Although "it may be unavoidable that some class members will always be happier with a given result than others, ... potential for injustice arises as the distribution of benefits and burdens in a class remedy becomes increasingly unequal." *Officers for Justice*, 688 F.2d at 624. Former members, who were represented in the negotiations, received a greater benefit than the current members, who were not represented by anyone from their group. As discussed, former members are given 180 days to redeem approximately 75% of the pre-paid massages they had forfeited. On the other hand, current members receive an additional 30 days, for a total

16

of 60 days, after membership termination to use their accumulated pre-paid massages. Massage Envy has assured that former members will be able to secure timely appointments for the massage services they wish to redeem, and that the time for them to redeem could be extended. No such assurances have been made with respect to current members, and for at least the first 180 days, current and former members will be competing for a finite number of available appointments. This raises the prospect that the current members' interests "may not have been given due regard by the negotiating parties," *id.*, and "class counsel [may have] allowed pursuit of [former members' interest] to infect the negotiations" at the expense of the current members' interest. *Bluetooth*, 654 F.3d at 947.

Plaintiffs and Defendant, who are proposing the settlement, claim that the different treatment between former and current members is justified by the circumstances. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1377 (9th Cir. 1993) (approving settlement because disparate treatment of class members was rational). They claim that while former members have already forfeited their pre-paid massage services, current members could still redeem them by continuing their membership by timely paying their monthly membership fees. Although the circumstances confronting former and current members are different, perhaps justifying disparate treatment, the settlement proponents have failed to dispel the concern that the preferential treatment of former members is due to conflict or collusion. Accordingly, the settlement's proponents have not met their burden of showing that the settlement warrants final approval. The objection to the proposed settlement's fairness is therefore sustained, and the motion for final approval is denied on this additional ground.

Objectors also contend that the proposed attorneys' fees award is unreasonably high. It provides for a maximum $7.8 million award of fees and costs, subject to Court approval. Defendant agreed not to oppose the request, and any portion of the amount not awarded to Plaintiffs' counsel would revert to Defendant.

One of the unique due process concerns raised by the settlement of class actions is that "class counsel may collude with the defendants, 'tacitly reducing the overall settlement in return for a higher attorney's fee.'" *Bluetooth*.654 F.3d at 946 (quoting *Knisley v. Network*

*Assocs.*, 312 F.3d 1123, 1125 (9th Cir. 2002)). Ordinarily final settlement approval does not involve consideration of class counsel's fee requests. *Id*. at 940-41. However, when objectors contend the settlement is unfair because the parties allegedly negotiated unreasonable attorneys' fees, and the settlement is reached prior to class certification, the Court must consider the fees in evaluating settlement fairness under Rule 23(e) to guard against the possibility of collusion. *Id*. at 940-41, 945-46.

"Collusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Bluetooth*, 654 F.3d at 947. Examples of subtle signs of collusion are (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel is amply rewarded; (2) when the parties negotiate a "clear sailing" arrangement (*i.e.*, an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed fees to the defendant. *Id*. at 947; *Allen*, 787 F.3d at 1224. The concern about collusion is amplified when, as here, the proposed settlement includes an expansion of the proposed class.

> Collusion is far more likely before certification, and exponentially higher if the class is expanded as part of the settlement. Here is why. If a lawsuit is only on behalf of named plaintiffs, damages are limited to what they may properly receive, so if a case is reasonably defensible, a defendant may make a sound financial decision to defend. But if a vast class is certified, then even a meritless case may require a defendant to settle or bet all the money it has or can borrow for attorneys' fees, because even a very small chance of a very large verdict is too much to risk. Plaintiffs' counsel want certification, to make the damages enough to be worth the time and expense of the litigation. Defense counsel oppose it, to keep the risk down to a level where they can afford the risk of litigation. Because certification of a class may turn even a meritless plaintiff's case into a bet-the-company defendant's case, defendants usually vigorously oppose class certification, giving courts the benefit of adversarial presentations.

> Once the parties agree to settle, and agree to certify a class, defendant's interests are reversed. Plaintiffs' counsel still have an interest in keeping a large class certified, because the larger the class, the higher the attorneys' fees are likely to be. But if the defendant will get a bar against claims, almost always a term of any settlement, the more people whose claims are barred the better. The risk of having to pay out a huge amount of money gets converted, by class

certification, into a certainty that vast numbers of people will be unable to sue the defendant. So when settling before class certification, and agreeing upon class certification as part of the settlement, both sides have the same incentive, to certify the class and make it as vast and all-encompassing as possible. It is a bonanza for the defendant if it can bar the claims not only of everyone in the class described in the complaint, but also of a much larger class on whose behalf more and different claims might have been asserted.

*Lane v. Facebook, Inc.*, 696 F.3d 811, 831-32 (9th Cir. 2013).

This case presents all the signs discussed above. The proposed settlement confers significant concessions on Defendant. By awarding only non-monetary relief to the class, the settlement insulates Defendant from refund claims for forfeited pre-paid massage services. This benefit is exponentially expanded by enlarging the class from former Massage Envy members in California (approximately 130,000 members) to current *and* former members *nationwide* (approximately 2.68 million members), representing a 2,061.5% increase in class membership. This protects Defendant from the possibility of similar lawsuits anywhere in the United States brought by any former or current Massage Envy members who do not opt out. In addition, class counsel is assured Defendant will not object to a request for $7.8 million in attorneys' fees and costs, while class members receive no monetary distribution. If the Court declines to award any portion of the $7.8 million attorneys' fee and cost request, the unawarded portion reverts to Defendant, not the class.

Although the presence of these signs does not automatically preclude a finding that the settlement is fair, reasonable and adequate, the Court must examine them and fulfill its "'special obligat[ion] to assure itself that the fees awarded in the agreement were not unreasonably high.'" *Allen*, 787 F.3d at 1224 (quoting *Bluetooth*, 654 F.3d at 947). If the fees are unreasonably high, "'the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits pro-visions'" of the settlement. *Bluetooth*, 654 F.3d at 947 (quoting *Staton*, 327 F.3d at 960).

Because the proposed settlement does not award any monetary relief to the class, class counsel were directed to include in their motion for attorneys' fees and costs "a thorough lodestar analysis, including billing records, expense invoices, and attorney affidavits" as well as a valuation of the non-monetary relief provided to the class members. (Preliminary

Approval Order at 18) (citing *Fed. Jud. Ctr., Manual for Complex Litig.*, ¶ 21.71 (4th ed, 2004). To evaluate the reasonableness of attorney fee requests, courts use the lodestar method as a cross-check against the percentage of recovery method. *See Bluetooth*, 654 F.3d at 944-45.

Class counsel largely base their fee request on the percentage of recovery theory. Counsel estimate the total value of the settlement is $22.1 million, which consists of $14.3 million in claims plus fees and costs of $7.8 million. Based on these figures, counsel argue the fee request of approximately $7.4 million[8] amounts to 33.6%[9] of the total settlement value of reinstated massages claimed by former members. This is significantly higher than the 25% "benchmark." *See In re Online DVD Rental*, 779 F.3d at 949 ("in this circuit, the benchmark percentage is 25%."). It is also $3.2 million more than, or nearly twice, the stated lodestar amount of approximately $4.2 million. (Knutson Decl. ¶¶ 46 & 53; Decl. of Mark L. Knutson in Supp. of Class Representatives' Motion for Final Approval of Class Action Settlement ¶ 18 ("Second Knutson Decl.," doc. no. 356).)

Even if, without deciding, the Court accepts Plaintiffs' lodestar calculations and valuation of massage services claimed by former members, the Court is not persuaded that the fees requested in this case are reasonable under either the percentage of recovery theory or the lodestar approach. Accordingly, this finding also warrants denial of the motion for final approval of the settlement.

Next, Objectors contend the proposed settlement is a coupon settlement, and approval should be denied because the settlement must, but does not, comply with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1712, which "directs courts to apply heightened scrutiny to coupon settlements." *In re Online DVD Rental*, 779 F.3d at 949. Where, as here, class counsel undertakes representation on a contingent fee basis:

---

[8] Counsel estimate the costs and expenses to be approximately $400,000.

[9] Counsel arrive at this percentage by adding the $7.8 million fees and costs request to the $14.3 million estimated value of the claims ($7.8 mil. + $14.3 mil. = $22 mil; $7.4 mil. (fees only) ÷ $22.1 mil. = 33.6%). (Suppl. Br. at 4-5; doc. No. 348).

> [i]f a proposed settlement in a class action provides for recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed.

28 U.S.C. § 1712(a). The statute does not define the term "coupon," and neither the parties nor Objectors have cited to any binding authority defining the term. *See In re Online DVD Rental*, 779 F.3d at 950. Objectors contend the relief provided by the proposed settlement to former members is a coupon because all that is offered is Massage Envy's services, as opposed to monetary relief.[10] In this regard, the settlement benefit does not extend to every product and service offered by a Massage Envy clinic, but is limited to 50- or 90-minute massage sessions at each former member's designated home clinic.

The parties counter that this is not a coupon settlement because former members receive what they lost – pre-paid membership massage services that had been forfeited. Returning to class members what they lost does not necessarily preclude the finding of a coupon settlement. For example, in *In re Southwest Airline Voucher Litigation*, 799 F.3d 701 (7th Cir 2015),[11] the plaintiffs sued Southwest for not honoring free drink vouchers issued for certain flights. The settlement provided the class with replacement vouchers, and Southwest agreed to honor them. Over the plaintiffs' objection, the court found that the vouchers were coupons under CAFA.

All parties, including Objectors, rely on *Online DVD Rental*, where the court found that a Walmart $12 gift card was not a coupon under CAFA. In reaching its conclusion, the *Online DVD Rental* court considered the following matters relevant: (1) whether the settlement provides the class members with "little or no value;" (2) whether the settlement provides a discount that requires class members to spend their own money with the settling

---

[10] Current and future Massage Envy members receive injunctive relief, as neither group has yet suffered a loss. Current members receive an additional 30 days to redeem their pre-paid membership massage services after termination, and future members benefit from disclosure of membership terms that comply with the law.

[11] Plaintiffs objected to Defendant's supplemental submission of *Southwest Airlines*. The objection is overruled.

defendant before they can take advantage of the settlement; (3) whether the alleged coupon is valid only for select products or services; (4) whether the alleged coupon expires in a short period of time; and (5) whether it is freely transferrable. 779 F.3d at 950-52.

In the present case, former members receive what they lost – massage services, albeit the number of sessions is reduced by 25%, which reflects the settlement compromise. Based on these facts, this Court declines to conclude that the settlement provides little or no value. The settlement does not provide a discount, but allows each former member to claim a certain number of massage sessions. Class members are not required to spend any additional funds to claim these massage sessions.[12] On the other hand, the settlement does not entitle former members to any other products and services, their claims are not transferrable, and the period during which these massage sessions can be scheduled is limited to 180 days. However, in light of the circumstances specific to this case, the Court finds that the settlement is not a coupon settlement under CAFA. Accordingly, to the extent objections are asserted against the settlement and class counsel's fees under CAFA's coupon settlement provisions, they are overruled.

Finally, Objectors maintain the proposed settlement provides insufficient benefit to class members. For example, it does not provide any monetary relief, reinstate all of the forfeited pre-paid membership massages, or allow more time to redeem. As noted in the Preliminary Approval Order, Plaintiffs presented a strong case, with liability issues largely resolved in their favor with the case proceeding to trial primarily on the issue of remedies, including restitution of membership fees for forfeited pre-paid massage services. At the time of settlement, the class was positioned for monetary recovery and the door was open for similar actions in other states.

---

[12] Mr. Manochi's Objection that class members are required to pay a tip to claim a massage service under the settlement is rejected as no evidence has been presented that tipping is mandatory. (*See* Decl. of Glenn A. Manochi at 2 (doc. no. 338) & Ex. D (tips are "recommended" and "customary" if the member was satisfied); *see also* Hansen Decl. at 4 (Massage Envy template membership agreement has never required tips, and tipping has always been within each member's discretion); Decl. of Melanie Hansen in Supp. of Def.'s Brief in Further Supp. of Final Approval of Class Action Settlement at 2-4 (doc. no. 367).)

In light of the foregoing success, the benefits of the proposed settlement are modest. Former members receive approximately 75% reinstatement of forfeited pre-paid massage services to be used within 180 days with no possibility for a refund; current members receive additional time to redeem accumulated massages after termination of membership (60 days instead of 30); and future members benefit from injunctive relief that requires Massage Envy for a period of two years to better disclose that unused pre-paid massages have to be used within 60 days of termination or they will be forfeited without refund.

Not surprisingly, then, and contrary to the parties' description of the response to the settlement, the proposed settlement was not enthusiastically embraced by class members. After receiving notice, out of approximately 2.68 million putative class members, 233 opted out[13] and 36 objected to the settlement. (Keough Decl. at 10-11.) Out of 1,142,756 former Massage Envy members, only 53,169, or approximately 4.6 percent, submitted claims. (*Id.*) Despite Plaintiffs' praise of the claim submission rate, the response has been fairly anemic. In *Allen v. Bedolla*, for example, the Court of Appeals decried a 7 percent claim submission rate as low. 787 F.3d at 1221 & 1224 n.4. The benefit afforded current members (some 1,538,645 individuals) is more difficult to quantify, as it will not be apparent until the number of forfeited pre-paid massages can be ascertained upon expiration or termination of the now-current memberships. (*See* Def.'s Resp. to Obj. to Proposed Settlement at 9 (doc. no. 368).) The class notice informed current members that any unused pre-paid membership massages would be forfeited without refund within 30 days of membership termination, or 60 days, if the settlement is finally approved. Based on this notice, Plaintiffs' expert Leigh Caldwell, a behavioral economist, estimated that an additional 0.16 percent of current members will increase their usage sufficiently to use all of their pre-paid massages before membership termination. (Report of Leigh Caldwell Valuing Settlement Benefits ("Caldwell Report") at 6-7). The expert, however, does not quantify how many current members will benefit from having an additional 30 days to redeem their accumulated massages.

_____

[13] 229 class members opted out based on the latest notice. Four class members who had opted out based on the initial notice did not opt back in despite the opportunity to do so.

If this were the end of the fairness inquiry, the Court could sustain the objection and reject the proposed settlement on the additional ground that, given the strength of Plaintiffs' case, the stage of the proceedings, extent of discovery, and the less-than-enthusiastic reaction of the class members to the proposed settlement, *see Bluetooth*, 654 F.3d at 946, the benefits offered by the settlement are too insignificant to warrant approval. However, the Court must consider additional factors, such as the risk, expense, complexity, and likely duration of further litigation and the risk of maintaining class action status throughout the trial. *See id.* at 946.

"Of course, the very essence of settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (citations omitted). The settlement fairness hearing therefore "is not to be turned into a trial or rehearsal for trial on the merits." *Id*. at 625. The Court does not,

> reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators.

*Id*. (citations omitted).

Despite Plaintiffs' litigation success so far, their ultimate success in the event of trial is uncertain. Defendant has made it clear that absent settlement it will appeal any adverse judgment and any intermediate order in Plaintiffs' favor, including the Class Certification and Summary Judgment Orders. Such an appeal, Defendants argue, could warrant referral of at least one issue to the California Supreme Court. And even if Defendant failed to prevail on appeal, final resolution of the action would be delayed for years, during which time class members would receive nothing. Given the high probability of interminable delay, the Court cannot conclude that the benefits of the settlement are too small to warrant

/ / /

final approval. Accordingly, the objection to the settlement based on the adequacy of its benefits to class members is overruled.

For these reasons, the objections to the settlement are sustained in part as follows: (1) former Massage Envy members and their counsel cannot adequately represent the interests of the current members; (2) the settlement is unfair and potentially collusive because it provides former members with greater benefits than current members without adequately explaining the disparity; and (3) Plaintiffs have failed to show that class counsels' proposed fees are reasonable. All remaining objections are overruled. The Settlement Fairness Motion is denied without prejudice.

### B.    Fee Motion

Because the class representatives' motion for final settlement approval is denied, their motion for attorneys' fees, costs and litigation expenses, and for class representatives' service awards is denied without prejudice as well.

### C.    Substitution Motion

Finally, pending before the Court is Plaintiffs' motion to substitute Robert P. Crawford, II in place of his wife Plaintiff Gail Hahn, who is deceased. The motion is granted pursuant to Federal Rule of Civil Procedure 25(a). Accordingly, Mr. Crawford is substituted as party in interest in place of Plaintiff Gail Hahn for purposes of her individual claims.

Plaintiffs also move to appoint Mr. Crawford as class representative under Federal Rule of Civil Procedure 23(a) *in lieu* of Ms. Hahn. They argue the issues of typicality and adequacy of representation under Rule 23(a)(3) and (4) are not implicated, if the proposed settlement is approved, as nothing would be left for Mr. Crawford to oversee on behalf of the class. As the proposed settlement is rejected, a showing that Mr. Crawford meets these requirements is necessary. Based on the Declaration of Mr. Crawford filed in support of the motion for substitution, the Court finds Mr. Crawford sufficiently familiar with this case and class representative duties to represent former Massage Envy members in California.

/ / /

## III.    Conclusion

For the reasons stated above, it is ordered as follows:

1. Class Representatives' Motion for Final Approval of Class Action Settlement (doc. no. 344) is denied without prejudice.

2. Class Representatives' Motion for an Award of Attorneys' Fees, Expenses and Service Awards (doc. no. 308) and Class Representatives' Supplemental Motion for an Award of Attorneys' Fees, Expenses, and Service Awards (doc. no. 348) are denied without prejudice.

3. The Motion to Substitute Class Representative Robert P. Crawford, II as Personal Representative to Gail Hahn's Estate (doc. no. 371) is granted.

4. A telephonic status conference shall be held on **April 14, 2016**, at **10:30 a.m.** Counsel for Plaintiffs shall organize and initiate the conference call to the Court.

**IT IS SO ORDERED.**

DATED: March 30, 2016

_____
HON. DANA M. SABRAW
United States District Judge